UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGUSTIN CACCURI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC,<br><br>　　　　Defendant. | Case No. 21-cv-03361-RS<br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendant Sony Interactive Entertainment LLC ("Sony") moves to dismiss Plaintiffs' consolidated amended class action complaint ("CACAC"), which avers violations of federal antitrust law, the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, and unjust enrichment. While the factual background is more fully described in the prior order granting Sony's motion to dismiss Plaintiffs' initial complaint, *see* Dkt. 60 ("Order"), at 2–4, Plaintiffs, in short, allege that Sony has engaged in anticompetitive conduct by halting the sale of digital PlayStation game download cards to third-party retailers. Plaintiffs' antitrust theory arises under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), which establishes that a company engages in "prohibited, anticompetitive conduct" when (1) it unilaterally terminates a voluntary and profitable course of dealing; (2) "the only conceivable rationale or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition"; and (3) "the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers." *FTC v. Qualcomm Inc.*, 969

F.3d 974, 993–994 (9th Cir. 2020) (internal quotation marks omitted) (quoting *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132–33 (9th Cir. 2004); and *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016)).

Plaintiffs' initial complaint was dismissed on July 15, 2022. The order concluded that, although Plaintiffs had "adequately alleged a cognizable aftermarket," Order, at 6, and had demonstrated antitrust injury, *see id.* at 10, Plaintiffs had not adequately pleaded any of the three *Qualcomm* elements. Because Plaintiffs had failed to explain "how Sony generated a revenue stream from the sale of download codes by third party retailers," it would be "difficult to analogize to *Aspen Skiing*." *Id.* at 8–9. The motion to dismiss was therefore granted, with leave to amend, and Plaintiffs subsequently filed the CACAC.

Having reviewed the amendments in the CACAC, the motion is denied. Accepting Plaintiffs' averments as true and construing the pleadings in their favor, as is required, *see Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), the CACAC adequately describes the process under which Sony profited from the previous course of dealing. Specifically, Plaintiffs allege Sony sold digital game cards to retailers both "on consignment, with the retailer taking a commission on each sale and remitting the remainder of the retail price to Sony," and by selling download codes "back to the [games'] publisher[s] in bulk and allow[ing] the publishers to deal with retailers directly." Dkt. 61 ("CACAC") ¶ 43. While Plaintiffs do not identify how lucrative this practice was, the averments provide enough detail to support the conclusion that Sony's conduct was, in any event, profitable. The CACAC similarly alleges that Sony sacrificed short-term profits for long-term gain, as demonstrated by the dip in FY 2019 sales following Sony's decision to halt the sale of digital game cards to retailers. *See id.* ¶¶ 47–48 & tbl. Further, the CACAC demonstrates Sony's unilateral refusal to deal with retailers in offering digital game downloads, satisfying the third *Qualcomm* requirement. *See id.* ¶¶ 45–46.

Sony and Plaintiffs disagree as to whether Plaintiffs are required to plead that the "only conceivable rationale or purpose" of Sony's conduct was to harm competition. Plaintiff argues that, to the extent this is in fact an element of *Aspen Skiing* antitrust liability, it need not be shown

at the pleading stage. *See* Dkt. 76, at 11. Sony bluntly replies that this "makes no sense," as a plaintiff must plead each element of his or her claim, and that Plaintiffs here have fallen short. Dkt. 77, at 8. Both parties are partly right and partly wrong. *Qualcomm* does require a plaintiff ultimately to prove that the defendant's "only conceivable rationale or purpose" was to exclude competition, and as such the pleadings must allege facts supporting this element. *See, e.g.*, *Lentz v. Sanderson Farms, Inc.*, No. 19-cv-06570-RS, 2020 WL 12656231, at *9 (N.D. Cal. Feb. 10, 2020). However, the CACAC does so, if just barely, by alleging that Sony's "financial performance with retail partners *was not* the impetus for Sony's decision to refrain from selling digital games through retailers," CACAC ¶ 46, and by refuting the notion that Sony sought to save costs by claiming that Sony continued selling *gift cards* through these retailers — products that would seem to incur similar types of overhead as the digital game cards. *See id.* That Sony's motion identifies other potential rationales behind its conduct (such as the desire to shift away from game-specific cards to more flexible, general-purpose gift cards, *see* Dkt. 67, at 16) presents an affirmative defense and a question of fact, both of which are better left for a later stage of litigation.[1] The CACAC therefore states a claim, and Sony's motion is denied.

**IT IS SO ORDERED**.

Dated: February 7, 2023

_____
RICHARD SEEBORG
Chief United States District Judge

---

[1] Sony also argues that Plaintiffs are required to plead adequately that Sony's conduct was "irrational but for its anticompetitive effects," Dkt. 67, at 13 (quoting *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013)), and that an *Aspen Skiing* claim will "not lie for termination of a 'dual distribution' offering," *id.* at 21. Neither proposed requirement stems from controlling authority, and thus neither is addressed or required of Plaintiffs here.