John F. Cove, Jr. (SBN 212213)
john.cove@shearman.com
Patrick T. Hein (SBN 254431)
patrick.hein@shearman.com
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105-2997
Telephone: 415.616.1100
Fax: 415.616.1199

Brian C. Hauser (*pro hac vice*)
brian.hauser@shearman.com
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8000
Fax: 202.508.8100

*Attorneys for Sony Interactive Entertainment LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

CACCURI, *et al.*,

Plaintiffs,

v.

SONY INTERACTIVE ENTERTAINMENT LLC,

Defendant.

Lead Case No.: 3:21-cv-03361-AMO

**DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION**

Judge: Hon. Araceli Martínez-Olguín
Date: January 11, 2024
Time: 2:00 p.m.

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that, on January 11, 2024 at 2:00 p.m.—or as soon thereafter as the matter may be heard before the Honorable Araceli Martínez-Olguín in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, California—Defendant Sony Interactive Entertainment LLC ("Sony"), will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 23, for an order denying certification of the named Plaintiffs' proposed class. This motion is based upon this Notice of Motion and the accompanying memorandum of points and authorities filed with these documents, any matters of which the Court may take judicial notice, the files and records in this action, and such oral and documentary evidence as this Court may allow at the hearing of this motion.

*/s/ John F. Cove, Jr.*

John F. Cove, Jr. (SBN 212213)
Patrick T. Hein (SBN 254431)
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
john.cove@shearman.com
patrick.hein@shearman.com

Brian C. Hauser (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8058
brian.hauser@shearman.com

SHEARMAN & STERLING, LLP

*Attorneys for Defendant*
*Sony Interactive Entertainment LLC*

## STATEMENT OF ISSUES TO BE DECIDED

Whether this Court should deny certification of the named Plaintiffs' proposed class because:

1. The named Plaintiffs and nearly all putative class members are subject to class-action waivers.
2. Nearly all putative class members are subject to arbitration agreements, so the proposed class is overbroad and invalid.

## Table of Contents

INTRODUCTION ........ 1

FACTS ........ 2

I. The Products, Plaintiffs' Claims, and Procedural Background ........ 2

II. The Agreements ........ 3

III. The Agreements apply to the claims and proposed class in this case. ........ 6

ARGUMENT ........ 8

I. The issues presented in this motion are ripe for decision now. ........ 8

II. The Agreements are valid contracts. ........ 10

III. The class-action waivers foreclose the proposed class. ........ 12

A. By their terms, the class-action waivers bar the proposed class. ........ 12

B. Sony has not waived its right to enforce the class-action waivers. ........ 13

C. The class-action waivers are not unconscionable. ........ 14

IV. The proposed class should be denied because nearly every putative class member is subject to a binding arbitration agreement. ........ 15

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
No. 18-cv-05982, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ............ 14

*Abidzadeh v. Best Buy, Co. Inc.*,
No. 20-cv-06527, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ............ 11

*Allen v. Shutterfly, Inc.*,
No. 20-cv-02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ............ 10

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (Cal. Ct. App. 2022) ............ 11

*Bock v. Salt Creek Midstream LLC*,
No. 19-cv-1163, 2020 WL 5640669 (D.N.M. Sept. 22, 2020) ............ 12

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
No. 15-cv-04456, 2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) ............ 9

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ............ 14

*Conde v. Open Door Mktg., LLC*,
223 F. Supp. 3d 949 (N.D. Cal. 2017) ............ 9

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ............ 10

*Crawford v. Sony Interactive Ent. LLC*,
No. 20-cv-01732 (N.D. Cal. Mar. 30, 2021) ............ 10

*Flores-Mendez v. Zoosk*,
No. 20-cv-04929, 2022 WL 2967237 (N.D. Cal. July 27, 2022) ............ 12, 13, 15

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ............ 10

*Freitas v. Cricket Wireless, LLC*,
No. 19-cv-7270, 2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) ............ 17

*Geiger v. Charter Commc'ns, Inc.*,
No. 18-cv-158, 2019 WL 8105374 (C.D. Cal. Sept. 8, 2019) ............ 17

*Gile v. Dolgen Cal. LLC*,
No. 20-cv-01863, 2022 WL 3574168 (C.D. Cal. Aug. 2, 2022) ............ 9

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457 (9th Cir. 2023) ............ 13, 17

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) ............ 11

*Horton v. Dow Jones & Co.*,
804 F. App'x 81 (2d Cir. 2020) ........ 12

*Indep. Living Res. Ctr. v. Lyft, Inc.*,
No. 19-cv-01438, 2020 WL 6802410 (N.D. Cal. Nov. 19, 2020) ........ 16

*Jeong v. Nexo Cap. Inc.*,
No. 21-cv-2392, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ........ 12, 15

*Lacour v. Marshalls of CA, LLC*,
No. 20-cv-07641, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ........ 12

*Lawson v. Grubhub, Inc.*,
13 F.4th 908 (9th Cir. 2021) ........ 8, 9

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ........ 10

*Mendez v. Sony Computer Ent. Am., LLC*,
No. 20-cv-00588, 2021 WL 2459467 (D. Idaho June 16, 2021) ........ 10

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) ........ 12

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 14, 15

*Mora v. Harley-Davidson Credit Corp.*,
No. 1:08-cv-01453, 2012 WL 1189769 (E.D. Cal. April 9, 2012) ........ 17

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (Cal. Ct. App. 2005) ........ 15

*Oberstein v. Live Nation Entmt., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 10

*O'Connor v. Uber Techs.*,
904 F.3d 1087 (9th Cir. 2018) ........ 13, 15

*In re Optical Disk Drive Antitrust Litig.*,
303 F.R.D. 311 (N.D. Cal. 2014) ........ 3, 8

*Pablo v. ServiceMaster Global Holdings*,
No. 08-cv-03894, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ........ 16

*Rushing v. Williams-Sonoma, Inc.*,
No. 16-cv-01421, 2020 WL 6787135 (N.D. Cal. Oct. 8, 2020) ........ 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ........ 17

*Tschudy v. J.C. Penney Corp., Inc.*,
No. 11-cv-1011, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ........ 16

*Valencia v. VF Outdoor, LLC*,
No. 20-cv-01795, 2021 WL 5154161 (E.D. Cal. Nov. 5, 2021) ........ 9

*Verizon Comc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) .................... 2

*Ward v. Apple Inc.*,
No. 12-cv-05404, 2018 WL 934544 (N.D. Cal. Feb. 16, 2018) .................... 9

**Rules**

Fed. R. Civ. P. 12 .................... 13, 16

Fed. R. Civ. P. 23 .................... *passim*

## INTRODUCTION

The named Plaintiffs' proposed class includes everyone in the United States who purchased a digital video game (or related content) from the PlayStation Store from April 1, 2019, through the present. Consol. Am. Class Action Compl ¶ 78, ECF No. 61 ("Amended Complaint" or "Am. Compl.").[1] This definition encompasses millions of transactions involving different video games, purchased by millions of people, at different times, and at different prices. Establishing the elements required to certify such a massive and diverse class would present significant challenges under Rule 23. But setting aside the ordinary Rule 23 certification hurdles that are not yet ripe for determination, the proposed class fails at the threshold for two independent legal reasons, each of which is ripe for determination now. *First*, the named Plaintiffs and nearly all putative class members[2] are subject to class-action waivers. *Second*, nearly all putative class members are subject to arbitration obligations and thus cannot participate in the proposed class.

There is no reason to wait to deny class certification. The Ninth Circuit has endorsed preemptive motions to deny class certification in cases like this one. While Sony is proceeding with discovery according to the schedule set by the Court without regard to the pendency of this motion, *no discovery* is needed to determine whether these two threshold issues foreclose the named Plaintiffs' proposal to proceed as a class. Addressing this narrow motion therefore has the potential to conserve the resources of the parties, third parties, and the Court by avoiding unnecessary and expensive class-related discovery, lengthy and costly expert analyses and reports,

---

[1] The Amended Complaint was filed in each of the three related actions: *Caccuri, et al. v. Sony Interactive LLC*, No. 3:21-cv-03361-AMO, *Cendejas v. Sony Interactive Entertainment LLC*, No. 3:21-cv-03447-AMO, and *Neumark v. Sony Interactive Entertainment LLC*, No. 3:21-cv-05031-AMO. These actions have since been consolidated. ECF No. 115. Citations to docket numbers in this brief refer to the *Caccuri* docket.

[2] As explained below, all the putative class members agreed to arbitrate disputes with Sony and to class-action waivers when they entered the relevant agreements. A small number of these individuals subsequently opted out of these contractual provisions. Thus, nearly all class members (*i.e.*, all the members of the putative class who have not opted out) are subject to arbitration obligations and class-action waivers.

and full class certification briefing on the full panoply of Rule 23 issues. Accordingly, this Court should deny certification of the named Plaintiffs' proposed class.

## FACTS

### I. The Products, Plaintiffs' Claims, and Procedural Background

Sony develops, markets, and sells the popular PlayStation video-game console and distributes video games for its PlayStation consoles through a variety of means. On April 1, 2019, Sony discontinued one form of distribution: full-game, game-specific download codes (usually printed either on cards or on receipts) that Sony had offered for certain games. Sony provided these codes to third-party retailers (such as Best Buy or GameStop), who in turn sold them to consumers, who could use the codes to download the corresponding video game from Sony's PlayStation Store. These game-specific codes were offered only for a limited number of the games available on the PlayStation Store and constituted a small portion of PlayStation game sales. After it discontinued the *game-specific* download codes, Sony continued to offer general-purpose codes, often referred to as "gift cards" (*i.e.*, codes with a pre-set value that offered gamers more flexibility and could be redeemed on the PlayStation Store for video games or related content), through third-party retailers that could be used to purchase *any game* on the PlayStation Store.

In May and June 2021, Plaintiffs, who acquired their PlayStation 5 consoles at least 18 months after the game-specific download codes were discontinued, filed three, near-identical putative class actions. Plaintiffs claim that the discontinuation of game-specific download codes constituted illegal monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, relying on a disfavored "refusal-to-deal" theory that is "at or near the outer boundary of Section 2 liability."[3] *Verizon Comc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 399 (2004). They allege this so-called refusal to deal caused them to pay inflated prices for digital PlayStation games that they purchased on the PlayStation Store. *See* Am. Compl. ¶ 56. Plaintiffs further allege that Sony's decision to stop offering these game-specific codes injured not

---

[3] Plaintiffs also bring derivative claims under the same theory under California law.

only themselves, but every other person who bought any digital PlayStation game from the PlayStation Store since April 1, 2019, and they seek to represent a putative class of all such persons. Certification of the proposed class under Rule 23 would require the Court to find, among other things, that Plaintiffs can show that "all or virtually all" of the millions of consumers who purchased digital games (and any other digital content) from the PlayStation Store paid a higher price for those games and other content than they would have had Sony not discontinued the full-game download codes. *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 321, 324 (N.D. Cal. 2014).

After the Court related their cases, Plaintiffs filed a Consolidated Class Action Complaint, ECF No. 40, and Sony moved to dismiss for failure to state a claim. ECF No. 45. The Court granted Sony's motion with leave to amend. Order, ECF No. 60. Plaintiffs filed an Amended Complaint, ECF No. 61, and Sony again moved to dismiss for failure to state a claim. ECF No. 67. This time the Court found that the Plaintiffs had adequately pled facts that, if accepted as true, stated a claim, "if just barely." Order 3, ECF No. 80.

## II. The Agreements

There are three agreements relevant to this motion: the PlayStation 5 System Software License Agreement ("System License") (Ex. B), the Software Product License Agreement ("Product License") (Ex. D), and the PlayStation Network Terms of Service and User Agreement ("Terms of Service") (Ex. E) (collectively, the "Agreements").[4]

*The System License*: Users must agree to the System License before they can use their PlayStation 5 console. King Decl. ¶ 5. The System License covers the use of any PlayStation 5 "System Software," including any "application software provided to or made available for your PS5 system through . . . [the] PlayStation Network" or "PS5 game media." Ex. B at 1. During the PlayStation 5 setup process, users are presented onscreen with the full text of the System License

[4] Exhibits referenced in this motion are attached to the Declaration of Ryan King in Support of Defendant's Motion to Deny Class Certification ("King Decl."), filed contemporaneously herewith. Exhibit A, not referenced in this motion, is a table of exhibits.

in a scroll box, and they must click an "I Agree" button in order to use the System Software. If the user does not click "I Agree," the process ends, and the user cannot use the PlayStation 5. King Decl. ¶ 5.

The System License requires a user to arbitrate any dispute "regarding any and all uses of System Software" and commits the question of arbitrability to an arbitrator. Ex. B § 8. It also states that:

> ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION ***OR COURT***, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION, UNLESS BOTH YOU AND THE ADVERSE SONY ENTITY SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION.

*Id.* (caps in original, emphasis added). Users may opt out of the arbitration and class-action waiver provisions by providing Sony with written notice within 30 days of accepting the agreement. *Id.* The front page of the agreement contains an all-caps notice of the arbitration, class-action, and opt-out provisions. *Id.* at 1–2.

*The Product License*: The Product License agreement applies to the "use of all software products," which includes video games, for the PlayStation 5. *See* Ex. D at 1.

The Product License requires users to arbitrate any dispute "regarding the Software, or the advertising, marketing, license or use of the Software" and commits the question of arbitrability to the arbitrator. Ex. D § 6. Like the System License, it states that:

> ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION ***OR COURT***, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION, UNLESS BOTH YOU AND THE ADVERSE SONY ENTITY SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION.

*Id.* (caps in original, emphasis added). Users may opt out of the arbitration and class-action waiver provisions by providing Sony with written notice within 30 days. *Id.* The front page of the

agreement contains an all-caps notice of the arbitration, class-action, and opt-out provisions. *Id.* at 1.

*The Terms of Service and User Agreement*[5]: To use the PlayStation Network ("PSN") and buy and download digital games from the PlayStation Store, users must create an account and agree to the Terms of Service. King Decl. ¶ 8; Ex. E § 1. To create an account, a user is presented with an onscreen page containing a link to the Terms of Service, which is accompanied by an "I Agree" checkbox (on PS5) or an "Agree and Create Account" button (on web browser) that confirms the user understands and accepts the Terms of Service. King Decl. ¶¶ 9-10. If the user does not check the "I Agree" checkbox (on PS5) or click the "Agree and Create Account" button (on web browser), the process ends and she cannot use the PSN, including the PlayStation Store. *Id.*

Users must also agree to the Terms of Service each time they buy a digital game. Specifically, each time a user seeks to buy a digital game from the PlayStation Store, she must agree to complete the purchase in accordance with the Terms of Service by clicking an onscreen "Confirm Purchase" button (or, for pre-orders, a "Pre-Order and Pay" button). *Id.* ¶ 12. If the user does not click "Confirm Purchase" (or "Pre-Order and Pay"), the process ends, and she cannot buy or download the game. *Id.*

The Terms of Service require the user to arbitrate, *inter alia*, any dispute "regarding PSN or PSN content," which includes digital games downloaded from the PlayStation Store, and commits the question of arbitrability to the arbitrator. *See* Ex. E § 14.1. Users can opt out of the arbitration agreement by providing Sony with written notice within 30 days. *Id.* § 14.3. The Terms

---

[5] During the putative class period, there have been five versions of the Terms of Service Agreement: an April 2019 version (Ex. I), an October 2020 version (Ex. H), a May 2021 version (Ex. G), October 2022 version (Ex. F), and the current version, operative August 2023 (Ex. E). The October 2020, May 2021, October 2022, and August 2023 versions are materially identical for purposes of this motion. The April 2019 version differs somewhat from the other four in that it does not incorporate by reference the other two agreements and has slightly different class-action waiver language (quoted below in fn. 6).

of Service also include a class-action waiver. *Id.* § 14.5.[6] The first page contains an all-caps notice of the arbitration, class-action, and opt-out provisions. *Id.* § 1.2.

In sum, each agreement contains a separate arbitration provision and each agreement contains and/or incorporates by reference class-action waivers that apply to arbitration *or court.* All three agreements allow users to opt out.

**III. The Agreements apply to the claims and proposed class in this case.**

All three agreements apply to this dispute. Both the named Plaintiffs' claims, and the purported claims of the putative class they seek to represent, are based on their purchases of digital PlayStation games from the PlayStation Store and thus squarely implicate all three agreements. Again, the System License applies to any "application software provided to or made available to your PS5 system through," among other things, "PS5 game media," Ex. B at 1; the Product License applies to the "use of all software products . . . on authorized PlayStation systems," Ex. D at 1; and the Terms of Service apply to the access and use of the PSN and "PSN Services," which includes the PlayStation Store, Ex. E §§ 1.1, 2.1. Also, the 2020, 2021, 2022, and 2023 Terms of Service incorporate by reference the System License and the Product License; the System License

---

[6] The class-action waiver provision of the April 2019 Terms of Service provides in pertinent part that:

> ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION [unless the Parties agree otherwise].

Ex. I at p. 18 (caps in original). The class-action waiver provision in each subsequent version of the Terms of Services provides in pertinent part that:

> [The Parties] AGREE THAT ARBITRATION WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION [unless the Parties agree otherwise].

*E.g.*, Ex. E § 14.5 (caps in original).

incorporates the Product License; and the Product License incorporates the Terms of Service and the System License. Accordingly, if the Court finds that any *one* agreement applies, they *all* do.[7]

The named Plaintiffs and every putative class member agreed to these terms. *First*, the named Plaintiffs and all putative class members downloaded games from the PlayStation Store. Am. Compl. ¶¶ 14–16, 78. So, depending on when they created their account and purchased games, they are subject to at least one of the 2019 Terms of Service, the 2020 Terms of Service, the 2021 Terms of Service, the 2022 Terms of Service, the 2023 Terms of Service or all five.[8] The 2019 Terms of Service itself contains a class-action waiver and an arbitration agreement. The 2020, 2021, 2022, and 2023 Terms of Service each contain an arbitration agreement and a class-action waiver and also incorporate by reference the System License and Product License, each of which also contains a class-action waiver and an arbitration agreement.

*Second*, the named Plaintiffs and all putative class members who used a PlayStation 4 or PlayStation 5 console are subject to a class-action waiver and an arbitration agreement by virtue of their agreement to the respective System License (and thus the Product License). The System License applies to anyone who uses a PlayStation 5 console and contains a class-action waiver and an arbitration agreement, and it incorporates by reference the Product License, which also contains a class-action waiver and an arbitration agreement. The System License governing use of the PlayStation 4 console contains materially identical class-action waiver and arbitration provisions. Ex. J § 9. Thus, the named Plaintiffs and the putative class members are subject to class-action waivers and arbitration agreements that apply to this case.[9] Am. Compl. ¶¶ 14–16; *see id.* ¶ 78.

---

[7] The sole exception is that, as noted, the April 2019 Terms of Service agreement does not expressly incorporate the other two agreements.

[8] The only exception would be a small number of users who have opted out of certain arbitration and class-action-waiver provisions. The number of users who have opted out of the class-action waiver and arbitration provisions since 2016 is less than .006% of the putative class, which Plaintiffs assert comprises "at least ten million Class members." Am. Compl. ¶ 80; King Decl. ¶ 15. The named Plaintiffs' names do not appear in Sony's opt-out records. *Id.*

[9] Although the named Plaintiffs entered arbitration agreements, they claim Sony has waived its right to compel them into arbitration for the specific claims alleged in the Amended Complaint. *See* Third Joint Case-Management Statement at 7, ECF No. 106. As discussed below, no such waiver argument applies to the putative class members.

## ARGUMENT[10]

### I. The issues presented in this motion are ripe for decision now.

Under Ninth Circuit caselaw, a defendant need not wait for the plaintiff to move for class certification and can instead make a preemptive motion to deny class certification. *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021). Such a motion is especially appropriate in this case. *See id.*

The full discovery, data analysis, expert work, and briefing necessary to address the full range of Rule 23 factors would be expensive and onerous to the parties and third parties and burdensome on the Court. The named Plaintiffs' proposed class includes millions of people, who purchased hundreds of different games, at different times, and at different prices. This is *not* a case where the plaintiff alleges a uniform price-fixing conspiracy. Rather, the named Plaintiffs' theory is that discontinuing game-specific download codes caused everyone who purchased any one of hundreds of different PlayStation Store games (regardless of whether that game had ever even been offered via a game-specific download code) at any time during a several-year period to pay inflated, supracompetitive prices for digital PlayStation games.

This theory requires extensive discovery into and analysis of the prices that millions of consumers paid in millions of transactions. Indeed, named Plaintiffs' First Set of Requests for Production show as much. For example, in one request alone, Plaintiffs seek 13 categories of "granular" information for *every* digital game, add-on content, or accessory sold over a course of many years. In addition, named Plaintiffs' theory would require evidence and analysis into how those millions of transactions might have been priced in a counterfactual "but-for" world where Sony had continued to offer game-specific download codes. In other words, to meet their burden to show common impact under Rule 23, Plaintiffs would need to show that they can demonstrate that "all or virtually all" of the members of the putative class were injured, *i.e.*, the price that each

---

[10] This motion is limited to the two arguments based on the contractual arbitration obligations and class action waivers; Sony reserves the right to present additional arguments in opposition to any motion for class certification the named Plaintiffs file.

of them actually paid for any game they purchased from the PlayStation Store was higher than it would have been if Sony had continued to offer game-specific download codes. *In re Optical Disk*, 303 F.R.D. at 321, 324.

Sony needs to conduct discovery necessary to rebut any such assertion by Plainiffs. And some of the information potentially relevant to these issues, *e.g.*, prices consumers actually paid to retailers for PlayStation games and for competitive products where the supplier continued to offer game-specific download codes, is in the hands not of the parties, but of *third parties* such as retailers and competitors. In short, extensive party and third-party discovery, and likely voluminous expert reports, are required to test whether millions of digital game purchasers suffered a common antitrust injury as a result of the challenged conduct.[11]

But the extensive work necessary to address and resolve the full Rule 23 analysis can be avoided because the proposed class fails for two threshold reasons: (1) the named Plaintiffs and nearly every putative class member are subject to an agreed-upon class-action waiver, and (2) nearly every putative class member has an arbitration obligation. Each of these grounds is ripe for decision now. Courts in this Circuit have repeatedly granted preemptive motions to deny class certification where class-action waivers or arbitration agreements defeat class certification or where the named plaintiffs are not subject to such agreements but the putative class members are. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 958 (N.D. Cal. 2017) (granting preemptive motion because the putative class members were subject to arbitration agreements ); *Gile v. Dolgen Cal. LLC*, No. 20-cv-01863, 2022 WL 3574168, at *2–3 (C.D. Cal. Aug. 2, 2022) (same); *Valencia v. VF Outdoor, LLC*, No. 20-cv-01795, 2021 WL 5154161, at *4–5 (E.D. Cal. Nov. 5, 2021), *adopted*, 2021 WL 5811932 (E.D. Cal. Dec. 7, 2021) (same); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456, 2018 WL 6727825, at *7–8 (N.D. Cal. Dec. 21, 2018) (same); *see Lawson*, 13 F.4th at 913 (affirming grant of preemptive motion where

---

[11] *See Ward v. Apple Inc.*, No. 12-cv-05404, 2018 WL 934544, at *3 (N.D. Cal. Feb. 16, 2018) (holding that the named plaintiff must establish common antitrust impact to certify the class).

the putative class members were subject to class-action waivers and arbitration agreements). This Court should do the same here.

## II. The Agreements are valid contracts.

Binding caselaw requires enforcement of the Agreements. The System License is a so-called "clickwrap" agreement—the user is presented with the terms of the agreement and then clicks an "accept" button (or the like). *See Oberstein v. Live Nation Entmt., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023).[12] Courts "routinely" uphold clickwrap agreements as valid contracts. *Id.*

The Terms of Service are what some courts have called a "hybrid" agreement—the user is presented with a link to the terms of the agreement and then clicks an "accept" button (or the like). *See id.*; *Allen v. Shutterfly, Inc.*, No. 20-cv-02448, 2020 WL 5517172, at *6–7 (N.D. Cal. Sept. 14, 2020). These agreements also are consistently enforced as valid contracts. *E.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) (Seeborg, C.J.); *Allen*, 2020 WL 551712, at *6 (collecting cases). As explained above, PlayStation users are repeatedly presented with links to the Terms of Service near buttons stating "Agree" or "Confirm Purchase" that must be affirmatively clicked. Near the button it states that by clicking this button, the user is entering the Terms of Service. *See Oberstein*, 60 F.4th at 515–16 (enforcing arbitration agreement in similar circumstances). Indeed, courts have previously upheld the arbitration agreement in Sony's Terms of Service. *Mendez v. Sony Computer Ent. Am., LLC*, No. 20-cv-00588, 2021 WL 2459467 (D. Idaho June 16, 2021); *see also* Order re Arbitration, *Crawford v. Sony Interactive Ent. LLC*, No. 20-cv-01732 (N.D. Cal. Mar. 30, 2021), ECF No. 25 (enforcing arbitration obligations and class-action waiver in Sony's System License and Terms of Service).

---

[12] Unless otherwise indicated, internal quotation marks, alterations, and citations have been omitted from quotations throughout.

Users also agreed to the Product License because it is incorporated by reference into both the System License and the Terms of Service.[13] *See Abidzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) ("Clickwrap agreements are enforceable . . . when they incorporate terms and conditions by reference."). As the Ninth Circuit has explained, an online contract may incorporate other terms by reference "so long as the incorporation is clear and unequivocal, the reference is called to the attention of the other party and he consents thereto, and the terms of the incorporated document are known or easily available to the contracting parties." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019).

Here, the 2020, 2021, and 2022 Terms of Service provide[14]:

> In addition to this Terms of Service and User Agreement ("**Agreement**" or **"Terms**"), the following terms apply and form part of your contract with us: (a) the System Software License Agreement, which governs the use of the software embedded in a PlayStation, PlayStation 2, PlayStation Portable, PlayStation 3, PlayStation Vita, PlayStation TV, PlayStation Classic, PlayStation 4, or PlayStation 5 system (a "**PlayStation Device**"); and (b) all applicable Software Product License Agreements (which govern your use of PlayStation game, mobile, and application software developed to operate on an PlayStation Device). Copies of these documents can be found at www.playstation.com/legal.

Ex. F § 1.4; Ex. G § 1.4. Ex. H § 1.4 (emphases and hyperlink in originals). This incorporation is clear and unequivocal, constitutes its own section, and provides a clickable hyperlink to the incorporated agreements. *See B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 951–52 (Cal. Ct. App. 2022) (upholding the incorporation of an arbitration provision in similar circumstances).

In sum, the named Plaintiffs and every putative class member entered into multiple arbitration provisions and class-action waivers that apply to this litigation.

---

[13] As noted above, the sole exception is that the 2019 Terms of Service do not expressly incorporate the Product and System Software Licenses. This variation is immaterial to the analysis because the 2019 Terms of Service, standing alone, contain both an enforceable mandatory arbitration requirement and an enforceable class-action waiver. Ex. I at 17–18.

[14] Section 1.4 of the 2023 Terms of Service uses a slightly different definition of "PlayStation Device" but is otherwise identical. *See* Ex. E § 1.4.

### III. The class-action waivers foreclose the proposed class.

#### A. By their terms, the class-action waivers bar the proposed class.

The named Plaintiffs admit that they own and use PlayStation 5 consoles. Am. Compl. ¶¶ 14–16. So, as discussed above, they agreed to the PlayStation 5 System License Agreement, which included the following provision: "***ANY*** DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION ***OR COURT***, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTAIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS . . . ." Ex. B § 8. They also agreed to an identical provision in the Product License Agreement, which was incorporated by reference in the Terms of Service. Ex. D § 6 (caps in original, emphasis added). Accordingly, the named Plaintiffs cannot represent the proposed class. *Flores-Mendez v. Zoosk*, 20-cv-04929, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) (denying class certification because the named plaintiff signed a class-action waiver); *Jeong v. Nexo Cap. Inc.*, No. 21-cv-2392, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022) (striking class allegations because the named plaintiff signed a class-action waiver); *Lacour v. Marshalls of CA, LLC*, No. 20-cv-07641, 2021 WL 1700204, at *7 (N.D. Cal. Apr. 29, 2021) (same).

These waivers unambiguously apply to court proceedings ("or court"). Ex. B § 8; Ex. D § 6; *see, e.g., Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (stating that the same language—"any dispute resolution proceedings, whether in arbitration or court"—applied "to all of Plaintiff's claims in this case"); *Horton v. Dow Jones & Co.*, 804 F. App'x 81, 84 (2d Cir. 2020) (holding that a class-action waiver in arbitration section of agreement applied to court proceedings as well); *Bock v. Salt Creek Midstream LLC*, No. 19-cv-1163, 2020 WL 5640669, at *9 (D.N.M. Sept. 22, 2020) (reaching the same conclusion for a similar provision). To limit the class-action waivers to arbitration would delete "or court" from the agreements completely.

Because the named Plaintiffs cannot proceed in a class, the Court need not go further than the named Plaintiffs in resolving this motion and denying class certification now. If, however, the

Court does consider the putative class members, nearly all putative class members are *also* subject to class-action waivers that prohibit class certification. By the putative class definition, *see* Am. Compl. ¶ 78, all putative class members entered the Terms of Service, which incorporates the Product License Agreement, which in turn has a class-action waiver. More directly, as discussed above, everyone who used a PlayStation 5 or PlayStation 4 console entered the respective System License Agreement, which both contain a class-action waiver. Because nearly all putative class members are subject to class-action waivers, the named Plaintiffs' proposed class cannot be certified. *See O'Connor v. Uber Techs.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018) (reversing class certification because the putative class members had entered agreements to arbitrate and class-action waivers).

**B. Sony has not waived its right to enforce the class-action waivers.**

Plaintiffs have indicated that they intend to argue that, because Sony twice moved to dismiss the named Plaintiffs' claims under Rule 12(b)(6)—once successfully—Sony has somehow waived its right to enforce the class-action waivers. *See* Third Joint Case-Management Statement at 7, ECF No. 106. Not so. A party waives a contractual right when it is aware of the right and then acts inconsistently with it. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). There is nothing inconsistent about moving to dismiss the named Plaintiffs' claims on the merits and then requiring the named Plaintiffs to abide by their agreement to proceed on an individual basis. Whether a plaintiff has stated a claim and whether a class can be certified are two different questions.

Separately, Sony is making this motion before the Court has made any substantive rulings beyond resolving the motions to dismiss and before the Parties have begun the briefing and expert reports that would be necessary for the Court to adjudicate all the Rule 23 issues presented by the Plaintiffs' desire to proceed as a class. *See Flores-Mendez*, 2022 WL 2967237, at *1 (holding that the defendant had not waived its ability to enforce a class-action waiver where it had waited *until* class certification to press the issue). Adopting Plaintiffs' view would require a defendant to raise class-certification issues at the pleadings stage, cluttering Rule 12 motions with extra-pleading

issues, implicating potential factual issues (some of which may require investigation), and distracting from the merits. This would risk devolving the pleadings stage into a class-certification mini-trial. Indeed, Plaintiffs' claim that "discovery will be warranted" to oppose this motion betrays their argument that Sony should have raised the issue at the pleading stage. Third Joint Case-Management Statement at 7-8, ECF No. 106. In short, nothing in Rule 23 or the caselaw requires a defendant to raise class-action waivers before moving to dismiss claims.

### C. The class-action waivers are not unconscionable.

Plaintiffs may also argue that the class-action waivers are unconscionable. They are not. Under California law, a contract provision is unconscionable only if it is both procedurally and substantively unconscionable. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (en banc). The class-action waivers here are neither.

Procedural unconscionability concerns the procedural "oppressiveness" of the contract. *Id.*[15] In the arbitration-agreement context, the Ninth Circuit has held that such oppressiveness exists only if the contract is "adhesive" and that a provision is not adhesive if the party can opt out. *Id.*; *see Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) ("[Plaintiff] was not presented with a contract of adhesion because he was given the opportunity to opt-out . . . ."). Here, users could opt out of the class-action waivers by mailing in written notice within 30 days. Indeed, a number of users did just that. These waivers, therefore, are not procedurally unconscionable. *See Mohamed*, 848 F.3d at 1211 (holding opt-out provision eliminated any procedural unconscionability even where it required users to opt out in person or via overnight delivery service).

Even if the class-action-waiver provisions were adhesive, which they are not, that would not change the result. "Oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives." *Adkins v. Facebook, Inc.*,

---

[15] "Unfair surprise" can also sometimes lead to procedural unconscionability. *See Mohamed*, 848 F.3d at 1210. But considering that the class-action provisions here are plainly stated, in all caps, in both agreements, and that a *separate* all-caps notice is on the front page of both agreements, there can be no plausible argument of unfair surprise.

18-cv-05982, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (quoting *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (Cal. Ct. App. 2005)). "[W]hen the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply forgoing the activity." *Id.* Although enjoyed by many consumers, neither the PlayStation 5 console nor its games fall into the limited category of "one of life's necessities." *See id.* (holding that an agreement was not procedurally unconscionable because users could always forgo Facebook); *Flores-Mendez*, 2022 WL 2967237, at *2 (same for a dating app). Also, as the Amended Complaint acknowledges,[16] users have "reasonable market alternatives" to the PlayStation, including the Xbox, the Switch, PC games, and mobile gaming. *Flores-Mendez*, 2022 WL 2967237, at *2. This too defeats any claim of procedural unconscionability.

Further, the class-action waivers are not substantively unconscionable—an additional and separate element. Substantive unconscionability requires more than "a simple old-fashioned bad bargain"—the terms must be "so one-sided as to shock the conscience." *Mohamed*, 848 F.3d at 1210. The class-action waivers here come nowhere close to this high standard. Indeed, just last year, two different judges from this District rejected unconscionability challenges to materially indistinguishable class-action waivers. *Flores-Mendez*, 2022 WL 2967237, at *2; *Jeong*, 2022 WL 3590329, at *15.

The class-action waivers are reason enough to deny class certification now.

## IV. The proposed class should be denied because nearly every putative class member is subject to a binding arbitration agreement.

Except for the small number of users who chose to opt out of the arbitration agreements, every member of the named Plaintiffs' proposed class has agreed to arbitrate any claims they may have in this case. *See supra* 6–7. They therefore cannot participate in the named Plaintiffs' proposed class. *O'Connor*, 904 F.3d at 1094 (reversing class certification because the "class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their

---

[16] *See* Am. Compl. ¶ 57 (alleging that Sony's, Microsoft's, and Nintendo's respective consoles have "roughly equal market share").

right to participate in a class action with regard to those claims"). The Court should thus deny class certification. *Indep. Living Res. Ctr. v. Lyft, Inc.*, No. 19-cv-01438, 2020 WL 6802410, at *2 (N.D. Cal. Nov. 19, 2020); *Pablo v. ServiceMaster Global Holdings*, No. 08-cv-03894, 2011 WL 3476473, at *2–3 (N.D. Cal. Aug. 9, 2011); *Tschudy v. J.C. Penney Corp., Inc.*, No. 11-cv-1011, 2015 WL 8484530, at *4 (S.D. Cal. Dec. 9, 2015).

The Court should decide this matter now, rather than waiting until it needs to address the full spectrum of Rule 23 issues that will be presented by the named Plaintiffs' anticipated motion for class certification. *First,* the issue is ripe for decision—no facts are reasonably in dispute and Sony is raising it timely through this motion. *Second*, the resolution of this dispositive issue now will save both the parties and third parties tremendous and unnecessary expenditure of resources, not to mention conserving the Court's resources needed to address voluminous expert reports and Rule 23 briefing. *See Indep. Living Res. Ctr.*, 2020 WL 6802410, at *2; *Pablo*, 2011 WL 3476473, at *2–3; Section I, *supra*.

Plaintiffs have indicated they will argue that Sony has waived its arbitration rights even *as to the putative class members*. Third Joint Case-Management Statement at 7-8, ECF No. 106. This argument fares no better than it did for the class-action waivers. Again, Sony sought to dismiss (once successfully) the named Plaintiffs' claims under Rule 12(b)(6). Mot. to Dismiss, ECF No. 45; Mot. to Dismiss, ECF No. 67. Had Sony been ultimately successful, the ruling would have bound *only* the named Plaintiffs; it would not have impacted any claims the putative class members might have. Moving to dismiss the named Plaintiffs' individual claims in their chosen forum—then and now the only claims in existence—says nothing about what forum was or is appropriate for claims by the *putative class members*. There is nothing inconsistent about Sony moving to dismiss the named Plaintiffs' claims but planning to enforce its arbitration rights as to different parties that have not yet brought claims. Indeed, courts in the Ninth Circuit have rejected waiver arguments even when the defendant waits until class certification (or after) to press the putative

class members' arbitration agreements. *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 WL 1753784, at *2–4 (N.D. Cal. May 9, 2011).[17]

The few decisions finding waiver as to putative class members differ markedly from the posture of this case. For example, in *Hill*, the Ninth Circuit found waiver as to the putatitive class when the defendant, *inter alia*, had (1) repeatedly referenced one arbitration agreement but not the other in its filings, (2) made discovery requests of putative class members who were subject to the arbitration agreement, (3) pursued an interlocutory appeal on a dispositive merits issue, which would have impacted the putative class members' claims, for nearly five years, and (4) even after raising the arbitration issue and saying it would file its own decertification motion, it never did so. 59 F.4th at 473–78. There, the defendant engaged in litigation activity far more extensive than here and more importantly, unlike here, engaged in litigation activity *directed at the putative class members*. Indeed, the Ninth Circuit emphasized that the defendant had "explicitly sought extensive discovery" from the putative class members that were subject to the arbitration agreement. *Id.* at 475. Because the defendant there engaged in extensive litigation conduct directed at the putative class members without pressing its arbitration right, the court found it reasonable to conclude that the defendant was waiving that right. But here, Sony's motions to dismiss were directed only at the named Plaintiffs. They could not have been otherwise.

Plaintiffs' proposed rule—a defendant waives its rights as to putative class members by moving to dismiss the named plaintiff's claims—finds no support in law. It would also be one-sided. At the pleadings stage, a defendant has no mechanism to challenge the merits of putative class members' claims or to compel putative class members to arbitrate. Nor would any arbitration against named plaintiffs include or be binding on putative class members. They are not yet in the

---

[17] *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421, 2020 WL 6787135, at *3 (N.D. Cal. Oct. 8, 2020); *Geiger v. Charter Commc'ns, Inc.*, No. 18-cv-158, 2019 WL 8105374, at *4 (C.D. Cal. Sept. 8, 2019); *Mora v. Harley-Davidson Credit Corp.*, No. 1:08-cv-01453, 2012 WL 1189769, at *15 (E.D. Cal. April 9, 2012); *see Freitas v. Cricket Wireless, LLC*, No. 19-cv-7270, 2022 WL 1082014, at *1 (N.D. Cal. Apr. 11, 2022) (granting motion to compel arbitration filed after class certification).

case. Yet, under Plaintiffs' theory, although a defendant cannot *enforce* its rights as to putative class members, it can nonetheless *waive* them.

Further, Plaintiffs' rule would impose a Hobson's choice. Every time a putative class action is filed, Plaintiffs would require a defendant to either forgo its rights under the Federal Rules of Civil Procedure to challenge a named plaintiff's claims or forgo its contractual arbitration rights as to the putative class members. And Plaintiffs would require this choice to be made before the defendant necessarily knows who is in the putative class or what agreements it may have with them.[18] This cannot be the rule.

Nearly every putative class member is subject to an arbitration agreement and thus cannot participate in the named Plaintiffs' proposed class. For this reason too, the named Plaintiffs' proposed class should be denied.

## CONCLUSION

For two independent reasons, the named Plaintiffs' proposed class is invalid as a matter of law: (1) the named Plaintiffs and nearly every putative class member is subject to a class-action waiver, and (2) nearly every putative class member has arbitration obligations and thus cannot participate in the named Plaintiffs' proposed class. The Court should resolve this issue now, so that the parties can calibrate discovery appropriately and avoid any unnecessary class discovery, which is likely to be exceptionally onerous in this case for both the parties and third parties.

The Court should deny certification of the named Plaintiffs' proposed class.

[18] To adopt Plaintiffs' position would ignore the bedrock legal principle that contractual rights are held individually. That a party has waived its rights as to one counterparty is not itself a basis to conclude that it has waived its rights as to anyone else.

Dated: November 16, 2023

Respectfully submitted,

*/s/ John F. Cove, Jr.*

John F. Cove, Jr. (SBN 212213)
Patrick T. Hein (SBN 254431)
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
john.cove@shearman.com
patrick.hein@shearman.com

Brian C. Hauser (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8058
brian.hauser@shearman.com

SHEARMAN & STERLING LLP

*Attorneys for Defendant*
*Sony Interactive Entertainment LLC*