John F. Cove, Jr. (SBN 212213)
Patrick T. Hein (SBN 254431)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
john.cove@shearman.com
patrick.hein@shearman.com

Brian C. Hauser (*pro hac vice*)
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8000
brian.hauser@shearman.com

*Attorneys for Defendant*
*Sony Interactive Entertainment LLC*

*Additional counsel for the parties below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AGUSTIN CACCURI, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC<br><br>Defendant. | Cons. Case No.:  3:21-cv-03361-AMO<br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>**STIPULATED ORDER RE: PRIVILEGE AND THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br>**\*As Modified By the Court\*** |

The parties to the above-captioned litigation ("Litigation"), through their counsel, have stipulated and agreed to give effect to this Stipulated Order regarding Privilege and the Discovery of Electronically Stored Information ("ESI") ("Order") to facilitate discovery in this Litigation.

**1.    PURPOSE**

This Order will govern privilege and discovery of ESI in this case as a supplement to the

Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.      COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.      LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.      PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. In addition, to reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only potentially relevant ESI created or received between a date range to be agreed upon between the parties after meeting and conferring will be preserved;

b) The parties will agree on the number of custodians per party for whom ESI will be preserved;

c) The parties have discussed data sources that may not be reasonably accessible under Rule 26(b)(2)(B).

   i. Plaintiffs are not presently aware of any accessibility issues relating to their potentially relevant data.  Plaintiffs will update counsel for Defendant promptly if any accessibility issues come to light.

   ii. Defendant reserves all right to make any objections to discovery requests, including data sources that may not be reasonably accessible.

d) Among the sources of data the parties agree are not reasonably accessible, the parties

agree not to preserve, collect, and/or retrieve the following, subject to any party's right to request production from the following sources upon a showing of good cause:

i. backup media;

ii. documents deleted in the normal course of business before the time a preservation obligation in this Litigation came into effect;

iii. deleted, "slack," fragmented, or unallocated data;

iv. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

v. on-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

vi. data in metadata fields frequently updated automatically, such as last-opened or last-printed dates; and

vii. server, system, network, or software application logs.

**5.    CUSTODIANS AND SEARCH**

5.1    Purpose:  The parties will meet and confer to discuss methods to search for and identify ESI that is subject to review and potential production in discovery and filter out ESI that is not subject to discovery.

5.2    Custodians: The parties are engaged in a good faith negotiation over custodians and will continue to meet and confer in an effort to come to agreement on the appropriate custodians.  If the parties reach an impasse, they may submit the dispute to the Court in accordance with the assigned judge's procedures.

5.3    Technological Restrictions:  If any party intends to employ an electronic search to locate discoverable ESI, that party shall disclose any anticipated restrictions as to scope and method or other technological deficiencies or difficulties that might affect their ability to conduct a complete electronic search of the electronic documents.

5.4    Search Terms:  After written responses to discovery requests made under Fed. R. Civ. P. 34 are served, the parties shall timely cooperate in good faith and reach an agreement on the search terms to be applied.

5.5    Non-Custodial Sources:  Should either party determine that any non-custodial

sources, such as databases, contain potentially relevant ESI not obtainable from custodial sources, the parties will discuss a process for searching such sources.

      5.6    <u>System Files</u>:  The parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

## 6. PRODUCTION FORMATS

      6.1    <u>Productions from other proceedings</u>:  Notwithstanding the production specifications set forth in this Order, to the extent parties produce documents and privilege logs that were produced in other proceedings, including but not limited to governmental investigations or other litigations, the producing party may elect to produce that information either in the form it was produced in the other proceeding or subject to the specifications set forth in this Order.  A party producing documents that were previously produced in a prior proceeding shall be under no obligation to conform that production to the specifications in this Order.

      6.2    In accordance with Federal Rule of Civil Procedure 24(b)(2)(E)(i), the producing party shall produce documents as they exist in the ordinary course of business and therefore shall not be required to organize or label productions to correspond to specific discovery requests.  Any custodial files or non-custodial document sources will be produced in the reasonably usable and searchable format as set forth herein.

      6.3    <u>Production specifications</u>.  ESI shall be produced as Concordance load files, with TIFF images and document level .txt files for all documents containing extracted full text when present, or OCR text only when no extracted text exists or redactions are present.  When some extracted text exists, OCR text is preferred.

      Excel files will be produced natively and with TIFF placeholders.  When the native Excel file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history.  Unless otherwise agreed by the parties, all productions must also be made in accordance with the following specifications:

    a)   a load file for images;

    b)   a delimited load file (.dat) containing a field with the full path and filename to native

Excel files produced and metadata fields identified below (for ESI);

c) document level .txt files for all documents containing extracted full text when present, or OCR text only when no extracted text exists or redactions are present;

d) if a TIFF file is produced instead of a native file, all hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be expanded, extracted, and rendered into the TIFF file. This specifically includes, but is not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in TIFF format;

e) A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in native format;

f) Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

g) for password protected and encrypted ESI, the producing party will take reasonable steps to locate and apply passwords and encryption keys so that responsive documents can be reviewed and produced. If reasonable efforts have been made, but are unsuccessful, the parties shall meet and confer;

h) all ESI should be processed in Universal Coordinated Time (UTC) and produced with a field called "Time Zone Processed" containing the value "UTC"; and

i) the following fields and metadata to the extent the information is available in the original ESI file (except for the agreed-upon vendor-generated fields related to litigation production, such as BegDoc and EndDoc):

| *Field* | *Data Type* | *Loose Native Files & Attachments* | *Email & Attachments* | *Calendar Entries* |
|---|---|---|---|---|
| BegDoc | Integer – Text | Start Bates | Start Bates | StartBates |
| EndDoc | Integer – Text | End Bates | End Bates | EndBates |
| AttachCount | Integer – Text | Number of attachments | Number of attachments | Number of attachments |
| BegAttach | Integer – Text | Starting Bates number of document family | Starting Bates number of document family | Starting Bates number of document family |
| EndAttach | Integer – Text | Ending Bates number of document family | Ending Bates number of document family | Ending Bates number of document family |

| Field | Data Type | Loose Native Files & Attachments | Email & Attachments | Calendar Entries |
|---|---|---|---|---|
| PageCount[1] | Integer – Text | Number of pages | Number of pages | Number of pages |
| Custodian | Text – Paragraph | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production.<br><br>For non-custodial documents (e.g., department files), all department or other name associated with the files | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production<br><br>For non-custodial documents (e.g., email listservs), all department or other name associated with the emails & attachments | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production<br><br>For non-custodial documents (e.g., email listservs), all department or other name associated with the emails & attachments |
| Confidential | Text – paragraph | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| Doc Extension | Text – paragraph | Doc extension field of metadata associated with file | Doc extension field of metadata associated with email | Doc extension field of metadata associated with calendar entry |
| FileName | Integer – Text | File Name | | |
| From | Text – paragraph | | Sender of message | Sender of calendar invite |
| To | Text – paragraph | | Recipients of message | Recipients of calendar invite |
| CC | Text – paragraph | | Copied recipients | |
| BCC | Text – paragraph | | Blind copied recipients | |

---

[1] The PageCount field applies to documents produced in TIFF format and shall not be required for documents produced in native format, including native Excel documents.

STIP. ORDER RE: PRIV. AND DISC. OF ELECTRONIC INFO     6     CONS. CASE NO. 3:21-cv-03361-AMO

| *Field* | *Data Type* | *Loose Native Files & Attachments* | *Email & Attachments* | *Calendar Entries* |
|---|---|---|---|---|
| Subject | Text – paragraph | | Subject of message | Subject of calendar invite |
| DateSent | Date (mmddyyyy) | | Date message sent | Date calendar invite sent (if any) |
| TimeSent | Time (HH:mm:ss) | | Time message sent | Time calendar invite sent (if any) |
| DateReceived | Date (mmddyyyy) | | Date message received | Date calendar invite received (if any) |
| TimeReceived | Time (HH:mm:ss) | | Time message received | Time calendar invite received (if any) |
| DateCreated | Date (mmddyyy) | Date file was created | | |
| TimeCreated | Time (HH:mm:ss) | Time file was created | | |
| DateModified | Date (mmddyyy) | Date file was last modified | | |
| TimeModified | Time (HH:mm:ss) | Time file was last modified | | |
| Title | Text – paragraph | Title from document metadata | | |
| Author | Text – paragraph | Document authors from metadata | | |
| LastModifiedBy | Text – paragraph | Document modifier from metadata | | |
| MD-5 Hash Value or SHA-1 Hash Value | Integer – Text | Hash value | Hash value | Hash value |
| Redaction | Integer – Text | Indicates whether a redaction has been made to any page of the document | Indicates whether a redaction has been made to any page of the document | Indicates whether a redaction has been made to any page of the document |
| File/folder path | Text – paragraph | Full path to the file(s) at its original location(s), | Path to the email's/emails' folder location(s), | Path to the calendar entry's/entries' folder |

| Field | Data Type | Loose Native Files & Attachments | Email & Attachments | Calendar Entries |
|---|---|---|---|---|
| | | including for duplicates | including for duplicates | location(s), including for duplicates |
| Conversation thread | Text – paragraph | | Field of metadata tying related emails, where available in the email metadata | |
| ItemType | Text – paragraph | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| FileSize | Integer – Text | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| NativeLink | Text – paragraph | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TextLink | Text – paragraph | Link to text file for the document | Link to text file for the email | Link to text file for the calendar entry |
| Time Zone Processed | Text – paragraph | UTC (Universal Coordinated Time) | UTC (Universal Coordinated Time) | UTC (Universal Coordinated Time) |

Each of the fields set forth above shall be produced for a document. The parties are not obligated to populate manually any of the fields if such fields cannot be reasonably extracted from a document, with the exception of fields that are generated in the course of collection, review, and production (e.g. "Duplicate File/Folder Path"). If metadata fields are not produced because they do not exist or because they are not reasonably accessible, the producing party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

If a particular document warrants a different format than those set forth above, the parties will cooperate in good faith to arrange for the mutually acceptable production format. The parties agree not to degrade the searchability of documents as part of the document production process.

6.4     <u>Bates Numbering and Other Unique Identifiers</u>. Every item or file of ESI that is

produced shall be identified by a legal, unique page identifier (Bates number) and a unique Volume number for any storage device (i.e., CD, USB, hard drive) containing such files. All ESI that is permitted to be, and is, produced in non-native format shall contain a unique Bates number on each page of the document. Each Bates number will: (i) maintain a constant length across the entire production (i.e., ABC00000001- with no space between the prefix and the number, padded to the same number of characters); (ii) contain no special characters other than underscores (_) or hyphens (-); and (iii) be sequential within a given document.

6.5     Media. Documents shall be produced via secure Electronic File Transfer portal.  If a party finds it necessary to produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"), it will inform the other party prior to production. Each item of Production Media shall include a unique identifying label and cover letter including the following information: (i) name of the Litigation and case number; (ii) the identity of the producing party; (iii) the production date; (iv) production volume number; and (v) the Bates number range of the materials contained on such Production Media item; (vi) confidentiality designation, if any; and (vii) notes regarding any irregularities in the production (e.g., whether it is a replacement production).

Producing parties may encrypt their production media and, if so, shall provide a key to decrypt the production media in a separate communication.

6.6     Attachments.  Email attachments must be mapped to their parent by the document or production number. If attachments or embedded files are combined with their parent documents, then "BegAttach" and "EndAttach" fields (or the functional equivalent) listing the unique beginning and end number for each attachment or embedded document must be included. To the extent a party believes an embedded file or link is necessary, the parties will attempt to work in good faith to retrieve the identified document(s).

6.7     Redactions.    To the extent that a responsive document contains privileged content (e.g., attorney-client privilege or attorney work product), sensitive personally identifying information ("PII"), or to comply with federal or state privacy requirements (i.e., HIPAA), the

producing party may produce that document in redacted form. To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document and a metadata field shall indicate that the document contains redactions. Where a responsive document contains both redacted and non-redacted content, the producing party shall produce the remainder of the non-redacted portions of the document. The production of a document in a redacted form does not affect the producing party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log. Redacted documents may be produced in TIFF image or native format. Redacted documents need not be produced in native format in the first instance. The parties, however, reserve their respective rights to request production of redacted documents in native format upon a showing of good cause, with the understanding that relevant portions of native files to be replaced with "[REDACTED]" or a similar mark as necessary.  If the receiving party finds a document to be incomprehensible or unintelligible because of a redaction, the parties will meet and confer to try in good faith to resolve the dispute. For redacted electronic files, the parties agree to produce a Concordance or Summation Load/Unitization File (depending on the preference of the requesting party), with metadata in the dat. file.

      Native Excel or other spreadsheet files that are redacted for privilege, PII, or to comply with federal or state privacy requirements (i.e., HIPAA) may be redacted by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted" and shall make clear the reason for the redaction (e.g., "PII" or "Privilege") provided that such redaction does not alter any other unredacted cell(s) in the document. The party producing redacted native format ESI must endeavor to produce the redacted native format ESI with all metadata fields identified above. If the usefulness of the redacted native format ESI is significantly impacted by the loss of certain metadata fields identified in Paragraph 6.3, the parties shall meet and confer in good faith in order to reach a resolution for the production of such metadata without the production of the unredacted native format ESI itself.

      Native Excels or other spreadsheet files that are redacted may be produced as single-page,

300 dpi Group IV TIFF images with load files.

For avoidance of doubt, no redactions based on relevancy or responsiveness are permitted under this Order. The parties shall timely meet and confer in the event a producing party believes that a particular document contains information that is so highly sensitive that redactions are appropriate, subject to a good cause showing.

6.8  <u>Foreign Language Text</u>. The parties will use reasonable industry standards, software, and techniques, or their reasonable equivalents, (including but not limited to the use of UTF-8 format for text and load files) to attempt to ensure that all technologies and processes used to collect, process and produce the text of any document—including all TIFF conversion and OCR processes, and the extraction of text from native files—preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

6.9  <u>Global Deduplication</u>. To reduce the unnecessary costs of reviewing and producing exact duplicate documents, the parties may use reasonable, good-faith efforts to avoid the production of duplicate ESI. The parties may use software to identify duplicate documents that are in files of individual or multiple custodial and/or non-custodial files. To the extent there are duplicate documents, the producing party need only produce a single copy of a responsive document, unless the requesting party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level). For each document that is removed as a duplicate, metadata identifying all custodians in possession of the document and the file path information for all duplicates that are removed must be produced by being added to the "Custodian" and "File/folder path" fields in the production

Load/Unitization File. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

      6.10     <u>Email Threading</u>. Where multiple email messages are part of a single chain or "thread," a party is required to produce each message in the chain.

      6.11     <u>Parent-Child Relationships</u>. For ESI only, parent-child relationships (association between an attachment and its parent document) shall be preserved. Any responsive attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.  If any document within a document family is responsive, the entire family of documents must be produced, absent privilege or other permissible objection.

      If a member of a responsive document family cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), such technical issues shall be denoted by producing a Bates-labeled slipsheet stating "Technical Issue – File Cannot Be Processed." If available, metadata for such technically-impaired documents shall be produced. The parties agree to meet and confer in good faith to resolve any disputes over documents deemed to have technical issues.  Blank documents or files, including documents that just include a non-substantive standalone image, such as a signature block, can be excluded from the production.

      6.12     <u>Structured Data</u>.  Structured data (i.e., data that has been organized in a database or other similar formatted data repository) should be produced in a mutually agreeable data exchange format. The parties will meet and confer to determine the potentially relevant databases at issue, including the data fields included in such databases.

      6.13     <u>Replacements</u>.  All files that are replaced for any reason must contain the same Bates number as the file being replaced in accordance with the Stipulated Protective Order entered in this Litigation ("Protective Order").

      6.14     <u>Cost Allocation</u>. The parties agree to bear their own costs relating to the

production, storage, and maintenance of ESI as provided in this stipulation, including costs for machine or human translation of foreign language documents. Such costs shall be non-reimbursable and non-taxable pursuant to 28 U.S.C. § 1920 or otherwise, except as otherwise agreed by the parties, or apportioned by the Court upon a showing of good cause.

The producing party shall bear all costs of producing documents, if any, in TIFF format, and expressly waives any right to seek reimbursement or taxing of such costs pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision.

6.15   <u>Confidentiality of Produced ESI</u>. Responsive ESI shall be produced pursuant to the terms of the Protective Order.

**7.   PHASING**

The parties will meet and confer regarding the phasing of productions.

**8.   DOCUMENTS PROTECTED FROM DISCOVERY AND PRIVILEGE LOGS**

a) As set forth in the Protective Order, the parties shall comply with Fed. R. Civ. P. 26(b)(5)(B) in the event information subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity is produced inadvertently.

b) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a production is not itself a waiver in this case or in any other federal, state, or administrative proceeding.

c) Communications and work product exchanged between a party and its outside counsel that were created after May 5, 2021, and do not copy or include any third party, need not be logged.

d) Communications may be identified on a privilege log by category, rather than individually, if appropriate.

e) The parties may agree to other documents that need not be logged.

f) Communications may be identified on a privilege log by category, rather than individually, if appropriate. Any categorical privilege log entry must include a description of the nature or general subject matter of the communications for each category sufficient to support the claim that the documents within the category are privileged and/or protected. The categorical log shall also include the metadata list in Paragraphs 8(f)(1)-(7). Notwithstanding the forgoing, the decision to log documents on a categorical basis does not waive party's right to adjudicate any challenge(s) to

       privilege on a document-by-document basis.

g) The parties agree that for all documents that are withheld (or redacted) on privilege or work product grounds, at least the following information will be provided in a sortable Excel document:

1. Unique privilege log reference number, and if produced in redacted form, Bates range;
2. An indication of whether the document has been redacted and produced or wholly withheld;
3. Document type;
4. Family relationship (if applicable) (*i.e.*, identification of parent emails and all attachments using privilege log reference number or Bates number, as appropriate);
5. Date (date sent for correspondence such as emails, memos, and letters; date created for other documents);
6. Individuals listed in the to, from cc, and bcc fields (designating which, if any, are attorneys);
7. For non-email communications, the Author(s) (designating which, if any, are attorneys);
8. Description of the documents (or redacted portion of the document) and its subject matter sufficient to establish the privilege or protection as set forth in Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure; and
9. All privilege(s) or protections(s) claimed.

h) With respect to email chains (i.e., documents that reflect multiple, distinct emails), the parties agree that: (i) the parties will not withhold from production responsive non-privileged, substantive portions of email strings where only a portion of the e-mail string is privileged; (ii) the parties' privilege logs need not contain separate log lines for individual emails within a single email chain; and (iii) the parties' privilege logs need not contain separate log lines for emails that are otherwise logged as part of an email chain.

i) All attorneys appearing in the privilege log must be identified on a separate document by name and whether they are or were employed by Defendant.

j) Within thirty (30) days of substantial completion of the production of documents, the producing party shall provide a privilege log or logs providing the above information.

k) If the requesting party requires further information about certain privilege log entries, it shall explain in writing the need for such information and reasonably identify (for example, by Bates number or other unique identifier), the entries for which it seeks this information. Within thirty (30) days of such a request, the producing party must either (i) provide the requested information or (ii) challenge the request. If a party challenges a request for further information, the parties shall meet and confer in good faith to try to reach a mutually agreeable solution. If they cannot agree, the parties may present the dispute to the Court in accordance with the assigned judge's procedures.

## 9. THIRD-PARTY DOCUMENTS

A party that issues a subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the parties to this Litigation have requested that third parties produce documents in accordance with the specifications set forth herein. An Issuing Party shall include an instruction in all subpoenas stating that documents must be produced by the third party to all parties in this Litigation simultaneously, and shall provide the third party with the contact information for counsel for all parties. If a third party makes a production only to one party, contrary to the instructions provided, the receiving party shall promptly replicate the production and produce it to the other party. The parties will issue all subpoenas out of the Northern District of California.

## 10. NO EFFECT ON DISCOVERABILITY OR ADMISSIBILITY

This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Order shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a party as to which that party stipulates, are preserved and may be asserted at any time.

## 11. GOOD FAITH & DISPUTES

The parties shall make their best efforts to comply with, and resolve any differences concerning compliance with, this Order, as necessary, including any issues relating to custodians, data sources, and search methodologies (*e.g.*, search terms) that arise under this Order or otherwise. No party may seek relief from the Court concerning compliance with this Order unless it has conferred in good faith with other affected parties to this Litigation. If the parties reach an impasse, they may submit the dispute to the Court in accordance with the assigned judge's procedures.

## 12. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: December 5, 2023

/s/ John F. Cove, Jr.
John F. Cove, Jr. (SBN 212213)
Patrick T. Hein (SBN 254431)
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
john.cove@shearman.com
patrick.hein@shearman.com

Brian C. Hauser (pro hac vice)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8000
brian.hauser@shearman.com

SHEARMAN & STERLING, LLP

*Attorneys for Defendant
Sony Interactive Entertainment LLC*

/s/ Michael M. Buchman
Michael M. Buchman (admitted pro hac vice)
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY 10017
Tel: (212) 577-0050
mbuchman@motleyrice.com

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

Jeff S. Westerman (State Bar No. 94559)
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
jwesterman@jswlegal.com

*Counsel for Plaintiff Augustin Caccuri*

Steven N. Williams (State Bar No. 175489)
STEVEN WILLIAMS LAW, P.C.
201 Spear Street, Suite 1100
San Francisco, CA 94105
415-697-1509
swilliams@stevenwilliamslaw.com

*Counsel for Plaintiff Adrian Cendejas*

Blake H. Yagman
ISRAELDAVID LLC

17 State Street
Suite 4010
New York, New York 10004
Tel: (212) 739-0622
blake.yagman@davidllc.com

Peggy J. Wedgworth (admitted pro hac vice)
Elizabeth McKenna (admitted pro hac vice)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Counsel for Plaintiff Allen Neumark*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: December 6, 2023

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**