UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| AGUSTIN CACCURI, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) | C-21-03361 AMO |
| PLAINTIFF, | ) | SAN FRANCISCO, CALIFORNIA |
| VS. | ) | MAY 1, 2024 |
| SONY INTERACTIVE ENTERTAINMENT LLC, | ) | PAGES 1-58 |
| DEFENDANT. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ARACELI MARTINEZ-OLGUIN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF: MOTLEY RICE LLC
BY: MICHAEL M. BUCHMAN
800 THIRD AVENUE, SUITE 2401
NEW YORK, NEW YORK 10022

JOSEPH SAVERI LAW FIRM
BY: ELISSA A. BUCHANAN
601 CALIFORNIA STREET, SUITE 1000
SAN FRANCISCO, CALIFORNIA 94108

APPEARANCES CONTINUED ON THE NEXT PAGE

REMOTE REPORTED BY: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED):

FOR THE PLAINTIFF: ZIMMERMAN REED LLP
BY: JEFF S. WESTERMAN
5402 WILSHIRE BOULEVARD, SUITE 1080
LOS ANGELES, CALIFORNIA 90048

FOR THE DEFENDANT: ALLEN OVERY SHEARMAN STERLING US LLP
BY: JOHN F. COVE, JR.
PATRICK T. HEIN
140 NEW MONTGOMERY STREET, 10TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

SAN FRANCISCO, CALIFORNIA MAY 1, 2024

P R O C E E D I N G S

(COURT CONVENED AT 2:01 P.M.)

THE CLERK: YOU MAY BE SEATED.

THE COURT: GOOD AFTERNOON, MS. SHORTRIDGE.

THE REPORTER: GOOD AFTERNOON.

THE CLERK: WE ARE CALLING CASE NUMBER 21-CV-3361, CACCURI VERSUS SONY INTERACTIVE ENTERTAINMENT, LLC.

COUNSEL, WOULD YOU PLEASE COME TO THE PODIUM AND STATE YOUR APPEARANCES, STARTING WITH THE PLAINTIFF, AND THEN DEFENSE.

MR. BUCHMAN: GOOD AFTERNOON, YOUR HONOR.

MICHAEL BUCHMAN FROM MOTLEY RICE ON BEHALF OF PLAINTIFFS.

AND WITH ME HERE TODAY, YOUR HONOR, IS ELISSA BUCHANAN FROM THE JOSEPH SAVERI LAW FIRM, AND JEFF WESTERMAN FROM ZIMMERMAN REED.

THE COURT: GOOD AFTERNOON, COUNSEL.

MR. COVE: GOOD MORNING, YOUR HONOR.

JOHN COVE OF A&O SHEARMAN ON BEHALF OF SONY INTERACTIVE ENTERTAINMENT LLC.

AND WITH ME IS MY PARTNER, PATRICK HEIN, WHO IS GOING TO BE ARGUING THE CLASS MOTION TODAY.

THE COURT: GOOD AFTERNOON, COUNSEL.

ALL RIGHT. WELL, FOLKS, LET ME TELL YOU, I HAD NOT PLANNED, AND I PROBABLY SHOULD HAVE, TO -- I HAD PLANNED TO

JUST SORT OF GO INTO THE STATUS CONFERENCE AS PART -- AT SOME POINT IN HERE.

I'M -- LET ME ASK YOU ALL, MR. COVE AND MR. HEIN, DO YOU HAVE A PREFERENCE FOR WHICH WE DO FIRST? MY INSTINCT WOULD BE TO GO AHEAD ASK AND DO THE MOTION FIRST AND THEN GET INTO -- JUST SO YOU ALL HAVE A READ ON THAT BEFORE WE START TO TALK ABOUT THE STATUS, THE SCHEDULE.

YOU HAVE TO TALK INTO ONE OF THE MICS SO THE COURT REPORTER CAN GET YOU.

MR. HEIN: YES, THAT'S FINE, YOUR HONOR.

THE COURT: WAS THAT GOOD?

THE REPORTER: BARELY.

THE COURT: ALL RIGHT. SO LET'S GO AHEAD AND HAVE THOSE OF YOU DOING THE MOTION COME UP TO THE LECTERNS, OR YOU'RE WELCOME TO STAY AT THE TABLES, BUT YOU'VE GOT TO GET THOSE MICS MUCH CLOSER TO YOU.

ALL RIGHT. LECTERNS IT IS. PLEASE, IF YOU -- YEAH.

(PAUSE IN PROCEEDINGS.)

THE COURT: SO WHILE I KNOW -- I'VE MET WITH COUNSEL ON A PREVIOUS OCCASION ON A STATUS CONFERENCE. WE HAVEN'T DONE A MOTION BEFORE, SO LET ME TELL YOU WHAT I NORMALLY DO.

I LIKE TO START WITH MY QUESTIONS AND THEN GIVE YOU AN OPPORTUNITY TO PRESENT SOMETHING FURTHER IF THERE'S ANYTHING THAT I HAVEN'T HAD YOU COVER YET, THAT I DIDN'T ALREADY ASK YOU ABOUT THAT YOU WANT TO TALK MORE ABOUT.

SO I'M GOING TO DO THAT. USUALLY I LIKE TO -- I OFTEN LIKE TO START WITH DEFENDANTS, OR I LIKE TO START WITH WHO -- WHICHEVER PARTY'S MOTION IT IS, I START WITH THEM. OCCASIONALLY, AS IS TRUE TODAY, I HAVE QUESTIONS -- I HAVE THE SAME QUESTION FOR BOTH SIDES, AND SO I'M GOING TO START WITH THOSE, AND WE'LL SORT OF TAKE IT FROM THERE.

SO I WILL LOOK TO YOU FIRST, MR. HEIN, JUST BECAUSE IT IS YOUR MOTION.

I JUST WANT TO START, I WANT TO START BY HAVING YOU ALL TALK WITH ME A LITTLE BIT ABOUT THE AGREEMENTS THEMSELVES, RIGHT? THERE'S A -- THERE IS A NOT INSIGNIFICANT SIZE -- THERE'S A LOT -- THERE'S A UNIVERSE OF AGREEMENTS HERE, AND I JUST WANT YOU TO TRY AND HELP ME UNDERSTAND HOW THEY APPLY.

SO AS TO THE TERMS OF SERVICE, I NOTED THAT THE PARTIES HIGHLIGHTED HOW THE TWO -- HOW THE 2019 VERSION IS DIFFERENT FROM THE VERSIONS THAT FOLLOWED.

BUT AS TO THE VERSIONS FOR 2020, 2021, '22 AND '23, DO YOU ALL AGREE THAT THOSE ARE -- I GUESS -- DO YOU AGREE THAT THEY ARE MATERIALLY IDENTICAL?

LET ME START WITH YOU, MR. HEIN.

DO YOU -- 2020 -- ARE THE AGREEMENTS FROM 2020, '21, '22, AND '23 MATERIALLY SIMILAR? OR MATERIALLY IDENTICAL?

MR. HEIN: THEY ARE, YOUR HONOR, WITH RESPECT TO THE TERMS OF SERVICE I THINK IS WHAT YOUR HONOR IS REFERENCING --

THE COURT: I AM.

MR. HEIN: -- AS OPPOSED TO THE 2019 AGREEMENT.

AND THE 2020 THROUGH THE 2023 ARE MATERIALLY IDENTICAL.

IF IT HELPS YOUR HONOR, I CAN JUST GO THROUGH THE THREE AGREEMENTS ON A HIGHER LEVEL AND SET FORTH WHY IT'S SONY'S POSITION THAT THEY CLEARLY APPLY IN THIS MATTER AND TO THESE --

THE COURT: HOLD THAT FOR -- HOLD THAT FOR A BIT. LET ME WALK YOU THROUGH A LITTLE BIT OF MY -- I'M IN THE WEEDS, AND THEN YOU CAN GIVE ME A BIGGER PICTURE, IN FACT, IT MIGHT BE HELPFUL. YOU MIGHT HELP ME FIND THE FOREST AGAIN.

BUT LET ME ASK MR. BUCHMAN, DO YOU AGREE THAT THE TERMS OF SERVICE FROM 2020, 2021, 2022, AND 2023 ARE MATERIALLY IDENTICAL?

MR. BUCHMAN: YES, YOUR HONOR.

AND WITH REGARD TO THE CLASS ACTION WAIVER PROVISION, IT MAKES IT CLEAR THAT THE CLASS ACTION WAIVER APPLIES TO ARBITRATIONS ONLY, NOT TO JUDICIAL PROCEEDINGS. THEY ARE ALL THE SAME IN THAT REGARD.

THE COURT: THIS IS WHY I'M ASKING ABOUT THE OTHERS, RIGHT? WE'LL GET THERE.

I THINK THE OTHER THING THAT I WANT TO ASK BOTH OF YOU ALL IS RIGHT -- JUST WITH REGARD TO WAIVER, BOTH OF YOU ARE CITING HILL TO ME, AND I UNDERSTAND THAT YOU HAVE -- YOU CLEARLY DIFFER ABOUT HOW IT IS APPLIED TO THIS CASE, BUT I WANT TO MAKE SURE, OR I WANT TO CONFIRM THAT YOU BOTH -- WHETHER YOU BOTH -- WHETHER YOU AGREE THAT HILL IS THE STANDARD ULTIMATELY ON

WAIVER HERE, APPLICABLE HERE.

AND AGAIN I'LL START WITH YOU, MR. HEIN.

MR. HEIN: YOUR HONOR, MAY I MAKE A COMMENT WITH RESPECT TO A POINT THAT MR. BUCHMAN MADE?

THE COURT: ABOUT THE AGREEMENTS? WE'LL GET THERE. WE'RE GOING TO GET THERE. I HAVE A WHOLE --

MR. HEIN: I WANT TO MAKE SURE I RESERVE MY RIGHTS.

THE COURT: YOU HAVE. I HAVE A WHOLE SERIES OF QUESTIONS ABOUT -- WELL, I HAVE A COUPLE MORE QUESTIONS ABOUT THE SCOPE OF THE AGREEMENTS AND ABOUT THE DIFFERENT -- AND ABOUT THE DIFFERENT LANGUAGE THAT APPLIES THAT IS IN SOME OF THOSE.

SO, TRUST ME, THAT WASN'T THE END OF IT. IT'S JUST -- I'M TRYING -- YEAH. SO JUST IF YOU COULD JUST ANSWER ME WITH REGARD TO HILL, AND THEN YOU HAVE RESERVED YOUR RIGHT TO GO BACK AND COMMENT.

MR. HEIN: THANK YOU, YOUR HONOR.

SO WITH RESPECT TO HILL, WHICH PLAINTIFFS RELY ON, IT IS NOT THE STANDARD, AND I THINK IT'S DISTINGUISHABLE FROM WHAT WE HAD -- AND WHEN I SAY "NOT THE STANDARD," BASED ON WHAT OCCURRED THERE IS VERY DIFFERENT --

THE COURT: YOU'RE NOW STARTING TO ARGUE TO ME ABOUT THE FACTS. I'M NOT ASKING ABOUT THE FACTS. I'VE GOT YOUR PAPERS FOR THAT. LET ME SAY THAT VERY CLEARLY. I DON'T WANT YOU ALL TO JUST TELL ME WHAT'S IN YOUR PAPERS, BECAUSE WE'VE

GONE THOROUGHLY THROUGH THEM.

I KNOW BETTER THAN -- MAYBE NOT BETTER THAN YOU ALL, BUT I KNOW HOW LONG THIS MOTION HAS BEEN WITH ME, SO I'M LOOKING TO GET IT OFF MY PLATE.

SO I KNOW YOU DON'T THINK THOSE FACTS ARE -- I KNOW YOU THINK THE FACTS HERE ARE MATERIALLY DIFFERENT, SO THAT THAT DOESN'T MEAN YOU'VE WAIVED IT. I GOT THAT.

I'M JUST ASKING YOU IF ULTIMATELY THE STATEMENT OF LAW FROM HILL APPLIES HERE.

MR. HEIN: SORRY, YOUR HONOR. NOW I UNDERSTAND YOU BETTER.

WITH RESPECT TO HILL'S STANDARD AS TO WAIVER AND CONTRACTUAL RIGHT, YES, YOUR HONOR, I THINK THE PARTIES AGREE THAT THE STANDARD IS THAT WHEN A PARTY IS AWARE OF A RIGHT AND THEN ACTS INCONSISTENTLY WITH IT, THAT IT CAN WAIVE IT.

APOLOGIES, YOUR HONOR. I DIDN'T UNDERSTAND THAT'S WHAT YOU WERE REFERENCING WITH RESPECT TO HILL.

THE COURT: THAT'S OKAY. YOU MAY STILL GET A CHANCE TO TELL ME MORE ABOUT YOUR FACTS, I JUST, LIKE, IN THIS MOMENT -- JUST NOT IN THIS MOMENT.

LET ME ASK YOU, MR. BUCHMAN. HILL?

MR. BUCHMAN: YES.

THE COURT: OKAY.

MR. BUCHMAN: ONE CAVEAT, MORGAN AND HILL, MORGAN THE SUPREME COURT CASE, HILL THE NINTH CIRCUIT CASE.

YES, YOUR HONOR.

THE COURT: ALL RIGHT. NOW LET'S TALK A LITTLE BIT ABOUT THE SCOPE OF THE AGREEMENTS.

MR. HEIN, CAN YOU TALK WITH ME FOR A MINUTE -- AND THIS IS A LITTLE BIT HERE, I THINK MY QUESTIONS FOR YOU IS ALMOST -- THESE TWO QUESTIONS ARE FOR EACH OF YOU ABOUT SOFTWARE. AND JUST, I'M CURIOUS, I'M CURIOUS, MR. HEIN, IF YOU COULD START WITH, FROM YOUR PAPERS, WHAT'S YOUR BEST AUTHORITY THAT DIGITAL GAMES ARE SOFTWARE? I HAVE MY OPINIONS, BUT I'M CURIOUS WHAT YOU WOULD POINT ME TO.

MR. HEIN: YES, I'M HAPPY TO, YOUR HONOR.

IT'S CLEAR FROM THE LANGUAGE IN EACH OF THE THREE AGREEMENTS -- SO THE SYSTEM LICENSE AGREEMENT, WHICH IS THE PLAYSTATION 5 SYSTEM SOFTWARE LICENSE AGREEMENT; THE SONY PRODUCT LICENSE AGREEMENT; AND THEN THERE'S THE SONY TERMS OF SERVICE WHICH YOUR HONOR REFERENCED EARLIER -- IT'S CLEAR FROM ALL THREE OF THOSE AGREEMENTS THAT DIGITAL GAMES, AND IN PARTICULAR THE PURCHASE OF DIGITAL GAMES, IS COVERED BY -- SOFTWARE COVERS DIGITAL GAMES, AND USE OF SOFTWARE COVERS THE PURCHASE OF DIGITAL GAMES.

AND I'LL POINT YOU TO A FEW LANGUAGE ON YOUR FIRST QUESTION, YOUR HONOR, WITH RESPECT TO GAMES AND SOFTWARE.

THE SYSTEM LICENSE AGREEMENT, WHICH IS EXHIBIT B TO THE DECLARATION FROM MR. KING IN OUR MOTION, IT REFERS RIGHT UP FRONT IN THE INTRODUCTION ON PAGE 1 TO, QUOTE, ALL GAMES AND

OTHER SOFTWARE. IN OTHER WORDS, MAKING CLEAR THAT GAMES ARE A TYPE OF SOFTWARE.

THE COURT: LET ME CLARIFY MY QUESTION A LITTLE, BECAUSE YOU'RE POINTING ME TO -- AND I APPRECIATE WHY YOU'RE POINTING ME TO THE TERMS OF THE VARIOUS AGREEMENTS.

I'M ASKING IF THERE WERE ANY CASE CITES THAT YOU HAVE FOR ME ABOUT, ABOUT DIGITAL GAMES BEING SOFTWARE.

MR. HEIN: WELL, IF I -- AND I'LL ANSWER YOUR QUESTION.

JUST TO YOUR POINT OF CASE LAW --

THE COURT: UM-HUM.

MR. HEIN: -- WE'VE CITED TWO CASES, THE CRAWFORD CASE AND THE MENDEZ CASE, BOTH OF WHICH WERE WITH RESPECT TO SONY'S AGREEMENTS, AND IN THE CRAWFORD CASE, THE COURT HELD THAT THE SYSTEM LICENSE AND THE TERMS OF SERVICE APPLY TO A DISPUTE INVOLVING THE PURCHASE OF ADD-ONS THROUGH THE PLAYSTATION STORE.

IN OTHER WORDS, THE COURT HAS FOUND THAT THOSE -- AND THESE TWO AGREEMENTS THAT ARE AT ISSUE HERE AS WELL -- HAVE APPLIED TO THE PURCHASE OF ADD-ONS.

MENDEZ SIMILARLY APPLIED THE TERMS OF SERVICE WHERE THE CLAIMS WERE THAT SONY RENEGED BY REMOVING CONTENT THAT HE HAD PURCHASED.

BOTH OF THOSE CASES ARE IMPORTANT WHERE COURTS HAVE RECOGNIZED THAT THESE AGREEMENTS APPLY TO THE PURCHASE OF GAMES

AND ARE COVERED BY THE LANGUAGE IN THESE AGREEMENTS WITH RESPECT TO THE DISPUTES AT ISSUE.

IN OTHER WORDS, EACH OF THESE AGREEMENTS REFUSED TO DISPUTES, AND EITHER THE USE OF SOFTWARE OR SOFTWARE OR SONY SOFTWARE, YOU SEE THAT LANGUAGE IN THE EACH AGREEMENT, AND THE COURTS HAVE FOUND THAT THOSE AGREEMENTS APPLY TO THE PURCHASE OF GAMES.

AND THE OTHER LANGUAGE I WAS LEADING THROUGH, YOUR HONOR, I'M HAPPY TO GO THROUGH IT IF YOU WILL, IF YOU'D LIKE, IS THE FACT THAT PURCHASE AND DOWNLOADING ARE CRYSTAL CLEAR IN THE PRODUCT LICENSE AGREEMENT; GAMES AND OTHER SOFTWARE YOU SEE IN THE SYSTEM LICENSE AGREEMENT; AND THEN, OF COURSE, WITH THE TERMS OF SERVICE, WHICH COME UP WHEN ONE BUYS A GAME OR DOWNLOADS A GAME, SIMILARLY INCORPORATE ALL OF THE TERMS OF THE SYSTEM LICENSE AGREEMENT AND THE PRODUCT LICENSE AGREEMENT.

SO IF ONE LOOKS AT THE LANGUAGE OF THE AGREEMENT, IN OTHER WORDS, PUTTING A USER ON NOTICE OF WHAT THEY ARE AGREEING TO IN SIGNING UP FOR A CLASS ACTION WAIVER AND THE ARBITRATION PROVISION, IT IS WITH RESPECT TO THEIR PURCHASE OF GAMES, THEY ARE AGREEING THAT ANY DISPUTE WITH RESPECT TO THE PURCHASE OF THE GAMES WILL BE -- MUST BE DONE IN ARBITRATION AND NOT BROUGHT IN COURT, AND THAT THEY HAVE WAIVED THEIR RIGHT TO PROCEED AS A CLASS.

AND IF I MAY ADD ONE LAST POINT WITH RESPECT TO THAT ONE?

THE COURT:  GO AHEAD.

MR. HEIN: AND THIS GOES TO MR. BUCHMAN'S POINT EARLIER, BUT I THINK IT'S VERY IMPORTANT, IS THAT THE TERMS OF SERVICE -- YOU ASKED ABOUT 2019 VERSUS THE SUBSEQUENT YEARS.

IN 2019, THERE WAS LANGUAGE IN ARBITRATION, "OR COURT" IN THE TERMS OF SERVICE AS PLAINTIFFS HAVE POINTED OUT.

SUBSEQUENTLY, "OR COURT" WAS REMOVED.

BUT WHAT WAS ADDED TO THE TERMS OF SERVICE, WHICH IS CRITICAL HERE, IS SECTION 1.4, AND THAT EXPRESSLY INCORPORATES ALL OF THE TERMS FROM THE SYSTEM LICENSE AGREEMENT AND THE PRODUCT LICENSE AGREEMENT.

AND THERE'S A CASE WE CITED, ABIDZADEH VERSUS BEST BUY, WHICH STANDS FOR THE IMPORTANT PROPOSITION THAT AGREEMENTS ARE ENFORCEABLE WHEN THEY INCORPORATE TERMS BY REFERENCE. IN OTHER WORDS, THAT THE ADDITION OF 1.4 THAT YOU FIND IN THE TERMS OF SERVICE FROM 2020 THROUGH 2023, OF INCORPORATING THE SYSTEM LICENSE AND PRODUCT LICENSE, AND EXPLICITLY WHAT IT SAYS IS THAT THE TERMS FROM THOSE AGREEMENTS APPLY AND FORM PART OF YOUR CONTRACT WITH US. THAT'S IN THE TERMS OF SERVICE.

THEY WERE PUT IN THERE TO MAINTAIN THE CLASS ACTION WAIVER THAT EXISTS IN ARBITRATION OR COURT IN THE SYSTEM LICENSE AND PRODUCT LICENSE AGREEMENTS, AND THEY'RE INCORPORATED IN THE TERMS OF SERVICE. SO THEY REMAIN CONSISTENT THERE AMONG ALL THREE AGREEMENTS.

AND IT'S CLEAR THAT THE NAMED PLAINTIFFS AND THE ABSENT CLASS MEMBERS HAVE SIGNED EACH OF THESE AGREEMENTS: THE SYSTEM

LICENSE AGREEMENT, WHICH THEY MUST WHEN THEY SET UP THEIR PLAYSTATION 5 CONSOLES ON WHICH THE GAMES ARE PLAYED; PRODUCT LICENSE AGREEMENT, WHICH IS INCORPORATED BOTH IN THE SYSTEM LICENSE AGREEMENT AND IN THE TERMS OF SERVICE, WHICH GOES TO THE PURCHASE AND DOWNLOADING OF THOSE GAMES; AND THEN THE TERMS OF SERVICE, AGAIN, ALL INTERRELATED, WHICH COME UP WHEN ONE PURCHASES THE GAME EITHER ON THE PLAYSTATION 5 CONSOLE OR ON THE INTERNET.

AND IF ONE DOES IT ON THE INTERNET, THEY COME UP AGAIN, THE TERMS OF SERVICE, WHEN YOU GO ON TO YOUR PLAYSTATION 5 IN ORDER TO DOWNLOAD THAT GAME YOU PURCHASED.

THE COURT: SO LET ME ASK YOU THIS. LET'S SEE IF I'M FOLLOWING YOU. YOUR THEORY OF THIS, YOU'RE ARGUING ULTIMATELY THAT IT DOESN'T MATTER WHICH -- THAT ALL OF THEM -- THAT 2019, 2020, ALL OF THE DIFFERENT VERSIONS OF THIS AGREEMENT INCLUDE THIS LANGUAGE.

BUT I GUESS -- LET ME TELL YOU SOMETHING THAT SORT OF IRKED ME ABOUT YOUR PAPER, RIGHT? YOU HAVE THREE NAMED PLAINTIFFS, AND YOU DON'T ACTUALLY TELL ME WHICH AGREEMENT -- I HEAR YOU SAYING THAT THEY HAVE ASSENTED TO ALL OF THE AGREEMENTS.

MR. HEIN: (NODS HEAD UP AND DOWN.)

THE COURT: BUT YOU DON'T TELL ME WHEN THEY DID THAT, RIGHT? YOU ALL TOOK THE TIME TO FIND THE PERCENTAGE OF PEOPLE WHO OPT OUT OF THE AGREEMENTS, BUT YOU DIDN'T TELL ME WHEN EACH

OF THOSE FOLKS OPTED INTO WHAT FOR WHAT.

SO I, FRANKLY, HAD SOME TROUBLE BECAUSE -- I HAD SOME TROUBLE WITH THIS IN THAT IN -- BECAUSE I -- I TAKE YOUR POINT. I TAKE YOUR -- I UNDERSTAND YOUR ARGUMENT TO BE IT DOESN'T MATTER WHICH AGREEMENT BECAUSE ALL OF THE AGREEMENTS HAVE THE SAME LANGUAGE.

BUT IF I DISAGREE WITH YOU, IF I THINK IT'S IMPORTANT THAT 2019 IS DIFFERENT FROM 2020, 2021, ALL OF THE OTHERS, YOU HAVEN'T TOLD ME THAT THE PLAINTIFFS HERE -- OR WHICH MEMBERS OF THE CLASS ARE BOUND BY 2019 VERSUS THE OTHERS.

MR. HEIN: SO IF I COULD --

THE COURT: PLEASE.

MR. HEIN: -- CLARIFY, YOUR HONOR.

SO THE NAMED PLAINTIFFS HAVE ALL ALLEGED THAT THEY PURCHASED PLAYSTATION 5 CONSOLES.

THE PLAYSTATION 5 CONSOLE CAME OUT IN NOVEMBER 2020. SO WITH RESPECT TO THEM, THEY HAVE SIGNED ON TO ALL THREE AGREEMENTS, AT A MINIMUM, AFTER THAT DATE.

AND JUST TO CRYSTALIZE THAT FURTHER, YOUR HONOR, BECAUSE I AGREE IT'S AN IMPORTANT POINT YOUR HONOR HAS RAISED, IS THAT THE -- THE SYSTEM LICENSE ALL THREE HAVE SIGNED ON TO BECAUSE THEY OWN PLAYSTATION 5 CONSOLES, AND IN ORDER TO SET IT UP TO USE IT, ONE IS REQUIRED TO CLICK "I AGREE" TO THE SYSTEM LICENSE AGREEMENT, AND IF ONE DOESN'T, YOU CANNOT USE YOUR PLAYSTATION 5 CONSOLE AND THEN ONE CANNOT PLAY GAMES.

SIMILARLY, THE PRODUCT LICENSE AGREEMENT IS EXPLICITLY INCORPORATED IN THAT SYSTEM LICENSE AGREEMENT. IT COMES UP WITH THE LANGUAGE ON PAGE 1 OF IT REFERENCING THAT YOU ARE AGREEING TO THAT AS WELL.

SO THEY ARE SIGNING -- THEY'RE SIGNING UP TO BOTH OF THOSE AGREEMENTS WHEN THEY'RE SETTING UP THEIR PLAYSTATION.

AND I DON'T THINK PLAINTIFFS WOULD CONTEST THAT POINT.

WITH RESPECT TO THE TERMS OF SERVICE, YOUR HONOR, THEY HAVE ALSO ALLEGED THAT THEY PURCHASED DIGITAL GAMES ON THE PLAYSTATION STORE. AND IN DOING SO, THEY HAD TO, AND DID, CLICK "I AGREE" TO THE TERMS OF SERVICE WHEN PURCHASING A GAME.

AND WHETHER THEY DID THAT -- AND TO BE CLEAR, YOUR HONOR, WE'RE NOW RECEIVING DISCOVERY FROM NAMED PLAINTIFFS TO CONFIRM THESE ASPECTS -- BUT TO BE PART OF THE CLASS, THEY -- BECAUSE THE CLASS INCORPORATES THOSE IN THE UNITED STATES WHO HAVE BOUGHT DIGITAL GAMES ON THE PLAY -- OR RELATED CONTENT ON THE PLAYSTATION STORE SINCE APRIL 2019.

AND TO BE PART OF THE CLASS, THEY WOULD HAVE BOUGHT GAMES, AND IF THEY BOUGHT IT ON THEIR PLAYSTATION 5 CONSOLE, OR ON THE INTERNET, THEY WOULD HAVE HAD TO CREATE AN ACCOUNT INITIALLY, AND THAT IS WHERE THE TERMS OF SERVICE COME UP. AND AGAIN, YOUR HONOR, ONE NEEDS TO CLICK "I AGREE" IN ORDER TO PROCEED.

AND THEN TO BUY A GAME, THE TERMS OF SERVICE COME UP AGAIN. THE DOWNLOAD, THE SAME THING, THEY COME UP AGAIN. AND EVERY TIME ONE BUYS A GAME, THEY COME UP.

SO THE CRITICAL POINT HERE, TO ANSWER YOUR HONOR'S QUESTION AND CIRCLE BACK, IS THAT EACH OF THE NAMED PLAINTIFFS HAVE AGREED TO EACH OF THESE THREE AGREEMENTS.

AND EACH OF THE THREE AGREEMENTS INDEPENDENTLY MAKES CLEAR TO THEM ON THEIR FACE THAT THEY ARE AGREEING TO CLASS ACTION WAIVERS AND ARBITRATION PROVISIONS.

THE COURT: CAN I ASK, BECAUSE WHAT I COULDN'T FIND, AND AS I UNDERSTAND YOUR ARGUMENT -- WELL, WHAT I COULDN'T FIND ARE THE EFFECTIVE DATES FOR THESE VARIOUS AGREEMENTS, AND I -- MY SENSE OF YOUR ARGUMENT IS THAT YOU DON'T THINK IT MATTERS WHEN THEY WERE IN EFFECT. BUT PRESUMABLY ONE SUPERSEDES THE NEXT.

IS THAT RIGHT? AM I FOLLOWING YOU?

MR. HEIN: CORRECT, YOUR HONOR, IN THIS RESPECT: THEY, POST-NOVEMBER 2020, WOULD HAVE, OR DID, SIGN THESE AGREEMENTS THAT I DESCRIBED, THE THREE AGREEMENTS.

THEY HAVE TO RESIGN THE AGREEMENTS WITH EACH SOFTWARE UPDATE THAT OCCURS DURING THIS TIME PERIOD.

WE PROVIDED THE AGREEMENTS THAT -- SO, FOR EXAMPLE, THE SYSTEM LICENSE AND THE PRODUCT LICENSE AGREEMENT, WE PROVIDED ONE VERSION OF IT, BUT THE VERSION IS THE SAME DURING THE RELEVANT PERIOD.

AND THE REASON WE PROVIDED SEVERAL VERSIONS OF THE TERMS OF SERVICE TO YOUR HONOR IS PRECISELY BECAUSE WE WANTED TO BE OPEN ABOUT WHERE IT STOOD IN 2019 AND WHERE IT HAS STOOD

SUBSEQUENTLY SO WE COULD EXPLAIN TO YOU WHY THE CLASS ACTION WAIVER PROVISION THAT IS PRESENT IN THE SYSTEM LICENSE AND PRODUCT LICENSE IS EQUALLY PRESENT IN THE TERMS OF SERVICE THROUGHOUT THAT TIME PERIOD.

THE COURT: MR. BUCHMAN, YOU WANT TO -- I WILL COME BACK TO YOU. WE'RE NOT ENTIRELY DONE HERE, BUT I WANTED TO GIVE YOU AN OPPORTUNITY, BECAUSE I ALSO HAVE SOME QUESTIONS FOR YOU, AND MAYBE COMING DIRECTLY -- PART OF WHAT I HEAR MR. HEIN SAYING IS YOU'VE ALLEGED THAT ALL -- THAT THE THREE, THE THREE PUTATIVE CLASS REPRESENTATIVES PURCHASED PS5S. HOW DID THE 2019 TERMS APPLY HERE?

MR. BUCHMAN: I DON'T BELIEVE THEY DO, YOUR HONOR. AS MR. HEIN'S CONCEDED, THE PLAYSTATION CONSOLE CAME OUT IN NOVEMBER OF 2020, SO THE OPERATIVE EARLIEST AGREEMENT WOULD BE THE FALL OF 2020 AGREEMENT OR LATER, AND THAT'S THE ONE WHERE I JUST MENTIONED EARLIER -- I WON'T REPEAT IT, I KNOW YOU JUST WANT ME TO FOCUS ON YOUR QUESTIONS, SO --

THE COURT: YOU GO AHEAD. I JUST REALIZED, I THINK I'VE BEEN FLIP FLOPPING THOSE IN MY HEAD.

KEEP GOING. IT'S FINE.

MR. BUCHMAN: YOUR HONOR, JUST VERY BRIEFLY, THE SYSTEM SOFTWARE LICENSE GOVERNS SOFTWARE, FIRMWARE, INTERNET BROWSER, AND OTHER APPLICATION SOFTWARE. IT'S BASICALLY A LICENSE OR AN AGREEMENT TO GIVE A CONSUMER A RIGHT TO USE, A RIGHT TO USE THE SONY SOFTWARE ON THE PLAYSTATION 5 CONSOLE,

AND IT'S DESIGNED TO PROTECT SONY'S INTELLECTUAL PROPERTY.

THE SOFTWARE LICENSE AGREEMENT DEFINES A DISPUTE COVERED BY THE ARBITRATION AND CLASS WAIVER PROVISIONS AS DISPUTES OR CONTROVERSIES REGARDING ANY AND ALL USES OF SONY SYSTEM'S SOFTWARE.

THIS CASE IS ABOUT DIGITAL GAME PRICING. IT'S NOT ABOUT -- IT'S NOT ABOUT SOFTWARE OR FIRMWARE OR INTERNET BROWSER OR OTHER APPLICATION SOFTWARE UNDER THE SONY SYSTEM SOFTWARE LICENSE AND, THEREFORE, THIS DISPUTE DOES NOT FALL WITHIN THE GAMBIT OR PURVIEW OF THE DEFINITION OF DISPUTE UNDER THAT AGREEMENT.

THE SAME ARGUMENT HOLDS TRUE WITH REGARD TO THE SONY SOFTWARE PRODUCT LICENSE, WHICH IS ANOTHER USER AGREEMENT. IN FACT, THE KING DECLARATION REFERS TO THAT AGREEMENT AS A USER AGREEMENT.

THE ARBITRATION AND CLASS ACTION WAIVER PROVISIONS IN THAT AGREEMENT ONLY APPLY TO USE OF SOFTWARE PRODUCTS, AND THE DISPUTE PROVISION CLEARLY STATES THAT THE AGREEMENT APPLIES TO ANY DISPUTE, CLAIM, OR CONTROVERSY REGARDING SOFTWARE, ADVERTISING, MARKETING, LICENSING, OR THE USE OF THE SOFTWARE.

SO, AGAIN, YOUR HONOR, IT'S THE USE OF THE SOFTWARE.

THIS CASE IS NOT ABOUT THE USE OF THE SOFTWARE. IT'S ABOUT DIGITAL GAME PRICING.

AND THIS AGREEMENT -- THESE CLAIMS IN THIS CASE DO NOT FALL WITHIN THE GAMBIT OR PURVIEW OF THE DEFINITION OF A

DISPUTE UNDER THE SONY SOFTWARE PRODUCT LICENSE.

NOW, TURNING TO THE TERMS OF SERVICE AGREEMENT, IT APPLIES TO ACCESS TO AND, AGAIN, USE OF THE PLAYSTATION NETWORK. THE ARBITRATION PROVISION IN THE TERMS OF SERVICE AND USER AGREEMENT IS LIMITED TO DISPUTES, CLAIMS, OR CONTROVERSIES REGARDING PSN OR PSN CONTENT OR THE USE OF THE PLAYSTATION DEVICES OR OTHER DEVICES SOLD BY A SONY ENTITY TO ACCESS THE PSN CONTENT.

SECTION 1.1 IN THE ARBITRATION AGREEMENT COVERS DISPUTES REGARDING CONSUMER ACCESS AND USE OF THE PLAYSTATION NETWORK AND GAME CONTENT.

THIS CASE, AGAIN, YOUR HONOR, DOES NOT INVOLVE ACCESS TO OR USE OF THE PSN NETWORK, THE OPERATION OF ACCOUNTS, THE CONTENT OF GAMES, OR NETWORK USE.

IT'S ABOUT DIGITAL GAME PRICING, AND DIGITAL GAME PRICING AND PURCHASES OCCUR BEFORE THESE GAMES ARE USED. THAT IS AN IMPORTANT FACTUAL NOTE.

THE TERMS OF SERVICE ARE ESSENTIALLY DESIGNED TO ENSURE THAT SONY HAS A REMEDY TO GET PAID WITH USER ACCOUNTS.

AND WHAT'S MOST IMPORTANT HERE TO NOTE, YOUR HONOR, IS THAT IN THE TERMS OF SERVICE, SONY DISCUSSES PRICE DROPS. SO SONY KNOWS WHEN TO DISTINGUISH ISSUES ABOUT PRICES.

BUT THAT PRICE DROP IS NOT WHAT THIS CASE IS ABOUT. THE SPECIFICITY OF THE AGREEMENT IN COVERING PRICE DROPS IS TELLING, BECAUSE SONY CLEARLY KNEW HOW TO EXPLICITLY STATE THE

TYPES OF PRICING CLAIMS THAT IT WANTED COVERED BY THIS AGREEMENT. IT CLEARLY DID NOT REFER TO ANY COMPETITIVE OR SUPRACOMPETITIVE PRICING IN THIS AGREEMENT. IT REFERS TO COVERING COMPLAINTS IF A LOWER PRICE BECOMES AVAILABLE.

THAT IS NOT THE ISSUE HERE. THIS CASE IS ABOUT ARTIFICIALLY INFLATED OR HIGHER PRICES, NOT LOWER PRICES.

SO SONY NEVER INTENDED FOR THE TERMS OF SERVICE FOR THE CLAIMS IN THIS CASE TO BE COVERED BY THAT AGREEMENT, AND IF IT DID, IT WOULD HAVE SO CLEARLY STATED, LIKE IT DID ABOUT PRICE DROPS.

SO IN THIS CASE, THE CLASS ACTION WAIVERS AND THE ARBITRATION PROVISION UNDER THE TERMS OF SERVICE SIMPLY DO NOT APPLY.

AND AS I MENTIONED --

THE COURT: LET ME PAUSE YOU THERE FOR JUST A MOMENT, BECAUSE I UNDERSTAND THAT TO BE YOUR ARGUMENT.

I THINK I'M -- ONE OTHER THING I'M TRYING TO UNDERSTAND IS -- OR IN YOUR OPPOSITION BRIEF, YOU MENTION THAT THE VAST MAJORITY OF THE CLAIMS AT ISSUE HERE FALL WITHIN THE 2020 TO 2023 TERMS OF SERVICE.

I'M JUST TRYING TO UNDERSTAND WHETHER THAT MEANS THAT YOU INTEND TO REVISE THE CLASS PERIOD TO START IN 2020, OR -- BECAUSE I DON'T UNDERSTAND THAT TO BE WHAT YOU'VE HAD SO FAR.

MR. BUCHMAN: WE WILL CONSIDER THAT AT THE TIME OF CLASS CERTIFICATION. WE HAVE THE RIGHT UNDER THE LAW TO AMEND

THE CLASS DEFINITION AT THE TIME OF CLASS CERTIFICATION, AND WE WILL CONSIDER AMENDING THE COMPLAINT TO CONFORM TO THAT ISSUE AND THE CLASS CERTIFICATION PAPERS.

THE COURT: OKAY. CAN YOU WALK ME THROUGH, BECAUSE --

MR. BUCHMAN: THAT'S WHAT YOU ASKED, YOUR HONOR?

THE COURT: YES. THANK YOU. THAT'S FINE.

COULD YOU WALK ME THROUGH YOUR BEST ARGUMENT FOR WHY SONY HAD KNOWLEDGE OF ITS ARBITRATION RIGHTS VIS-A-VIS THE ABSENT CLASS MEMBERS?

MR. BUCHMAN: AS TO ABSENT CLASS MEMBERS?

THE COURT: RIGHT.

MR. BUCHMAN: SO THAT'S KNOWLEDGE --

THE COURT: THEY ARGUE THAT -- THEY ARGUE AT SOME POINT THAT THEY HAVEN'T WAIVED THEIR RIGHT TO ARBITRATE THE CLAIMS OF THE ABSENT CLASS MEMBERS, RIGHT, BECAUSE THEY'RE NOT HERE YET. SO COULD YOU JUST WALK ME THROUGH YOUR BEST OPPOSITION TO THAT?

MR. BUCHMAN: SURE. YOUR HONOR, I'M GLAD YOU RAISED THIS QUESTION, BECAUSE YOUR HONOR HAS ASKED US NOT TO REPEAT THINGS THAT ARE IN OUR PAPERS.

THE COURT: THIS IS ONE THAT I WANT YOU TO.

MR. BUCHMAN: THIS IS ONE THAT I'M NOT GOING TO REFER TO OUR PAPERS ABOUT. IT'S REALLY COME UP IN THE REPLY BRIEF, AND IT'S AN IMPORTANT POINT.

AND ON PAGE 1 OF THE REPLY BRIEF, SONY SAYS, "FIRST, NEARLY ALL OF THE ABSENT CLASS MEMBERS ARE SUBJECT TO BINDING ARBITRATION AGREEMENTS AND CLASS ACTION WAIVERS AND THEREFORE CANNOT PARTICIPATE IN A CLASS ACTION LAWSUIT. THE NAMED PLAINTIFFS ENTIRELY IGNORE THIS CRITICAL DISTINCTION BETWEEN THEMSELVES AND THE ABSENT CLASS MEMBERS, ALTHOUGH SONY CLEARLY ARTICULATED IT IN ITS OPENING BRIEF."

AND THEN -- SO THAT WE BELIEVE IS A CONCESSION THAT WHAT SONY IS SAYING HERE, YOUR HONOR, IS THAT THE CLASS ACTION WAIVER AND THE ARBITRATION PROVISION, IT SELECTED -- IT'S CHOSEN NOT TO APPLY THOSE TERMS TO THE NAMED PLAINTIFFS IN THIS CASE, BUT IT HOPES TO APPLY THEM DOWN THE ROAD TO ABSENT CLASS MEMBERS.

AND THIS IS AN IMPORTANT POINT. THE HILL CASE TALKS ABOUT -- AND I HAVE A COPY OF HILL WHICH I CAN HAND UP.

THE COURT: (SHAKES HEAD FROM SIDE TO SIDE.)

MR. BUCHMAN: OKAY. I HAVE A POINT ABOUT HILL.

THE DECISION IN HILL TALKS ABOUT WAIVER BEING A UNILATERAL CONCEPT, AND WHAT IT MEANS BY THAT -- IT'S ON -- IT'S IN HEADNOTES 3 THROUGH 6 -- AND WHAT THE COURT SAYS IN HILL -- AND WHAT SONY REALLY IS FAILING TO APPRECIATE HERE, AS THE DEFENDANT IN HILL FAILED TO APPRECIATE -- IS THAT WAIVER IS A UNILATERAL CONCEPT AND A FINDING OF WAIVER LOOKS ONLY TO THE ACTS OF THE PERSON WHO PURPORTEDLY HAS THE RIGHT AND BINDS ONLY THAT PERSON.

IT DOESN'T AFFECT THE RIGHTS OF THE CLASS MEMBERS AND IT DOESN'T DEPEND ON WHEN THE LAW REQUIRES OR AUTHORIZES SUCH A RIGHT TO BE ASSERTED.

SO WHAT IS IMPORTANT HERE, AND THE PROVISION THAT I JUST READ IN THE FIRST PAGE OF THEIR BRIEF, THEY'VE CREATED THIS DISTINCTION, YOUR HONOR, THAT THE NAMED PLAINTIFFS ARE NOT BOUND BY THE CLASS ACTION WAIVERS AND THE ARBITRATION PROVISIONS, BUT THE ABSENT CLASS MEMBERS WILL BE DOWN THE ROAD.

AND UNDER HILL, THAT'S A CRITICAL POINT BECAUSE THEY ARE WAIVING THEIR RIGHT AS TO THE NAMED PLAINTIFFS.

AND THAT WAIVER BINDS SONY FROM ENFORCING THOSE RIGHTS AGAINST THE ABSENT CLASS MEMBERS IN THE FUTURE.

AND WHILE -- THERE'S ONE OTHER POINT I JUST WANT TO MAKE ON PAGE 13. THIS ISN'T THE ONLY PLACE IN THEIR REPLY BRIEF THAT THEY MAKE THIS CRITICAL CONCESSION.

THE COURT: HOLD THAT, BECAUSE WHAT I'M ASKING YOU FOR ARE THE -- ARE YOUR BEST SET OF FACTS, RIGHT? IN THE END, I'M SUPPOSED TO LOOK AT SONY'S CONDUCT. I GET THAT, I'M SUPPOSED TO LOOK AT SONY'S CONDUCT.

AND I'M ASKING YOU, BEYOND MAYBE -- I HEAR YOU. IN THEIR REPLY -- I'M ASKING YOU TO IDENTIFY FOR ME WHICH OF -- WHAT WAS SONY'S CONDUCT THAT SHOWS THAT THEY KNEW THAT THEY WERE WAIVING ARBITRATION AGAINST THEM? THAT'S WHAT I'M ASKING YOU.

SO I GET IT. YOU SAY IT'S IN THE REPLY.

BUT WHAT -- WHAT ARE THE FACTS THAT YOU'VE GOT?

AND YOU WILL GET A CHANCE.

MR. BUCHMAN: IT'S ON PAGE 1 OF THE REPLY. IT'S ALSO ON PAGE 13. I WON'T READ IT FOR YOUR HONOR.

BUT I WILL NOTE FOR THE RECORD, YOUR HONOR, THAT ON PAGES 5 THROUGH 7 OF OUR OPPOSITION BRIEF, IN ADDITION TO THESE TWO POINTS ABOUT PAGE 1 AND PAGE 13 IN THE REPLY BRIEF, WE LIST ON PAGES 5 THROUGH 7 23 BULLET POINTS --

THE COURT: I THINK THAT'S WHY I'M ASKING YOU TO TELL ME THE BEST ONES.

MR. BUCHMAN: THE BEST ONES.

THE COURT: BECAUSE YOU'VE GIVEN ME 23, AND I'M NOT GOING TO INCLUDE ALL 23 OF THEM. I APPRECIATE THAT YOU'RE TRYING TO ADDRESS THE FACT THAT THIS ISN'T -- MY SENSE IS YOU'RE LIKELY TRYING TO ADDRESS THE FACT THAT I'M SUPPOSED TO LOOK AT THE FACTS HOLISTICALLY, AND OF COURSE YOU GIVE ME EVERYTHING THERE IS. MY QUESTION TO YOU IS --

MR. BUCHMAN: WHAT'S THE BEST ONE.

THE COURT: -- GIVE ME YOUR FAVORITE ONES.

MR. BUCHMAN: I WOULD SAY THAT THE TWO CONCESSIONS, PAGE 1 AND PAGE 13 IN THE REPLY BRIEF, ARE VERY STRONG. THOSE ARE OUR BEST, ALONG WITH CASE MANAGEMENT ORDER NUMBER 1. THAT WAS AT THE OUTSET OF THIS CASE WHERE SONY PROMISED JUDGE SEEBORG THAT THEY WERE GOING TO MAKE A MOTION TO COMPEL ARBITRATION, AND THAT THAT MOTION NEEDED TO BE DECIDED BEFORE MOVING ON TO ANY OTHER STAGES IN THIS PROCEEDING. THEY MADE

THAT PROMISE.

THEY NEVER MADE THAT MOTION TO COMPEL ARBITRATION. THEY STILL HAVEN'T MADE THAT MOTION TODAY.

AND THEY'VE NOW CONCEDED ON PAGES 1 AND -- 1 AND 13 OF THE REPLY BRIEF THAT THEY'RE WAIVING IT AS TO NAMED PLAINTIFFS, AND THAT'S TO CREATE A DISTINCTION FOR CLASS CERTIFICATION PURPOSES TO CLAIM THAT THE NAMED PLAINTIFFS ARE ATYPICAL FROM THE ABSENT CLASS MEMBERS.

IT'S AN ARTIFICIAL CREATION, BUT WHAT'S MOST IMPORTANT IS THAT THAT DISTINCTION CREATES A WAIVER AND IT BINDS THEM FROM ENFORCING THE PROVISIONS, ARBITRATION, CLASS ACTION WAIVER, AGAINST THE ABSENT CLASS MEMBERS IN THE FUTURE.

THE OTHER POINT THAT WE WOULD MAKE, YOUR HONOR, IS THAT THEY AGREED, THEY AGREED TO CONSOLIDATE THESE CASES. THAT IS NOT A MINISTERIAL ACT.

AND HILL SAYS THAT EVEN COMMONPLACE ACTS CAN CONSTITUTE A BASIS FOR WAIVER.

THE COURT: I HAVE ONE MORE SORT OF ODDBALL QUESTION FOR YOU, AND THEN I'LL TURN BACK TO MR. HEIN TO ADDRESS ANY AND ALL THINGS THAT YOU WOULD LIKE TO.

THIS IS MY ODDBALL QUESTION FOR YOU. WELL, MAYBE THIS IS ALREADY ANSWERED. YOU ARE NOT DISPUTING -- OR ARE YOU DISPUTING THAT YOUR CLIENTS SET UP PLAYSTATION CONSOLES, DOWNLOADED GAMES, AND USED THE PLAYSTATION STORE?

MR. BUCHMAN: WE'RE NOT CONTESTING THAT.

WE'RE SAYING THE AGREEMENTS JUST DON'T APPLY TO THEM BY THE PLAIN LANGUAGE OF THE AGREEMENTS THEMSELVES. WE'RE NOT PICKING A FIGHT THAT THEY DIDN'T CLICK A BOX. WE'RE SAYING THAT THE AGREEMENTS THEMSELVES SIMPLY DO NOT APPLY.

THE COURT: YOU'LL GET ONE MORE OPPORTUNITY TO ADDRESS ANYTHING THAT I HAVEN'T ASKED YOU ABOUT YET, BUT I'M GOING TO GIVE HIM A CHANCE TO RESPOND TO THE THINGS THAT YOU'VE SAID SO FAR, BECAUSE IF YOU'RE ANYTHING LIKE ME, THEY WILL START TO DISSIPATE FROM YOUR BRAIN.

MR. BUCHMAN: THANK YOU, YOUR HONOR.

THE COURT: GO AHEAD, MR. HEIN.

MR. HEIN: AND I'LL MOVE TO THE ISSUE OF WAIVER IN A MOMENT IF IT'S ALL RIGHT.

BUT JUST TO COME BACK TO THE ISSUE OF APPLICABILITY OF THE AGREEMENTS, BECAUSE I -- I REALLY DO BELIEVE THAT THE ARGUMENT THAT MR. BUCHMAN HAS PUT FORWARD WITH THESE AGREEMENTS NOT APPLYING TO THE PURCHASE OF GAMES IS BASELESS.

AND I'VE RAISED CRAWFORD AND MENDEZ AS EXAMPLES WHERE THE COURT HAS FOUND THESE EXACT PROVISIONS TO APPLY TO THE PURCHASE OF CONTENT ON THE STORE, NUMBER ONE.

AND, NUMBER TWO, YOUR HONOR, JUST STEPPING BACK, CONSUMERS, THEY USE THE PLAYSTATION CONSOLE AND THE PLAYSTATION NETWORK TO PURCHASE GAMES. THAT'S WHAT THEY'RE DOING.

AND, YOU KNOW, JUST LOOKING AT THE LANGUAGE OF EACH AGREEMENT, AS I MENTIONED, THE SYSTEM LICENSE, I POINT YOU TO

THE FIRST PAGE, ALL GAMES AND OTHER SOFTWARE -- IN OTHER WORDS, GAMES ARE SOFTWARE -- THE PRODUCT LICENSE, RIGHT UP FRONT REFERENCING THE PURCHASING AND DOWNLOADING OF SOFTWARE.

THAT SOFTWARE IS THE DIGITAL GAMES. THAT IS WHAT THEY'RE PURCHASING. THE SOFTWARE ARE THE DIGITAL GAMES.

AND THEN THE TERMS OF SERVICE SPECIFICALLY SAYS THAT IT GOVERNS YOUR USE OF PLAYSTATION GAME SOFTWARE. IT SAYS GAME, MOBILE, AND APPLICATION SOFTWARE.

SO THAT'S WHAT THESE AGREEMENTS APPLY TO.

AND WITH RESPECT TO THE DISPUTE PROVISIONS MR. BUCHMAN RAISED, THE SYSTEM LICENSE REFERS TO DISPUTES REGARDING ANY AND ALL USES OF SYSTEM SOFTWARE -- AGAIN, SOFTWARE ARE GAMES -- AND USES ENCOMPASSES PURCHASES.

YOU SEE IT IN THE PRODUCT LICENSE, DISPUTE REGARDING THE SOFTWARE, WHICH IS DEFINED ON PAGE 1 AS ALL SOFTWARE PRODUCTS. THAT INCLUDES THE GAMES.

TERMS OF SERVICE, DISPUTE REGARDING PLAYSTATION NETWORK OR PLAYSTATION NETWORK CONTENT, AND THE LATTER OF WHICH, PLAYSTATION NETWORK CONTENT, IS DEFINED IN SECTION 2.3 TO EXPLICITLY INCLUDE GAMES.

SO EACH OF THESE AGREEMENTS GOES TO SOFTWARE, I.E., GAMES, AND REFERENCES THE PURCHASING OF THEM SO THAT THERE REALLY -- TO PUT IT BLUNTLY, THERE'S NOTHING TO THIS ARGUMENT ABOUT THEIR APPLICATION TO THESE NAMED PLAINTIFFS.

AND THEN MOVING ON TO THE OTHER ARGUMENT THAT MR. BUCHMAN

RAISED UNDER QUESTIONING FROM YOUR HONOR ABOUT WAIVER, I THINK RIGHT UP FRONT, IT'S VERY IMPORTANT TO UNDERSTAND, YOUR HONOR, THAT WE ARE -- WE HAVE NOT BROUGHT A MOTION TO COMPEL ARBITRATION, WE HAVE BROUGHT A MOTION TO DENY CLASS CERTIFICATION, AND PLAINTIFFS ATTEMPT TO CONFLATE THE TWO IN THEIR BRIEFS.

AND THERE ARE THREE INDEPENDENT GROUNDS UPON WHICH YOUR HONOR CAN DENY CLASS CERTIFICATION AND, IN OUR OPINION, SHOULD AT THIS STAGE.

THE FIRST IS THAT THE NAMED PLAINTIFFS, CACCURI, CENDEJAS, AND NEUMARK, AGREED TO CLASS ACTION WAIVERS AND, THUS, THEY CANNOT PROCEED AS A CLASS.

THE SECOND IS THAT THE ABSENT CLASS MEMBERS AGREED TO CLASS ACTION WAIVERS AND, THUS, CANNOT PROCEED AS A CLASS.

AND THE THIRD IS THAT NEARLY ALL OF THE ABSENT CLASS MEMBERS ENTERED INTO BINDING ARBITRATION AGREEMENTS AND, THUS, MAY NOT PROCEED IN THIS COURT.

ALL OF THESE GROUNDS APPLY HERE, AND EACH ONE IS ALONE SUFFICIENT TO DEFEAT CLASS CERTIFICATION.

THE OTHER IMPORTANT POINT, YOUR HONOR, IS THAT THE NINTH CIRCUIT HAS ENDORSED PREEMPTIVE MOTIONS TO DENY CLASS CERTIFICATION.

THE COURT: I GOT THAT IN YOUR BRIEF.

MR. HEIN: OKAY.

THE COURT: I GOT THAT.

MR. HEIN: AND I THINK THE OTHER POINT, AND THIS IS WHY WE BROUGHT IT, IS THAT GRANTING CLASS CERTIFICATION -- EXCUSE ME. GRANTING THE MOTION TO DENY CLASS CERTIFICATION AT THIS STAGE SAVES THE PARTIES, THIRD PARTIES, AND THE COURT FROM TIME CONSUMING AND COSTLY CLASS DISCOVERY, EXPERT ANALYSIS AND REPORTS, AND CLASS CERTIFICATION BRIEFING.

SO I JUST WANTED TO MAKE CLEAR, AND IT SOUNDS LIKE YOUR HONOR HAS IT, BUT THAT THIS IS A PROPER MOTION AT THIS STAGE.

AND THEN TO PIVOT TO THE POINT THAT YOU WERE ASKING MR. BUCHMAN ABOUT REGARDING WAIVER, AS YOUR HONOR BEGAN THIS HEARING WITH, HILL HAS THE STANDARD, THAT IS, ONE IS AWARE OF THEIR RIGHTS AND THEN ACTS INCONSISTENTLY WITH IT, AND THAT IS THE STANDARD TO DETERMINE WHETHER A PARTY HAS WAIVED ITS RIGHT.

AND HERE WE'RE LOOKING BOTH AT THE CLASS ACTION WAIVERS AND ARBITRATION PROVISIONS.

TO START WITH THE CLASS ACTION WAIVERS, SONY HAS NOT TAKEN ANY STEPS THAT ARE INCONSISTENT WITH ITS RIGHTS TO ENFORCE THE CLASS ACTION WAIVERS AS TO EITHER THE NAMED PLAINTIFFS OR THE CLASS, ABSENT CLASS MEMBERS.

A FIRST REASON IS THAT THIS MOTION IS TIMING. WE HAVEN'T REACHED THE CLASS CERTIFICATION STAGE YET. THE CASES ARE CLEAR ON THIS WITHIN THE NINTH CIRCUIT THAT THAT IS THE STAGE AT WHICH A DEFENDANT GENERALLY SHOULD RAISE THE FACT THAT A NAMED PLAINTIFF OR AN ABSENT CLASS MEMBER HAS A CLASS ACTION WAIVER.

AND HERE, AS I SAID, WE'RE RAISING IT IN ADVANCE.

THE CASES THAT I WOULD POINT YOUR HONOR TO, WE RAISED THEM IN OUR BRIEF, BUT IS <u>FLORES-MENDEZ</u> AND THE <u>LAWSON VERSUS GRUBHUB</u>.

AND I THINK THAT THEY'RE IMPORTANT HERE ON THAT POINT BECAUSE WITH RESPECT TO <u>FLORES-MENDEZ</u>, THAT WAS A PUTATIVE CLASS ACTION REGARDING AN ALLEGED DATA BREACH, IT WAS AT THE CLASS CERTIFICATION STAGE, AND THE COURT DENIED CLASS CERTIFICATION BECAUSE THE NAMED PLAINTIFF SIGNED A CLASS ACTION WAIVER. THEY'D BEEN LITIGATING FOR TWO YEARS.

HERE WE'RE STILL IN ADVANCE OF THAT. THEY'VE UPHELD IT THERE.

SIMILARLY IN <u>LAWSON</u> AND <u>O'CONNOR VERSUS UBER</u>, THOSE TWO ARE IMPORTANT BECAUSE THAT'S INSTANCES WHERE YOU HAD NAMED PLAINTIFFS WHO HAD OPTED OUT, BUT YOU HAD ABSENT CLASS MEMBERS WHO HAD CLASS ACTION WAIVERS, AND THE COURT DENIED CLASS CERTIFICATION THERE.

THE OTHER IMPORTANT POINTS HERE ARE -- AND THIS IS, I THINK, WHAT'S REALLY IMPORTANT TO DISTINGUISH ALL THE CASES THAT THE DEFENSE RELIES ON, <u>HILL</u> AT THE FOREFRONT OF THE OTHER ONES THEY PUT FORWARD, TOO.

IN THOSE CASES, THE PLAINTIFFS -- EXCUSE ME -- THE DEFENDANTS EITHER MADE A CHOICE TO PROCEED IN LITIGATION AND DIDN'T REFERENCE ARBITRATION OR CLASS ACTION WAIVERS THROUGHOUT, OR THEY DIRECTED DISCOVERY AT ABSENT CLASS MEMBERS. SO THEY TOOK STEPS THAT THE COURT FELT WERE INCONSISTENT WITH

THEIR RIGHTS.

HERE SONY HAS CONSISTENTLY STATED, THROUGHOUT ITS FILINGS, IN EACH CASE MANAGEMENT CONFERENCE STATEMENT, IN ITS ANSWER, THAT THERE ARE THESE CLASS ACTION WAIVERS AND THESE ARBITRATION PROVISIONS THAT PROHIBIT CLASS CERTIFICATION AND THAT IT INTENDS TO OPPOSE CLASS CERTIFICATION AND ENFORCE THEM.

THE ACTIONS THAT MR. BUCHMAN HAS REFERENCED AS CAUSING WAIVER JUST SIMPLY AREN'T THE CASE. TO BEGIN WITH, HIS POINT ABOUT STIPULATING TO CONSOLIDATION OF CASES, THAT HAS NOTHING TO DO WITH STIPULATING TO A CLASS. IT HAS TO DO WITH A MINISTERIAL, ADMINISTRATIVE STEP WITH RESPECT TO THESE THREE NAMED PLAINTIFFS TO PUT THEIR CASES TOGETHER. SONY HAS MADE CLEAR THROUGHOUT THAT WE OPPOSE CLASS CERTIFICATION, IT IS PROHIBITED BY THE CLASS ACTION WAIVER IN THE ARBITRATION AGREEMENT, AND STIPULATING THERE IS NOT IN ANY WAY INCONSISTENT WITH THE STEPS THAT WE TOOK.

WE FILED MOTIONS TO DISMISS AGAINST THE NAMED PLAINTIFFS. WHEN WE LOST THOSE MOTIONS, WE CONTINUED TO LITIGATE THE CASE, AS WE ARE LEGALLY REQUIRED TO DO UNDER THE FEDERAL RULES, UNDER THE LOCAL RULES, UNDER COURT'S ORDERS.

WE'VE ALWAYS KEPT THE PLAINTIFFS ON NOTICE OF THESE IMPEDIMENTS TO CLASS CERTIFICATION AND MADE CLEAR THAT WE WOULD OPPOSE.

AND AGAIN, YOUR HONOR, THE STAGE AT WHICH ONE TYPICALLY DOES SO IS THE CLASS CERTIFICATION STAGE. EVEN YOU FIND SOME

CASES WHERE, FOR EXAMPLE, TFT-LCD LITIGATION, WHERE IT'S AFTER THE CLASS CERTIFICATION STAGE AND THE COURT HAS STILL UPHELD THE ENFORCEMENT OF THE ARBITRATION PROVISION.

HERE WE'RE WELL IN ADVANCE. SO PLAINTIFFS HAVE BEEN ON NOTICE, THEY BROUGHT -- IT'S ALSO IMPORTANT TO NOTE THE NAMED PLAINTIFFS BROUGHT THIS CASE IN THIS FORUM. THEY SIGNED ARBITRATION PROVISIONS, BUT THEY BROUGHT IT HERE. THAT WAS THEIR CHOICE.

SONY THEN DECIDED TO MOVE TO DISMISS AND LITIGATE THE CASE HERE. AND, AGAIN, WE'RE NOT MOVING TO COMPEL THOSE NAMED PLAINTIFFS TO ARBITRATE.

BUT WE'RE HERE NOW AND WE HAVE NEVER MOVED AWAY FROM OUR POSITION THAT THESE NAMED PLAINTIFFS ARE HERE, BUT THEY CANNOT PROCEED AS A CLASS.

AND THAT'S THE CRITICAL POINT WITH RESPECT TO THE CLASS ACTION WAIVERS. THEY CAN'T PROCEED AS A CLASS BECAUSE THEY SIGNED CLASS ACTION WAIVERS IN THESE VARIOUS TERMS AND AGREEMENTS.

AND THE ABSENT CLASS MEMBERS CAN'T PROCEED AS A CLASS -- IT'S AN INDEPENDENT POINT -- BECAUSE THEY SIGNED CLASS ACTION WAIVERS, AND NO STEPS THAT WE HAVE TAKEN HAVE IN ANY WAY TOUCHED UPON THE ABSENT CLASS MEMBERS.

AND THAT'S WHERE WE CAN PIVOT NOW, YOUR HONOR, TO ARBITRATION PROVISIONS.

THERE, AS MR. BUCHMAN HAS SAID, WE'RE NOT MOVING TO COMPEL

ARBITRATION AGAINST THE PLAINTIFFS. THEY CHOSE THIS FORUM, WE'RE NOW LITIGATING AGAINST THEM.

BUT THE SAME POINTS HOLD TRUE WITH RESPECT TO WAIVER. WE HAVE NOT TAKEN ANY STEPS TO WAIVE OUR RIGHT TO ENFORCE THE ARBITRATION PROVISION, PROVISIONS OF THE ABSENT CLASS MEMBERS.

AGAIN, WHEN WE MOVED TO DISMISS, THE ONLY --

THE COURT: I INTEND TO GIVE YOU ABOUT TWO MORE MINUTES, BECAUSE AT SOME POINT WE NEED TO GET TO THE CMC. SO I JUST WANT TO MAKE SURE THAT YOU HIT -- I'M SORRY, I THOUGHT THAT YOU WOULD BE ADDRESSING MORE DIRECTLY THE THINGS THAT I ASKED MR. BUCHMAN.

I HAVE FOUND WHAT YOU'RE SAYING HELPFUL, SO I DON'T MEAN -- I DON'T WANT YOU TO TAKE MY STOPPING YOU AS A SIGN OF THE OPPOSITE.

BUT I DO WANT YOU TO FOCUS IN A LITTLE BIT MORE -- IF THERE'S ANYTHING SPECIFIC THAT YOU WANT TO ADDRESS WITH REGARD TO THE QUESTIONS I ASKED MR. BUCHMAN AND THAT HE ANSWERED, IF YOU COULD GET THERE FASTER, AND THEN TAKE A FEW MORE MINUTES TO MAKE OTHER POINTS YOU WANT TO MAKE, BUT THAT WILL BE BRIEF.

MR. HEIN: THANK YOU, YOUR HONOR. I APPRECIATE IT.

I WANT TO FINISH OFF THE POINT, IF IT'S ALL RIGHT, ON THE ARBITRATION PROVISION BECAUSE I THINK IT'S IMPORTANT.

THE COURT: YES.

MR. HEIN: BECAUSE WITH THE ARBITRATION PROVISION -- AND THIS GOES TO THE WAIVER -- TFT-LCD AND RUSHING ARE CRITICAL

CASES TO LOOK AT THERE BECAUSE WHAT THEY'RE BOTH SAYING IS THAT -- AND AGAIN, I MENTIONED TFT WAS AFTER CLASS CERTIFICATION -- THEY'RE CRITICAL BECAUSE WHAT THE COURT HELD THERE WITH RESPECT TO ARBITRATION IS THE ABSENT CLASS MEMBERS, YOU CANNOT MOVE TO COMPEL THEM TO ARBITRATE UNTIL THE CLASS IS CERTIFIED AND THEY'RE PART OF THE CLASS, AND WE'RE NOT THERE YET.

AND PRIOR TO THAT, YOU CAN -- BASICALLY THE -- AND THIS IS KIND OF THE SLIGHT -- THE POINT THAT'S MORE KIND OF UNIQUE TO THE ARBITRATION POINT IS THIS: PLAINTIFFS HAVE BASICALLY SAID, SONY, YOU HAVE SONY CUSTOMERS, YOU KNOW WHO KNOW THE ABSENT CLASS MEMBERS ARE, YOU HAVE WAIVED THEM WITH RESPECT TO THE ARBITRATION PROVISION.

TFT-LCD MAKES CLEAR THAT CANNOT BE THE CASE. WE HAVE NO DISPUTE WITH THEM. THEY'RE NOT PARTIES TO THIS CASE. WE CAN'T FILE ANY MOTION TO COMPEL ARBITRATION AGAINST THEM.

SO UNLESS AND UNTIL THE CLASS IS CERTIFIED, OUR, OUR -- WE HAVE NO RIGHT WITH RESPECT TO THE ABSENT CLASS MEMBERS, AND WE HAVE NO ABILITY TO COMPEL THEM TO ARBITRATION. AND, THUS, WE HAVE NO ABILITY TO WAIVE THAT RIGHT.

AND THAT'S WHAT THOSE CASES MADE CLEAR.

SO I THINK, JUDGE, TO SUM UP THE POINTS WITH RESPECT TO WAIVER ON BOTH CLASS ACTION AND ARBITRATION, IT'S CRITICAL THAT WE'VE CONSISTENTLY MADE CLEAR THAT WE HAVE THESE RIGHTS AND WE INTEND TO ENFORCE THEM THE PLAINTIFFS THROUGHOUT; THAT WE HAVE

LITIGATED CONSISTENTLY ONLY WITH THESE THREE NAMED PLAINTIFFS, THEY'RE THE ONLY ONES THAT ARE BOUND; AND FINALLY, THAT WE -- UNTIL CLASS CERTIFICATION, THIS IS A TIMELY MOTION AND IT'S -- IT'S IMPOSSIBLE TO WAIVE AGAINST THE ABSENT CLASS MEMBERS BOTH WITH RESPECT TO THE CLASS ACTION WAIVER AND THE ARBITRATION PROVISION.

THOSE ARE THE POINTS I WANTED TO MAKE WITH RESPECT TO THE WAIVER ARGUMENTS MR. BUCHMAN HAS RAISED.

AND YOUR HONOR MENTIONED IF I HAD ANY OTHER POINTS THAT I WANTED TO RAISE. I'M HAPPY TO RAISE THEM NOW OR --

THE COURT: LET ME ASK YOU, MR. BUCHMAN, DO YOU WANT TO SPEAK TO SOME OF THOSE THINGS FIRST?

MR. BUCHMAN: I WOULD WHILE THEY'RE FRESH IN MY MIND, YOUR HONOR.

THE COURT: SURE.

MR. BUCHMAN: THANK YOU VERY MUCH FOR GIVING ME THIS OPPORTUNITY TO DO THAT.

FIRST OF ALL, I WANT TO ADDRESS OPPOSING COUNSEL'S STATEMENT ABOUT IT'S IMPOSSIBLE TO WAIVE, AND THE CASES LIKE TFT THAT COUNSEL CITED, THOSE ARE ALL BEFORE HILL. HILL CHANGED THE RULES, AND HILL SPECIFICALLY SAID AT THE BOTTOM OF PAGE 468, AND WHAT SONY FAILS TO APPRECIATE IS THE EXACT SAME THING THAT THE DEFENDANT IN HILL FAILED TO APPRECIATE, AND THE COURT SAID, XBS ARGUES THAT UNTIL AFTER CLASS CERTIFICATION HAD BEEN GRANTED, FOLLOWED BY THE COMPLETION OF NOTICE AND OPT OUT

PERIOD, QUOTE, THERE WAS NO EXISTING RIGHT TO COMPEL ARBITRATION BECAUSE XBS COULD NOT MOVE TO COMPEL ARBITRATION AGAINST EITHER HILL OR THE PUTATIVE CLASS MEMBERS.

OPPOSING COUNSEL JUST SAID THE EXACT SAME THING THAT WAS EXPRESSLY REJECTED BY HILL.

ON THE NEXT PAGE OF HILL ON HEADNOTES 3 THROUGH 4 WHERE THE COURT EXPLICITLY SAYS, YOUR HONOR, THAT EVEN THOUGH THE COURT RECOGNIZED WHAT THEY ARE SAYING ABOUT CLASS CERTIFICATION, THE COURT EXPRESSLY SAID, YOU CAN STILL WAIVE A RIGHT BY VIRTUE OF YOUR CONDUCT PRIOR TO CLASS CERTIFICATION. AND THAT'S WHAT'S REALLY HAPPENED HERE.

THE DEFENDANT TOLD CHIEF JUDGE SEEBORG THEY WERE GOING TO MAKE A MOTION TO COMPEL ARBITRATION. THEY NEVER DID. THEY NEVER DID.

THEY WENT FORWARD WITH TWO MOTIONS TO DISMISS. THEY SOUGHT --

THE COURT: YOU'VE HIT ALL OF THIS ALREADY, SO I'M GOING TO KEEP GOING. THOSE ARE FRESH AT THE TOP OF MY MIND.

SO WHAT ELSE YOU GOT?

MR. BUCHMAN: THEY SOUGHT A MERITS RULING. THEY MADE A CONSCIOUS DECISION TO PROCEED IN THIS COURT ON THE MERITS. THEY HAD KNOWLEDGE. THEY HAD KNOWLEDGE BECAUSE THEY SAID IN THE CMO NUMBER 1 THEY INTENDED TO MAKE THIS MOTION, AND THEY TOOK ACTS INCONSISTENT WITH IT BY FAILING TO MAKE THAT MOTION TO COMPEL ARBITRATION, MAKING TWO MOTIONS TO DISMISS, AND MORE,

PAGES 5 THROUGH 7 OF OUR BRIEF.

ONE OR TWO OTHER QUICK BULLET POINTS FROM THAT, VERY IMPORTANT HERE, AND IT'S A POINT THAT WE RAISED IN OUR OPPOSITION BRIEF, THEY NEVER ADDRESSED IT IN THEIR REPLY, AND HILL SAYS THIS. IN THIS COURT, UNDER THE LOCAL RULE 16-2(D), YOU CAN ASK THIS COURT FOR RELIEF TO BE EXCUSED FROM DOING ANYTHING IN CONNECTION WITH A CASE MANAGEMENT CONFERENCE, ANYTHING.

THEY NEVER DID THAT IN THIS CASE, YOUR HONOR. THEY NEVER ASKED YOUR HONOR FOR RELIEF TO BE EXCUSED FROM DOING CASE MANAGEMENT CONFERENCE ORDERS, APPEARING AT CMO'S, FROM ANSWERING COMPLAINTS -- THE COMPLAINT.

THEY DIDN'T ASK FOR ANY RELIEF, WHICH IS ANOTHER EXAMPLE OF HOW THEY WERE HAPPY TO PROCEED IN THIS COURT ON THE MERITS. THAT'S SOMETHING THEY CONCEDE. THEY NEVER ADDRESS THE LOCAL RULE ABOUT HOW THEY COULD HAVE ASKED FOR RELIEF TO BE EXCUSED FROM THINGS. NEVER HAPPENED, NEVER REQUESTED IT. HAPPY TO MOVE FORWARD ON THIS CASE.

I'M NOT GOING TO GO INTO OTHER BULLET POINTS, BUT I WILL JUST SAY QUICKLY, THEY -- WE HAVE BOTH ENGAGED IN AFFIRMATIVE DISCOVERY. THEY'VE SERVED DOCUMENT REQUESTS ON US, AND SOME OF IT GOES TO ABSENT CLASS MEMBERS, JUST LIKE THE DEFENDANT IN HILL.

WE'VE SERVED DOCUMENT REQUESTS ON THEM. WE'VE ASKED FOR INFORMATION ABOUT PUTATIVE CLASS MEMBERS. THEY'VE AGREED TO

GIVE US INFORMATION ABOUT THOSE INDIVIDUALS BECAUSE WE NEED THAT INFORMATION FOR PURPOSES OF CLASS CERTIFICATION.

SO I RESPECTFULLY DISAGREE WITH MR. HEIN THAT IT'S IMPOSSIBLE TO WAIVE PRIOR TO CLASS CERTIFICATION. HILL SAYS EXACTLY THE OPPOSITE, AND IT FOUND THAT THEY DID WAIVE BY VIRTUE OF THEIR CONDUCT IN HILL.

AND WE WOULD REQUEST THAT THE COURT LOOK AT THE PARAGRAPHS UNDER HEADNOTES 3, 4, 5, AND 6 IN THAT REGARD, IN ADDITION TO THE OTHER POINTS IN HILL THAT DEMONSTRATE THAT THERE WAS A CLEAR, KNOWING WAIVER.

AND THE SAME HOLDS TRUE HERE. FROM THE CMO, FROM THE MOTION TO DISMISS TWICE, FROM THE FAILURE TO ASK FOR RELIEF FROM THIS COURT TO BE EXCUSED FROM OBLIGATIONS, FROM THE ACTUAL STATEMENT ON PAGE 13.

AND YOU HEARD MR. HEIN SAY THAT THEY'RE NOT SEEKING TO ENFORCE THE ARBITRATION PROVISION AGAINST THE NAMED PLAINTIFFS. THEY'RE WAIVING IT.

AND THEY CANNOT NOW, UNDER HILL, APPLY THE ARBITRATION PROVISION AGAINST THE ABSENT CLASS MEMBERS. HILL SAYS THERE IS A UNILATERAL CONCEPT OF WAIVER THAT BINDS SONY, AND THAT WAIVER PREVENTS THEM FROM ENFORCING THE ARBITRATION PROVISION AND THE CLASS WAIVER AGAINST ABSENT CLASS MEMBERS.

I WON'T REPEAT IT AGAIN.

BUT I WILL SAY PAGE 13, IT SAYS CONTRARY TO THE NAMED PLAINTIFFS' ARGUMENTS, SONY MOTIONS -- SONY'S MOTION DOES NOT

SEEK TO PREVENT THE NAMED PLAINTIFFS FROM PURSUING THEIR CASE IN COURT. THE NAMED PLAINTIFFS ARE PURSUING THEIR CASE IN COURT, AND SONY HAS NOT MOVED TO COMPEL ARBITRATION OF THEIR CLAIMS. INDEED, IN THIS MOTION, SONY SEEKS NO RELIEF -- NO RELIEF -- AGAINST THE NAMED PLAINTIFFS' UNDERLYING CLAIMS, WHICH WILL BE ADDRESSED BOTH AS TO LIABILITY AND REMEDY AT A LATER POINT. RATHER, SONY SEEKS ONLY DENIAL OF CLASS CERTIFICATION BASED ON VALID ARBITRATION PROVISIONS AND CLASS ACTION WAIVERS BY WHICH VIRTUALLY ALL PUTATIVE CLASS MEMBERS ARE BOUND.

SO THEY'RE WAIVING THEIR RIGHTS, AND HILL SAYS THEY CAN'T ENFORCE THOSE RIGHTS IN THE FUTURE.

THE COURT: MR. BUCHMAN, I'M GOING TO GIVE YOU ABOUT A MINUTE AND A HALF TO MAKE ANY OTHER POINT YOU WANT TO MAKE BEFORE I ASK MR. HEIN TO -- SINCE IT'S HIS MOTION, THAT'LL BE THE FINAL WORD ON THE MOTION, AND THEN I WANT TO MOVE ON TO THE CMC.

MR. BUCHMAN: JUST GOING TO THE TITLE OF THE AGREEMENTS, IT'S A LICENSE. THEY'RE ALL CALLED LICENSING AGREEMENTS.

I'LL REST AT THIS POINT AND I'LL WAIT TO HEAR FROM HIM.

THANK YOU VERY MUCH, YOUR HONOR.

THE COURT: THANK YOU.

GO AHEAD, MR. HEIN.

MR. HEIN: THANK YOU, YOUR HONOR.

I SHOULD CLARIFY WITH RESPECT TO THE IMPOSSIBILITY OF WAIVER. WHAT I WAS REFERENCING IS ON THE FACTS OF THIS CASE, BASED ON WHAT SONY HAS DONE, IT'S IMPOSSIBLE TO FIND A WAIVER.

AND I WOULD URGE YOUR HONOR, AND WE MAKE THIS CLEAR IN OUR REPLY BRIEF, TO AGAIN SEPARATE THESE ISSUES, THESE THREE INDEPENDENT BASES, BECAUSE I THINK WHAT MR. BUCHMAN AND PLAINTIFFS HAVE DONE IS TRY TO CONFLATE IT AND BASICALLY TAKE THE FACT THAT SONY DID NOT MOVE TO COMPEL ARBITRATION FROM THESE THREE NAMED PLAINTIFFS AND TRY TO USE THAT AS A BASIS FOR WAIVER WITH RESPECT TO THE CLASS ACTION WAIVERS AND ARBITRATION PROVISIONS AS TO THE ABSENT CLASS MEMBERS.

THE ABSENT CLASS MEMBERS ARE NOT PARTIES TO THIS SUIT, YOUR HONOR. THE ONLY ONES WHO ARE PARTIES CURRENTLY ARE THE NAMED PLAINTIFFS. WE MOVED TO DISMISS THEIR CLAIMS. THEY'RE THE ONLY ONES WHO WOULD HAVE BEEN BOUND BY A GRANTING OF THAT MOTION TO DISMISS.

WE, AGAIN, HAVE NOT TAKEN ANY STEPS, RATHER, QUITE THE OPPOSITE. WHAT MR. BUCHMAN IS DESCRIBING IN HILL -- AND IT'S REALLY ON OUTLIER, YOUR HONOR -- THEY MADE DISCOVERY REQUESTS OF PUTATIVE CLASS MEMBERS. THEY TOOK STEPS WITH RESPECT TO THE PUTATIVE CLASS MEMBERS THAT LED THE COURT TO CONCLUDE THAT THERE WAS WAIVER.

WE HAVE NOT DONE THAT. WE HAVE MAINTAINED OUR RIGHT AND WE'VE TAKEN NO STEPS THAT ARE INCONSISTENT WITH THAT RIGHT.

LITIGATING AS WE'RE REQUIRED TO DO HERE, WHETHER IT BE

DISCOVERY OR CASE MANAGEMENT CONFERENCE STATEMENTS, MR. BUCHMAN REFERENCED SOMEHOW PULLING BACK ON THOSE, THIS IS LITIGATING AGAINST THE NAMED PLAINTIFFS.

AND IT'S, IT'S AN EFFORT TO TRY TO TAKE OUR DECISION, WHICH OF COURSE IT WAS THEIR DECISION TO BRING IT IN THIS FORUM, TO NOT MOVE TO COMPEL AND MAKE THAT AFFECT ABSENT CLASS MEMBERS WHO, AGAIN, ARE NOT PARTIES IN THIS CASE AND WHO WE CANNOT COMPEL.

AND WITH RESPECT TO THE CLASS ACTION WAIVERS, I SHOULD BE CLEAR, THOSE APPLY JUST AS MUCH TO NAMED PLAINTIFFS.

AND MR. BUCHMAN IS REMAINING WITH HILL AND THE ARBITRATION ISSUE, BUT ONE NEEDS TO ANALYZE, AGAIN, EACH OF THESE ISSUES SEPARATELY. ON THE CLASS ACTION WAIVERS AS TO THE NAMED PLAINTIFFS, WE HAVE CONSISTENTLY MADE CLEAR THAT THOSE APPLY HERE AND THE NAMED PLAINTIFFS CAN'T REPRESENT A CLASS.

I ALSO WANT TO BE CLEAR, YOUR HONOR, THE NAMED PLAINTIFFS CAN PROCEED AS THEY ARE DOING IN THIS CASE AS INDIVIDUAL PLAINTIFFS. THEY SIMPLY CAN'T REPRESENT A CLASS. WE HAVE ALWAYS BEEN CONSISTENT THAT THEY CAN'T AND THAT WE WOULD OPPOSE CLASS CERTIFICATION ON THAT BASIS, AND PURSUANT TO LAWSON IN THE NINTH CIRCUIT, WE HAVE PREEMPTIVELY MOVED TO DO SO NOW.

YOUR HONOR, NOTHING WILL CHANGE BETWEEN NOW AND THE CLASS CERTIFICATION STAGE. AT THAT TIME, THEY STILL WON'T BE ABLE TO PROCEED AS CLASS MEMBERS BECAUSE THEY SIGNED CLASS WAIVERS.

THE ABSENT CLASS MEMBERS STILL WON'T BE ABLE TO BE PART OF

A CLASS BECAUSE THEY SIGNED CLASS WAIVERS. THE ABSENT CLASS MEMBERS STILL WON'T BE ABLE TO BE PART OF THE CLASS BECAUSE THEY SIGNED ARBITRATION PROVISIONS THAT DON'T PERMIT THEM TO PROCEED IN THIS COURT.

ONE OTHER POINT THAT PLAINTIFF RAISED, AND MR. BUCHMAN KIND OF HINTED AT, IS THE MCGILL CASE THAT THEY RAISED.

THE COURT: SO THIS IS SUPPOSED TO BE A CLOSING, SO I FEEL LIKE YOU MAY BE RAISING NEW THINGS.

MR. HEIN: THAT WAS KIND OF ONE LAST.

THE COURT: ALL RIGHT.

MR. HEIN: BUT I'M HAPPY TO --

THE COURT: I'LL TAKE IT IF IT'S THE LAST -- I HEAR YOU SAYING IT'S THE LAST ONE, SO I WILL LET YOU HAVE IT.

MR. HEIN: WELL, WHAT I WANTED TO JUST RAISE THERE, TO BE CLEAR, YOUR HONOR, AND WE DON'T NEED TO DELVE TOO DEEP INTO MCGILL, THIS IS NOT PUBLIC INJUNCTIVE RELIEF.

MY OTHER POINT THERE IS ANOTHER REASON WHY MCGILL DOESN'T APPLY IS THESE NAMED PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF, AND I BRING THAT UP BECAUSE IT'S DEMONSTRATIVE OF THE FACT THAT THESE NAMED PLAINTIFFS CAN PROCEED IN THIS LITIGATION. WE MOVED TO DISMISS AND WE LOST. THEY CAN PROCEED. IT'S JUST THAT THEY CAN'T REPRESENT A CLASS AND THAT THE CLASS MEMBERS, BOTH FOR ARBITRATION FOR CLASS ACTION WAIVER PURPOSES AND ARBITRATION PROVISION, CANNOT BE MEMBERS OF THAT CLASS.

AND THEN THE FINAL CLOSING POINT I WANTED TO RAISE, YOUR

HONOR, IS NOT ONLY IS THIS RIPE FOR DECISION NOW, BUT IT GOES BACK TO THE INITIAL POINT I MADE THAT THIS WON'T -- THE STATUS OF THESE WAIVERS AND ARBITRATION PROVISIONS WON'T CHANGE BETWEEN NOW AND CLASS CERTIFICATION, AND THE TIME AND EXPENSE THAT WILL GO INTO A CLASS CERTIFICATION PROCESS WILL LEAVE US IN THE SAME PLACE. IT WILL BE COSTLY FOR THE PARTIES, THE THIRD PARTIES, IT'LL BE COSTLY FOR THE COURT TO GO THROUGH IT, AND AT THE CLASS CERTIFICATION STAGE, WE WILL HAVE THE PROBLEM THAT THIS CLASS CANNOT EXIST FOR THOSE THREE INDEPENDENT BASES THAT I'VE REFERENCED.

THE COURT: THANK YOU, WHICH IS THE PERFECT TRANSITION TO DISCUSSING WHAT COMES NEXT.

YES, I SWEAR TO YOU, FIVE SECONDS.

MR. BUCHMAN: FIVE SECONDS.

THE COURT: YES.

MR. BUCHMAN: MR. HEIN SAID THEY HAVEN'T TAKEN ANY AFFIRMATIVE DISCOVERY AGAINST ABSENT CLASS MEMBERS.

DOCUMENT REQUEST NUMBER 26 THAT THEY PROPOUNDED ON US ASKS FOR ALL DOCUMENTS UPON WHICH WE RELY IN CONNECTION WITH CLASS CERTIFICATION, BOTH NAMED PLAINTIFFS AND ABSENT CLASS MEMBERS, ALL DOCUMENTS REGARDING CLASS CERTIFICATION THAT WE'RE GOING TO RELY ON.

MR. HEIN: I TAKE ISSUE WITH THAT, YOUR HONOR.

ALL OF THE DISCOVERY WE'VE DONE HAS BEEN WITH RESPECT TO THESE NAMED PLAINTIFFS. IT'S NOTHING LIKE HILL.

THE COURT: AS IS GOING TO HAPPEN, YOU DON'T AGREE. ALL RIGHT.

MR. HEIN: THANK YOU, YOUR HONOR.

THE COURT: OF COURSE. THANK YOU.

MR. BUCHMAN: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. ARE YOU STAYING AT -- I SEE YOU WALKING AWAY.

MR. BUCHMAN: I WAS GOING TO --

THE COURT: WHY DON'T WE TAKE -- LET'S -- I'M GOING TO STAND UP AND STRETCH, JUST STANDING FOR A BIT.

ANYONE CHANGE OVER IF YOU NEED TO. WE WON'T TAKE A RECESS JUST TO KEEP IT MOVING.

(PAUSE IN PROCEEDINGS.)

THE COURT: ALL RIGHT. I SEE YOU READY, MS. SHORTRIDGE.

DON'T STAND FOR ME. I'M SORRY.

I SHOULD HAVE SAID THAT EARLIER. I WILL REMEMBER FOR NEXT TIME. APOLOGIES. I FEEL LIKE YOU ALL ARE GUINEA PIGS RIGHT NOW.

ALL RIGHT. LET'S MOVE ON TO THE CMC. COME ON FORWARD MR. COVE.

ALL RIGHT. FOLKS, MY SENSE IS REALLY WE'RE JUST TALKING ABOUT THE ADDITIONAL TIME THAT YOU ALL -- THAT YOU ALL WOULD LIKE. ANYTHING OTHER -- BEFORE WE SORT OF JUMP INTO THAT, IS THERE ANY OTHER ISSUE THAT IS NOT ON MY RADAR SCREEN WITH

REGARD TO THE CMC TODAY?

MR. BUCHMAN: I THINK EVERYTHING HAS BEEN COVERED IN OUR CMC STATEMENT.

MR. COVE: YES, I MEAN, THERE'S ONE DISAGREEMENT AS TO THE CLOSE OF FACT DISCOVERY IN THE PROPOSED SCHEDULE.

THE COURT: I SEE THAT. I SEE THAT.

ALL RIGHT. SO LET ME -- AND MIND YOU, I THINK MY QUESTION -- I HAVE THE SAME QUESTION FOR YOU ALL. WELL, ACTUALLY, IT'S NOT A QUESTION SO MUCH AS A -- YOU KNOW, WE'VE -- WE DID THIS ONE TIME BEFORE AND, YOU KNOW, YOU'LL REMEMBER, I TOLD YOU -- I MENTIONED THEN THAT I REALIZE THE SCHEDULE YOU HAD WAS AMBITIOUS, BUT I WANTED YOU TO TRY AND MEET IT, BUT THAT THERE WOULD BE SOME ROOM.

THAT ALL HOLDS TRUE. THIS WAS AMBITIOUS, I WANTED YOU TO TRY TO MEET IT, THERE'S A LITTLE BIT OF ROOM.

THERE IS NOT THE AMOUNT OF ROOM YOU ALL WANT, BECAUSE THIS IS A 2021 CASE.

SO, MIND YOU, AS I SAID, I KNOW THIS IS SORT OF WHERE WE STARTED FOR THE MOTION HEARING, I KNOW THE MOTION HAS BEEN -- IT FEELS LIKE THAT MOTION HAS BEEN PENDING FOR AWHILE. I'M SURE YOU ALL FEEL LIKE IT'S BEEN PENDING TOO LONG. I FEEL THAT WAY, TOO.

SO I GUESS I WANT TO UNDERSTAND -- WELL, LET ME -- I'M SORRY. I WANT TO TAKE A HARD RIGHT TURN.

YOU ALL HAVE -- MAYBE I SHOULDN'T SAY "YOU ALL HAVE."

THERE IS A VERY BROAD ESTIMATE OF TRIAL, AND MIND YOU -- I GUESS I'M CURIOUS SORT OF WHAT IS DRIVING -- IN YOUR STATEMENT IT SAYS TWO TO FOUR WEEKS FOR TRIAL, AND I'M CURIOUS, MAYBE IT'S NOT THAT YOU THINK IT'S TWO AND YOU THINK IT'S FOUR.

IS IT JUST A QUESTION OF TRYING TO FIGURE OUT HOW MUCH THE ISSUES CAN BE NARROWED ABOUT THE LENGTH OF THE TRIAL?

MR. COVE: WELL, I THINK WE'RE -- SINCE WE'RE FAIRLY -- WE DON'T KNOW WHETHER IT WILL BE A CLASS TRIAL OR NOT OF COURSE IS ONE BIG ISSUE.

I THINK IT'S -- FOR AN ANTITRUST CASE, IT'S --

THE COURT: OKAY.

MR. COVE: -- WE WILL ACTIVELY NARROW ISSUES TO BE RESOLVED.

BUT THERE'S -- AT THIS POINT, YOU KNOW, DOCUMENT DISCOVERY IS LARGELY COMPLETE, OR WILL BE -- WILL BE SUBSTANTIALLY -- WE WILL MEET OUR INITIAL DEADLINE. LET ME MAKE THAT CLEAR. SONY INTERACTIVE BELIEVES IT WILL MEET ITS SUBSTANTIAL COMPLIANCE DATE OF MAY 31ST. WE'RE PRODUCING DOCUMENTS NEXT WEEK.

THE COURT: DO ME A FAVOR, I'M HAVING A LITTLE TROUBLE HEARING YOU. COULD YOU PULL THAT MIC UP?

MR. COVE: SURE.

THE COURT: THANK YOU.

MR. COVE: FOR SOME REASON MY MOUTH GOT DRY, SO I'M SORRY.

WE SHOULD MAKE OUR SUBSTANTIAL COMPLETION DATE.

I THINK TRIAL IS SOMETHING THAT'S FAR OFF AND, YOU KNOW, TYPICALLY WE WOULD GO THROUGH THE CLASS CERTIFICATION PROCESS AND YOUR HONOR WOULD RULE ON THAT, AND THEN THE PARTIES WOULD SIT DOWN AND PROPOSE SOMETHING TO THE, TO THE COURT AT THAT TIME, HAVING PROBABLY A CLEARER IDEA OF WHAT THE EVIDENCE MIGHT BE, WHAT EXPERT -- YOU KNOW, WHAT THEIR CLAIM INVOLVES, IF IT IS A CLASS CLAIM, INVOLVES PROVING THAT THEY HAVE A METHOD TO SHOW THAT ALL OR VIRTUALLY ALL OF THE CONSUMERS IN THE UNITED STATES WHO BOUGHT A PLAYSTATION GAME OR ANY ADD-ON CONTENT DURING THE CLASS PERIOD PAID MORE THAN THEY WOULD HAVE HAD SONY NOT ELIMINATED THIS VERY SMALL BRANDED CARD PROGRAM.

SO THAT'S A BIG LIFT, AND IT'S GOING TO REQUIRE EXPERT TESTIMONY ON BOTH SIDES, OBVIOUSLY, AND ANALYSIS.

SO ANYWAYS --

THE COURT: I APPRECIATE YOU INDULGING MY QUESTION FROM OUT OF LEFT FIELD BECAUSE, OF COURSE, WE'RE NOT -- YOU'RE RIGHT, WE'RE NOT THERE YET. I'M SORRY, I HAD IT CIRCLED AND I'M LIKE, YES, I SHOULD ASK ABOUT THAT.

SO LET'S TALK THEN ABOUT THE REST OF THE SCHEDULE AND THEN --

MR. BUCHMAN: IF I MAY JUST RESPOND TO THAT QUESTION, YOUR HONOR?

THE COURT: SURE.

MR. BUCHMAN: I WAS MORE OF THE VIEW THAT IT MIGHT BE

FOUR TO FIVE WEEKS.

THIS IS NOT LIKE A GENERIC DRUG CASE THAT WE HAVE THAT'S PENDING IN FRONT OF CHIEF JUDGE SEEBORG WHICH IS GOING TO TRIAL IN OCTOBER WHICH IS GOING TO BE LONGER.

THESE ARE HOPEFULLY MORE STRAIGHTFORWARD ISSUES. BUT WE EVER NOT GOTTEN THE FULL DOCUMENT PRODUCTION YET, SO THAT WAS A CAUTIOUS AND OPTIMISTIC ESTIMATE OF FOUR WEEKS.

THE COURT: SO THE -- LET'S ENGAGE THE SCHEDULE FOR A MOMENT. THE ONE QUESTION THAT I HAVE, OR ONE OF THE QUESTIONS THAT I HAD FOR YOU ALL, RIGHT, THERE'S THE JUNE 5TH -- THE DEADLINE YOU'VE PUT IN FOR JUNE 5TH FOR A FURTHER JOINT STATUS REPORT. I GUESS -- AND RIGHT AS I SEE IT, I -- I DID CATCH THAT SONY'S POSITION IS THAT YOU WILL GLADLY PARTICIPATE, BUT YOU'RE NOT -- YOU DON'T NECESSARILY THINK IT'S NEEDED.

I GUESS IT'S UP TO YOU, THEN, MR. BUCHMAN, WHAT'S THE POINT OF THE JUNE 5TH -- WHAT PURPOSE DOES THAT JOINT STATEMENT SERVE?

MR. BUCHMAN: WE WOULD LIKE TO KEEP THE COURT INFORMED ABOUT THE SIZE OF THE DOCUMENT PRODUCTION THAT WE RECEIVE ON MAY 31ST FROM THE DEFENDANT SO THAT WE CAN HAVE A CONVERSATION IF NECESSARY WITH THE COURT ABOUT WHAT A REASONABLE SCHEDULE IS IF WE DO RECEIVE A DELUGE OF DOCUMENTS.

AND I WOULD SAY THAT WE HAVE CHARTED OUT THE PRODUCTION THAT WE'VE RECEIVED SO FAR, AND WE HAVE RECEIVED -- AS OF APRIL 23RD, WE RECEIVED 19,000, APPROXIMATELY 19,000 DOCUMENTS

FROM SONY, AND THAT 19,000 TOTALS UP TO JUST ABOUT THE SAME AMOUNT THAT WE RECEIVED FROM FOUR PRIOR PRODUCTIONS.

SO THE PRODUCTIONS SEEM TO BE GETTING LARGER AS WE'RE GETTING CLOSER TO THE MAY 31ST DEADLINE, AND WE'RE JUST A LITTLE CONCERNED THAT WE MAY RECEIVE A VERY LARGE VOLUME OF DOCUMENTS AND THAT WE MAY NEED TO HAVE A CONVERSATION WITH THE COURT ABOUT WHAT A REASONABLE SCHEDULE IS IF WE DO RECEIVE A MASSIVE NUMBER OF DOCUMENTS.

THE COURT: WELL --

MR. BUCHMAN: SO THAT WAS THE POINT OF THE 5TH, OF REPORTING IN TO THE COURT OF WHAT WE RECEIVED AND WHAT WE FEEL WE MIGHT NEED IF WE NEED AN AMENDMENT TO THE SCHEDULE BASED ON THAT PRODUCTION.

THE COURT: DO YOU WANT TO SPEAK TO THAT?

MR. COVE: WELL, YES, A COUPLE OF THINGS.

FIRST, YOU KNOW, WE PRODUCED OVER APPROXIMATELY 39,000 DOCUMENTS SO FAR. I THINK -- WE'RE NOT HIDING THE BALL HERE. WE EXPECT NEXT WEEK TO PRODUCE IN THE NEIGHBORHOOD OF 30- TO 35,000 DOCUMENTS. WE THINK THAT WILL BE THE BIGGEST PRODUCTION.

THERE WILL BE SMALLER PRODUCTIONS AFTER THAT, YOU KNOW, LOOSE ENDS AND EVERYTHING TO TIE UP, BUT WE DON'T EXPECT THERE WILL BE ANYTHING OF THAT SIZE AFTER THAT, AT LEAST BASED ON THIS.

SO THIS IS A NORMAL PROCESS FOR AN ANTITRUST CASE.

THERE'S ALWAYS A NOT INSUBSTANTIAL PRODUCTION AT THE DEADLINE, AND WE TALKED AND WE MET AND CONFERRED ABOUT A SCHEDULE THAT WE PROPOSED THAT WE THINK IS REASONABLE, ACKNOWLEDGING THEY HAVE A HEAVY BURDEN, AND WE WILL HAVE A HEAVY BURDEN TO RESPOND TO THEM.

SO, YOU KNOW, OF COURSE WE DO NOT OBJECT TO PROVIDING ANY STATUS REPORT.

BUT I THINK WE WANTED TO MAKE CLEAR THAT WE THINK THIS IS READY TO GO, WE'VE ACTED DILIGENTLY, WE'VE -- WE'RE READY TO PROCEED TO THE NEXT PHASE ON THE SCHEDULE THAT WE'VE PROPOSED.

AND, OF COURSE, IF ITEMS COME UP, SPECIFIC DOCUMENTS OR SPECIFIC ISSUES OR THINGS LIKE THAT, THE PARTIES CAN THEN MEET AND CONFER IF SOMETHING IS NECESSARY.

BUT THAT'S JUST OUR OUTLOOK AT THIS POINT IN TIME, YOUR HONOR.

THE SCHEDULE WE HAVE AGREED TO ASSUMES THAT THE PRODUCTION WILL BE AS WE -- AS I JUST DESCRIBED.

MR. BUCHMAN: YOUR HONOR --

THE COURT: GO AHEAD.

MR. BUCHMAN: -- MAY I PLEASE?

I WAS REMISS IN NOT ADDING ONE ADDITIONAL FACT THAT I'D LIKE TO BRING TO YOUR HONOR'S ATTENTION, AND THAT'S JUST BEFORE THE APRIL 23RD PRODUCTION, THAT WE HAVE REVIEWED ALL OF THE DOCUMENTS THAT HAVE BEEN PRODUCED TO DATE.

THE COURT: UM-HUM.

MR. BUCHMAN: AND AS I STAND BEFORE YOU HERE TODAY, BASED ON THE 19,000 THAT WERE PRODUCED ON APRIL 23RD OF THIS YEAR, WE HAVE 14,489 DOCUMENTS LEFT TO REVIEW OUT OF THOSE 19,000.

SO I THINK THAT DEMONSTRATES WE'RE MOVING AS QUICKLY AS WE CAN ON THESE DOCUMENTS, AND WE UNDERSTAND THAT YOU WOULD LIKE US TO MOVE QUICKLY ON ALL THIS.

THE COURT: HERE'S ONE OF THE PIECES THAT I'M TRYING TO UNDERSTAND IN LOOKING AT YOUR SCHEDULE, RIGHT? SO WHEN YOU LOOK AT -- AND I'M ON PAGE 10 OF YOUR FURTHER CASE MANAGEMENT STATEMENT -- THERE'S A LOT OF TIME BUILT IN FOR BRIEFING, AND I THINK THERE'S A -- I WILL SHARE WITH YOU THAT I SKETCHED OUT -- I'M HEARING TWO THINGS. I TOOK THE BENCH TODAY HAVING SKETCHED OUT A DIFFERENT SCHEDULE, NOT AS GENEROUS WITH TIME, UNDERSTANDING YOU HAVE A HEAVY INITIAL LIFT, UNDERSTANDING YOU HAVE A HEAVY INITIAL LIFT, BUT TRIMMING THE TIME THAT YOU THEN HAVE FOR THE ADDITIONAL BRIEFS GOING BACK AND FORTH.

I'M CURIOUS, THE JUNE 5TH -- I'M WONDERING IF ULTIMATELY THE SCHEDULE YOU'VE PRESENTLY PROPOSED, WHICH I THINK IS PROBABLY A LITTLE BIT TOO GENEROUS TO YOURSELVES WITH THE TIME ON THE BRIEFING, IF IT ISN'T APPROVED -- I'M GUESSING THAT YOU'VE BUILT INTO THAT WHAT YOU'RE IMAGINING MAY COME ON MAY 31ST, AND SO YOU -- AS I WOULD YOUR SHOES -- YOU HAVE BUILT THAT IN, AND I'M WONDERING IF IT DOESN'T MAKE SENSE, IF THAT -- INSTEAD OF JUST A FURTHER STATUS REPORT, FOR YOU ALL TO PROPOSE

A NEW SCHEDULE ON JUNE 5TH.

INSTEAD OF MY -- INSTEAD OF MY -- WELL, LOOK, I'M TELLING YOU NOW THAT I WAS NOT GOING TO AGREE TO THE SCHEDULE THAT YOU'VE PROPOSED. I WAS GOING TO, BY WAY OF -- ACTUALLY, LET ME TAKE THAT BACK.

I WAS GOING TO LEAVE THE CLOSE OF FACT DISCOVERY ON NOVEMBER 4TH; I WAS GOING TO HAVE EVERYTHING WRAP, ALL OF THE BRIEFING WRAP BY THE END OF THE YEAR; AND I WON'T GET INTO THE, LIKE -- AND I TRIED TO KEEP THEM -- I TRIED TO KEEP THE SCHEDULE MORE CLOSELY ALIGNED TO THIS AMOUNT OF TIME THAT HAD BEEN -- THAT THERE WAS IN THE CURRENT SCHEDULE.

I TELL YOU ALL OF THAT NOT BECAUSE -- I'M INCLINED NOT TO SET THE SCHEDULE TODAY BECAUSE I THINK -- AGAIN, IN YOUR SHOES, I WOULD HEDGE AS WELL AND SORT OF PRESUME LOTS OF -- WELL, YOU KNOW LOTS OF PAPERS, LOTS OF DOCUMENTS ARE STILL COMING. BUT I WOULD IMAGINE THAT THERE IS SOME ROOM HERE IN CASE YOU GET A DELUGE ON MAY 31ST. I UNDERSTAND THAT.

SO LET'S -- MY REQUEST THEN IS FOR YOU ALL TO JUST TAKE WHAT YOU'RE HEARING ME SAY NOW, THIS WAS GOING TO BE SHORTER, SEE WHAT YOU GET BY MAY 31ST, MEET AND CONFER AFTER YOU GET ALL OF IT, SEE IF YOU CAN PROPOSE ANOTHER SCHEDULE AT THAT TIME.

IF THIS IS STILL THE ONLY SCHEDULE YOU ALL CAN REACH, SUBMIT IT AGAIN AND I'LL LOOK AT IT AGAIN WITH FRESH EYES AND WITH WHATEVER REPRESENTATIONS YOU ALL WANT TO MAKE TO ME AT THAT POINT ABOUT WHY YOU NEED THIS TIME.

MR. BUCHMAN: IF I MAY, YOUR HONOR?

THE COURT: YES.

MR. BUCHMAN: TWO VERY QUICK POINTS.

THE COURT: UM-HUM.

MR. BUCHMAN: ONE, THE JUNE 5TH DATE IS A WEDNESDAY. IF WE COULD HAVE UNTIL THE 7TH?

THE COURT: CERTAINLY.

MR. BUCHMAN: THAT'S A FRIDAY. I THINK THAT WOULD GIVE US A LITTLE BIT MORE TIME TO BUILD A SCHEDULE TOGETHER AND TO MEET AND CONFER.

THE COURT: CERTAINLY.

MR. BUCHMAN: THE SECOND POINT IS, YOUR HONOR, I JUST WANT TO VERY BRIEFLY ADDRESS THE NOVEMBER 4TH.

THE REASON WHY I'VE ASKED FOR NOVEMBER 4 IS BECAUSE THERE MAY COME A TIME AFTER WE RECEIVE THE DEFENDANT'S CLASS CERTIFICATION OPPOSITION THAT NEW ISSUES ARISE, NEW ARGUMENTS ARE RAISED, AND THERE IS A NEED FOR SOME QUICK ADDITIONAL DISCOVERY BEFORE OUR REPLIES GO IN, AND WE'VE ASKED TO KEEP THE CLOSE OF FACT DISCOVERY OPEN FOR THAT VERY PURPOSE.

IT MAY NOT BE NECESSARY, BUT WE'D STILL LIKE TO HAVE THE ABILITY, SHOULD WE BE ADDRESSING NEW ISSUES THAT WE'VE NEVER HEARD OF OR HAVE BEEN SURPRISED BY AN ISSUE, THAT WE HAVE THE ABILITY TO CONDUCT THAT DISCOVERY IN CONNECTION WITH OUR REPLY.

THE COURT: SO, AGAIN, MY INSTINCT AT THIS POINT WOULD BE TO HAVE YOU MAKE AN ADMIN MOTION SHOULD THAT ARISE,

AND I MAKE -- AND I WOULD MAKE IT AN ADMIN MOTION IN PART BECAUSE YOU'RE RAISING IT, THIS WON'T BE SOMETHING THAT IS COMPLETELY NEW TO YOU, AND IT WILL BE A QUICK TURN AROUND. AND IF YOU NEED THE EXTENSION ON THE BRIEFING SCHEDULE AT THAT POINT BECAUSE YOU NEED TO TAKE THE ADDITIONAL DISCOVERY -- THERE'S A PART -- I DON'T WANT TO BUILD IN TOO MUCH FOR CONTINGENCIES THAT MAY NOT ARISE.

I'D RATHER THAT, IF SOMETHING COMES UP, WE PIVOT AND THEN ALLOW -- IF YOU FIND THAT -- IF YOU FIND THAT THERE ARE NEW ARGUMENTS BEING RAISED, I'D RATHER YOU FILE AN ADMIN MOTION AND ASK FOR THE ADDITIONAL TIME TO TAKE THE ADDITIONAL DISCOVERY THAT YOU NEED AND WE PUSH EVERYTHING OUT.

MR. BUCHMAN: I UNDERSTAND, YOUR HONOR.

I THINK YOU UNDERSTAND WHERE WE'RE COMING FROM AS WELL, SO THAT'S FINE.

THE COURT: I DO. BUT I'M ALSO INCLINED -- I WANT TO KEEP THE SCHEDULE. I WANT TO FIND A SCHEDULE THAT WORKS WITH -- AND I UNDERSTAND WANTING TO TRY TO BUILD IN FOR ALL THE CONTINGENCIES. BUT AT SOME POINT, WE JUST NEED TO PROCEED FORWARD.

SO I'M OPEN -- IF THINGS COME UP -- YOU'LL REMEMBER THE LAST TIME WE ALL GATHERED -- AND THIS IS WHY I APPRECIATE YOUR SAYING -- YOUR NOTING, MR. COVE, YOU'RE NOT HIDING THE BALL AND YOU'RE TELLING ME, AND HOPEFULLY IT'S NOT THE FIRST TIME THAT PLAINTIFFS HAVE HEARD IT EITHER, WHAT'S COMING NEXT WEEK AND

THAT THINGS ARE COMING.

AND OF COURSE, AS WE SAID LAST TIME, YOU WERE RIGHTLY -- OR I APPRECIATE THE SENSE OF WORRYING ABOUT THE DELUGE AT THE END. IF YOU GET DELUGED -- AS I SAID LAST TIME, IF YOU GET DELUGED AT THE END, I WILL BE MORE REASONABLE THEN. BUT I DON'T WANT TO PLAN FOR IT. I DON'T WANT TO PLAN FOR IT BECAUSE THEN WE JUST COULD -- WE'RE GOING TO BE HERE FOREVER.

MR. BUCHMAN: UNDERSTOOD.

THE COURT: AND JUST AS A GENERAL MATTER, YOU KNOW, I, LIKE YOU ALL, HAVE AN INTEREST IN HAVING IT ALL MOVE.

SO, YES?

MR. COVE: I -- YOUR HONOR, I WOULD MAKE A COUPLE OF COMMENTS, BECAUSE I THINK YOUR SOLUTION IS A GOOD ONE AND I'M HAPPY TO DO IT.

I'LL MAKE A COUPLE OF COMMENTS IN ANTICIPATION, OR -- THAT WHEN ONE THINKS ABOUT THIS AS BRIEFING, IT DOES SEEM QUITE GENEROUS.

WHEN ONE THINKS ABOUT IT AS EXPERTS HAVING TO DEAL WITH --

THE COURT: YES.

MR. COVE: -- REGRESSIONS AND HUNDREDS OF MILLIONS OF PIECES OF DATA, IT'S NOT -- AND ALL THE OTHER ISSUES THAT COME UP -- IT IS NOT THAT GENEROUS.

AND THE OTHER THING I'LL SORT OF PUT A STAKE IN THE GROUND IS SONY CORPORATION AND SONY INTERACTIVE SHUTS DOWN THEIR BUSINESS, THAT'S TRADITION, BETWEEN CHRISTMAS AND NEW YEAR'S,

AND THAT'S SOMETHING WE WANT TO -- THAT'S USUALLY A LITTLE BIT BEFORE CHRISTMAS AND PERHAPS A LITTLE BIT AFTER NEW YEAR'S. THAT'S SOMETHING THAT IS A CIVILIZED PRACTICE, AND I THINK WE SHOULD -- WE WANT TO --

THE COURT: IF ONLY MORE OF US FOLLOWED IT.

MR. COVE: THAT'S SOMETHING TO KEEP IN MIND.

I'M SURE MR. BUCHMAN WILL BE UNDERSTANDING.

THE COURT: THINK OF IT THIS WAY: PART OF WHAT YOU'RE DESCRIBING, MR. COVE, MAY BE BETTER SUITED TO THE STATEMENT EXPLAINING MORE OF THAT, PUTTING MORE OF THAT IN IN A WAY THAT I VERY MUCH APPRECIATE GIVEN HOW COMPLEX THIS CASE IS. YOU ALL KEPT THIS STATEMENT TO 12 PAGES. LIKE, RIGHT?

I GET RIDICULOUS THINGS FROM PEOPLE WITH MUCH LESS COMPLEX CASES, SO I THANK YOU FOR THAT.

MY POINT BEING THAT THE STATUS REPORT YOU ALL FILE ON JUNE 7TH CAN BE FOCUSSED, IN FACT, IF YOU ALL AGREE TO A CASE SCHEDULE, IT COULD JUST BE A STIPULATION TO A NEW CASE SCHEDULE, BUT DO GIVE ME THE EXPLANATION.

MR. COVE: SURE.

THE COURT: AND AS I HOPE YOU'VE GLEANED TO SOME DEGREE, YOU KNOW, I DON'T -- STATE THE OBVIOUS, BECAUSE JUST BECAUSE IT'S OBVIOUS TO YOU ALL DOES NOT MEAN IT'S OBVIOUS TO ME.

SO PLEASE FEEL FREE TO INCLUDE THE, WE ARE GOING TO HAVE TO DEAL WITH -- WHAT DID WE SAY? -- YOU SAID IT'S 35 FROM NEXT

WEEK, 19 -- TWO TIMES 19,000 FROM BEFORE, YOU HAVE TO COMB THROUGH THAT, FIGURE OUT WHAT GOES TO THE EXPERTS, AND THEN THEY NEED TO DO THEIR MAGIC. I GET THAT.

BUT WRITE IT AGAIN, BECAUSE I WON'T REMEMBER IT IN A MONTH. THAT'S JUST THE NATURE OF THIS, UNFORTUNATELY.

SO -- YES, MR. BUCHMAN, ANYTHING ELSE?

MR. BUCHMAN: MAY I RAISE ONE OTHER THING?

THE COURT: YES, PLEASE.

MR. BUCHMAN: WE HAVE TWO MOTIONS TO COMPEL.

THE COURT: WE DO, AND WE ARE NOT DOING THOSE TODAY. BUT THEY ARE WITH ME, AND YOU SHOULD -- I DON'T OFTEN DO THIS. I DON'T LIKE TO FORECAST BECAUSE I DON'T LIKE TO PROMISE BECAUSE I DON'T LIKE TO BREAK PROMISES, BUT THEY ARE UNDER SUBMISSION AND YOU SHOULD EXPECT THOSE, I WILL SIMPLY SAY SOON. THAT DOES NOT MEAN TODAY. THAT DOES NOT MEAN TOMORROW.

BUT IN THE GRAND SCHEME OF HOW GLACIALLY SOME OF THESE THINGS MOVE, I REALIZE THAT THAT IS SOMETHING THAT SHOULD MOVE FASTER AND WILL.

MR. BUCHMAN: THAT'S ANOTHER FACTOR IN THE SCHEDULE.

THE COURT: OF COURSE.

MR. BUCHMAN: THANK YOU.

THE COURT: ANYTHING ELSE FROM YOU, MR. COVE?

MR. COVE: NO, YOUR HONOR. THANK YOU.

MR. BUCHMAN: THANK YOU, YOUR HONOR.

THE COURT: THANK YOU, ALL. HAVE A GOOD REST OF YOUR

WEEK.

AND WE'RE ADJOURNED.

THE CLERK: COURT STANDS IN RECESS.

(THE PROCEEDINGS WERE CONCLUDED AT 3:20 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

Lee-Anne Shortridge

LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: MAY 9, 2024