UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AGUSTIN CACCURI, et al.,

        Plaintiffs,

    v.

SONY INTERACTIVE
ENTERTAINMENT LLC,

        Defendant.

Case No. 21-cv-03361-AMO

**ORDER DENYING MOTION TO DENY
CLASS CERTIFICATION**

Re: Dkt. No. 124

      In this putative class action, Plaintiffs Agustin Caccuri, Adrian Cendejas, and Allen Neumark allege that Defendant Sony Interactive Entertainment LLC engaged in anticompetitive conduct by discontinuing the sale of digital PlayStation game download cards to third-party retailers.  Sony now moves to deny class certification, relying on the arbitration and class action waiver provisions in its terms of service and related agreements.  Plaintiffs oppose, arguing that the agreements do not cover their claims and that Sony has waived the right to enforce the arbitration and class action waiver provisions.  On the current record, the Court cannot conclude that Plaintiffs are precluded from prosecuting their claims on a class basis in this forum.  Accordingly, Sony's motion is **DENIED** for the reasons set forth below.

# I.  BACKGROUND

## A.  Factual Background

      The Court has previously detailed the underlying facts in the order denying Sony's first motion to dismiss, *see* ECF 60, and does not repeat those facts here.  As relevant to the instant motion, Plaintiffs seek to represent a class of: "[a]ll persons in the United States, exclusive of Sony and its employees, agents and affiliates, and the Court and its employees, who purchased any

digital video game content directly from the PlayStation Store at any time from April 1, 2019 through the present."  ECF 61 ¶ 78.

During the proposed class period, three different agreements (and various versions of them)[1] were in effect – the PlayStation system software license agreement,[2] the software product license agreement,[3] and the PlayStation network terms of service and user agreement.[4]  ECF 124-2.

There are five versions of the PlayStation network terms of service and user agreement – the April 2019 version, the October 2020 version, the May 2021 version, the October 2022 version, and the August 2023 version.  ECF 124-6, 124-7, 124-8, 124-9, 124-10.  The May 2021, October 2022, and August 2023 terms of service contain arbitration and class action waiver provisions that are materially identical to the October 2020 terms, though they are different from those in the April 2019 version.[5]  *See* ECF 124-6 at 20-22; ECF 124-7 at 19-21; ECF 124-8 at 20-21.  All versions of the terms of service, except for the 2019 version, incorporate the system

---

[1] Each agreement (and each version thereof) explains how to opt-out.  *See* ECF 124-3 at 4; ECF 124-4 at 6; ECF 124-5 at 5; ECF 124-6 at 20-21; ECF 124-7 at 19-20; ECF 124-8 at 20; ECF 124-9 at 19; ECF 124-10 at 19.  According to Senior Director of Product Management Ryan King, a search of Sony's records showed that less than .006% of putative class members have done so.  ECF 124-1 ¶ 15.  Plaintiffs' names did not appear in those search results.  *Id.*

[2] Version 1.0 preceded version 1.1 of the PlayStation 5 system software license agreement.  ECF 124-1 ¶ 5.  Before that, version 2.2 of PlayStation 4 system software license agreement was operative.  *Id.* ¶¶ 5, 6.  Like the PlayStation 5 system software license agreement, a user had to accept the PlayStation 4 system software license agreement in order to set-up the console.  *Id.*  Sony does not provide the effective dates for each version of these agreements.

[3] The version of the software product license agreement before the Court was last updated August 2020.  ECF 124-5 at 6.  It incorporates both the system license agreement and the terms of service.  ECF 124-5 at 2

[4] A user must agree to the terms of service in order to create a PlayStation network account.  ECF 124-1 ¶ 8.  Otherwise, the user cannot access the PlayStation network or the PlayStation store.  *Id.* ¶ 9.

[5] During oral argument, the parties agreed that the arbitration and class action waiver provisions in the October 2020, May 2021, October 2022, August 2023 terms of service were materially identical.

United States District Court
Northern District of California

software license agreement and the software product license agreement.  *See* ECF 124-9 at 3; *see also* ECF 124-6 at 3; ECF 124-7 at 3; ECF 124-8 at 3; ECF 124-10 at 2-22.  The Court discusses the specific provisions at issue below, with additional terms from the agreements Sony provided set forth in the appendix that accompanies this order.

### B.  Procedural Background

Given the significance of the procedural background to Plaintiffs' waiver arguments, the Court describes the development of this litigation in detail.  Plaintiff Agustin Caccuri commenced the first-filed putative class action against Sony on May 5, 2021.  ECF 1.  Plaintiff Adrian Cendejas filed a second proposed class action – *Cendejas v. Sony Interactive Entertainment LLC*, No. 3:21-cv-03447-AMO – on May 7, 2021.  On June 4, 2021, the Court related the *Caccuri* and *Cendejas* matters.  ECF 16.  Plaintiff Allen Neumark filed a third putative class case – *Neumark v. Sony Interactive Entertainment LLC*, No. 3:21-cv-05031-AMO – on June 29, 2021.

On July 27, 2021, the parties in *Caccuri* and *Cendejas* filed a stipulation and proposed case management order.[6]  ECF 28.  The stipulation indicated that Plaintiffs intended to move for appointment of interim class counsel and file a single consolidated complaint, after which Sony intended "to file a motion to compel arbitration[.]"  *Id.* at 2.  The parties believed "the motion should be resolved before proceeding to other stages of the litigation."  *Id.*  They also agreed that "in order to conserve the resources of the [p]arties and the Court, the [c]ase [m]anagement [c]onference [scheduled for August 5, 2021] and accompanying deadlines should be postponed until after the resolution of the motion to compel[.]"  *Id.*  The parties stipulated that absent good cause, "[n]o discovery or Rule 26 disclosures" were to "take place before the resolution of the [m]otion to [c]ompel."  *Id.* at 4.  The Court approved the parties' stipulation the day it was filed.  ECF 29 at 7.  The Court then related *Neumark* to *Caccuri* and *Cendejas*, and the parties subsequently stipulated that all three cases would proceed on the same schedule.  ECF 30, 31.

---

[6] Before the parties submitted their proposed case management order, the parties twice stipulated to continue the deadline for Sony's answer or responsive pleading in *Caccuri* and *Cendejas*.  ECF 14, 25.  The second stipulation indicated that Sony intended to move to compel arbitration following the filing of a consolidated complaint.  ECF 25 at 2.

United States District Court
Northern District of California

Following the appointment of interim lead counsel, on December 20, 2021, Plaintiffs filed a consolidated class action complaint. ECF 35, 40. On January 7, 2022, the parties filed a stipulation and proposed a second case management order. ECF 41. The parties agreed to extend the time for Sony to respond to the consolidated complaint. *Id.* at 3. The stipulation was "not intended to bar Sony . . . from filing any motion to compel arbitration or motion under Federal Rule of Civil Procedure 12 . . . that it would otherwise be permitted to file by law, nor intended to affect Plaintiffs' ability to seek motion-related discovery in order to oppose any such motion, or Sony's . . . ability to oppose such discovery." *Id.* The stipulation also did "not waive or prejudice any right, claim or defense of any party . . . ." *Id.* Like the first, this proposed case management order prohibited discovery or Rule 26 disclosures, absent a showing of good cause, prior to the resolution of a motion to compel or a motion to dismiss under Rule 12. *Id.* at 6. On January 10, 2022, the Court approved the parties' stipulation and entered the proposed case management order. ECF 42 at 6.

On February 18, 2022, Sony moved to dismiss the consolidated complaint with prejudice under Rule 12(b)(6). ECF 45. The Court held a hearing on the motion, at which counsel for both sides appeared, on June 23, 2022. ECF 56. On July 15, 2022, the Court granted the motion to dismiss with leave to amend. ECF 60. Plaintiffs filed an amended consolidated complaint on August 15, 2022. ECF 61. The parties stipulated to extend the deadline for Sony to respond to the amended consolidated complaint until September 22, 2022. ECF 63 at 2. On that date, Sony filed its motion to dismiss, again seeking dismissal with prejudice under Rule 12(b)(6). ECF 67. On February 7, 2023, the Court denied the motion on the papers. ECF 80.

On February 17, 2023, the parties stipulated to extend the deadline for Sony's answer. ECF 83. Consistent with the parties' stipulation, Sony filed its answer on March 7, 2023. ECF 91. The section listing Sony's affirmative defenses reads, in part: "Plaintiffs' request to proceed as a class or representative action is barred in whole or in part by arbitration agreements between [Sony] and putative class members that require arbitration of disputes and prevent those persons from participating in a class action." *Id.* at 14. That section also provides that "Plaintiffs' request

to act in a representative capacity or on behalf of anyone else but themselves is barred in whole or in part by class-action waivers that foreclose Plaintiffs from bringing a class action." *Id.*

On March 2, 2023, the parties filed their first joint case management statement.[7] ECF 89. In the statement, the parties' listed their disputed legal issues as including "[w]hether Plaintiffs (and putative class members) are subject to enforceable class-action waivers[,]" and "[w]hether arbitration agreements between Sony and most putative class members preclude their participation in the requested class[.]" *Id.* at 4. Sony stated it "anticipate[d] filing a motion to deny class certification because Plaintiffs and the putative class members are bound by class-action waivers and because the putative class members are subject to arbitration agreements." *Id.* at 6. In connection with its anticipated motion to deny class certification,[8] Sony stated "[t]o be clear, Sony does not seek to stay discovery while this motion is pending. But the motion should be resolved as soon as possible so that the parties – and third parties – can avoid potentially unnecessary discovery and expense." *Id.* at 13. Sony also anticipated "filing an early motion for summary judgment." *Id.* at 6. Sony thus proposed that discovery be phased, with the first phase "limited to evidence regarding the rationale for Sony's decision to no longer sell game-specific download codes." *Id.* at 8. Sony described the issue as a "discrete" one "that the Court ha[d] already identified as potentially dispositive." *Id.* Intending to proceed in this manner, Sony proposed a case schedule through what it called "Phase I Summary Judgment Motions." *Id.* at 17.

On May 31, 2023, the parties filed a second joint case management statement. ECF 98. In the statement, the parties again listed their disputed legal issues as including "[w]hether Plaintiffs (and putative class members) are subject to enforceable class-action waivers" and "[w]hether arbitration agreements between Sony and most putative class members preclude their participation

---

[7] The parties filed the statement in advance of the case management conference held March 9, 2023, at which Sony's counsel appeared. ECF 92.

[8] As to its anticipated motion to deny class certification, Sony stated, "this is not a motion to compel arbitration[,]" taking the position that "[b]ecause the putative class members are just that, Sony has no 'dispute' with them and thus cannot yet move to compel arbitration of their as-of-yet-nonexistent claims." ECF 89 at 12 & n.3.

United States District Court
Northern District of California

in the requested class[.]" *Id.* at 5.  Sony reiterated its intent to file an early summary judgment motion and a preemptive motion to deny class certification.  *Id.* at 6.  The parties also reported that discovery was underway.  *Id.* at 6.  The parties had exchanged initial disclosures.  *Id.*  Plaintiffs had served their first set of requests for production of documents on April 28, 2023.  *Id.*  Negotiations about a proposed stipulation regarding electronically stored information and a confidentiality order continued.[9]  *Id.*  Sony considered "the discovery limits placed by the Federal Rules . . . appropriate," and listed a number of non-exhaustive topics discovery was likely to cover.  *Id.* at 7.  The parties' statement also included a proposed case schedule, with most dates jointly proposed.  *Id.* at 10.

The parties filed a third case management statement on October 5, 2023.  ECF 106.  The updates in that statement indicated that Sony had responded to Plaintiffs' first set of document requests on May 30, 2023, had produced "just over 300 pages of documents[,]" and had identified other related information.  *Id.* at 7.  The parties also proposed competing case schedules and stated their intent to file a joint motion to consolidate the three putative class cases.  *Id.* at 5, 10.  The statement otherwise largely mirrored the parties' prior ones, with Sony reiterating that it intended to move to deny class certification and move for early summary judgment on a single issue, which "would present a narrow avenue to resolve the entire case." *Id.* at 7, 10.

On October 12, 2023, the Court held a case management conference.  ECF 109.  Sony, through counsel, appeared at that conference, indicating, among other things, that discovery could be completed by the end of 2024 and that it was moving with all deliberate speed.  ECF 119 at 6:6-8, 7:11-8:4.  Following the conference, the parties submitted a stipulation and proposed order to consolidate *Caccuri*, *Cendejas*, and *Neumark*.  ECF 114.

On November 16, 2023, Sony moved to deny class certification.  ECF 124.  The day before Plaintiffs' opposition was due, the parties stipulated to an extended briefing schedule, which the Court approved.  ECF 125, 127.  Consistent with the extended briefing schedule,

---

[9] The parties filed a joint motion for entry of a protective order on September 28, 2023, which the Court granted.  ECF 105, 107.

1    Plaintiffs filed their opposition to the motion on December 28, 2023, and Sony filed its reply on

2    January 11, 2024.  ECF 134, 136.

3         Since the filing of Sony's motion, the parties filed a stipulation regarding privilege and

4    discovery of electronically stored information on December 5, 2023, which the Court approved.

5    ECF 131, 132.  On December 6, 2023, Sony served its first set of document requests on Plaintiffs,

6    including a request for documents that Plaintiffs "intend to rely on in support of any motion for

7    class certification, any dispositive motion, at trial, or on appeal."  ECF 134-3 at 12.  The parties

8    also completed early neutral evaluation, as ordered by the Court, briefed two discovery disputes,

9    filed two additional case management statements, and appeared for further case management

10   conferences.[10]  ECF 121, 137, 142, 143, 154-2, 154-7, 157, 160.

11   **II.    LEGAL STANDARD**

12        **A.    Motion to Deny Class Certification**

13        "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine

14   whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am. Honda*

15   *Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (overruled on other grounds by *Olean*

16   *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022), cert.

17   denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022)) .

18   The party seeking certification bears the burden of showing that Rule 23 has been met.  *Wal-Mart*

19   *Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).  Rule 23(a) requires that plaintiffs demonstrate

20   numerosity, commonality, typicality and adequacy of representation in order to maintain a class

21   action.  *Mazza,* 666 F.3d at 588.  A Rule 23(b)(3) class action may be maintained if "the court

22   finds that the questions of law or fact common to class members predominate over any questions

23   affecting only individual members, and that a class action is superior to other available methods

24   for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  A Rule 23(b)(2)

25   class action may be maintained if "the party opposing the class has acted or refused to act on

26

27   ───────────────

      [10] At the conference held March 7, 2024, Sony represented that it was working "day and night" to
28   meet the May 31, 2024 substantial completion deadline set by the Court.  ECF 146 at 6:5-16; *see*
      *also* ECF 108 (setting substantial completion deadline).

United States District Court
Northern District of California

1   grounds that apply generally to the class, so that final injunctive relief or corresponding

2   declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

3       The Ninth Circuit has held that a defendant may file a motion to deny class certification

4   before the close of fact discovery and before the pretrial motion deadline. *Vinole v. Countrywide*

5   *Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) ("Rule 23 does not preclude a defendant

6   from bringing a 'preemptive' motion to deny certification."). Nonetheless, "[d]istrict courts have

7   broad discretion to control the class certification process." *Id.* at 942.

8   ## III.   DISCUSSION

9       Sony moves to deny class certification on two grounds. ECF 124 at 15 n.10; ECF 136 at

10  18 n.8. First, it argues that Plaintiffs and nearly all putative class members are bound by class

11  action waivers, specifically those in the PlayStation 5 system license agreement, and the identical

12  provision in the product license agreement. ECF 124 at 19-20. Second, Sony contends that nearly

13  all putative class members are subject to the arbitration provisions in Sony's agreements. *Id.* at

14  22-25. In opposition, Plaintiffs principally argue that the agreements on which Sony relies do not

15  apply to their claims and that Sony has waived its right to enforce the class action waiver and

16  arbitration provisions. ECF 134 at 13-24. The Court first addresses whether the agreements on

17  which Sony relies for its class action waiver arguments apply before turning to the parties'

18  arguments about arbitration and the related issue of waiver.

19  ### A.   Applicability of Agreements

20      Sony relies on the class action waiver in the PlayStation 5 system license agreement,[11] and

21  the identical provision in the product license agreement, which was last updated August 2020.

22  ECF 124 at 19; ECF 124-3 at 5; ECF 124-5 at 6.

23      Plaintiffs argue that the system license agreement does not apply because their claims are

24  not about the *use* of Sony software. ECF 134 at 21 (emphasis in original). They characterize their

25  claims as stemming from the purchase of digital games, which "precedes the *use* of such games."

26

---

27  [11] Sony does not specify which version of the PlayStation 5 system license agreement it relies on,
    so the Court assumes it is version 1.1, for which Sony does not provide a corresponding effective

28  date.

United States District Court
Northern District of California

*Id.* (emphasis in original).  Thus, Plaintiffs contend "logic dictates that th[e] [l]icensing [a]greement, by its very terms, cannot apply to this case concerning anticompetitive conduct and digital game pricing."  *Id.*  Plaintiffs advance similar arguments with respect to the product license agreement, describing it as granting a license to "*use* Sony Software with certain restrictions."  ECF 134 at 21.

In reply, Sony argues that the purchase of digital games plainly falls within the meaning of the following provisions from the system license agreement and the product license agreement:

> This agreement applies to any system software, firmware and Internet browser software and other application software included in your PS5 system and any patches, updates, upgrades or new versions of that system software, firmware and Internet browser software and other application software provided to you or made available for your PS5 system through any SIE Inc or Sony service or online network, PlayStation Network, SIE Inc website or PS5 game media.

ECF 136 at 14; *see also* ECF 124-3 at 2.

> This Software Product License Agreement ("Agreement") applies to your use of all software products ("Software") on authorized PlayStation systems.  This includes your use of PlayStation Now, which allows you to access Software via devices such as PCs and smart TVs.  BY PURCHASING, DOWNLOADING OR USING THE SOFTWARE, YOU AGREE TO THE TERMS OF THIS AGREEMENT.  If you do not agree to the terms of this Agreement, do not purchase, download or use the Software.  Please read this entire Agreement, which governs your use of the Software.

ECF 136 at 13; *see also* ECF 124-5 at 2.  Based on these provisions, Sony argues that "[d]igital games downloaded through the PlayStation Store on PSN are plainly 'application software' made available to users for their PS5 systems through a Sony online network."  ECF 136 at 14.

Sony is correct.  As the term is used in these provisions, "software" includes digital video games.  *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 284 F. Supp. 2d 1069, 1071 (N.D. Ill. 2003), *aff'd*, 400 F.3d 1007 (7th Cir. 2005) (describing video game at issue as "consist[ing] of a software program that projects images and corresponding sounds through a video screen and speakers mounted onto a kiosk-type display cabinet").  Plaintiffs do not explain how to conceptualize a digital video game other than as software, but even if Plaintiffs had, as Sony

1   points out, "the proposed class is comprised of individuals who used the PlayStation Store

2   (software) to purchase and download games (software) for use on PlayStation consoles (operating

3   on Sony software)." *See* ECF 136 at 14.  In other words, the Court cannot (and Plaintiffs have not

4   explained how to) disaggregate the purchase of a digital video game from the use of the Sony

5   environment that makes such a purchase possible.  Indeed, Plaintiffs allege that a purchase can

6   only be accomplished through the use of the PlayStation store that facilitates Sony's alleged illegal

7   monopoly.  *See* ECF 61 ¶ 62 ("By prohibiting sale of digital PlayStation games except through the

8   PlayStation Store, Sony established a complete monopoly in the market for digital PlayStation

9   games.  Sony has a 100% market share in the relevant market, and complete control over retail

10  prices in the relevant market.").  Thus, irrespective of whether Plaintiffs describe their claims as

11  arising from a discrete purchase as opposed to broader use, the claims they assert are subject to the

12  above provisions.

13         Nonetheless, Sony's failure to provide the effective dates for the relevant agreements is

14  problematic.  The class period begins on April 1, 2019.  *See* ECF 61 ¶ 78.  Sony provides no date

15  range for version 1.1 of the PlayStation 5 software license agreement.  *See* ECF 124-1 ¶ 5; ECF

16  124-3 at 2-5.  The software product license agreement on which Sony relies was last updated

17  August 2020 but no effective date is provided.  *See* ECF 124-5 at 6.  Even if the Court generously

18  read Sony's papers as invoking the terms of service to cover any portion of the class period not

19  covered by the product license agreement or the software license agreement, the inconsistencies

20  between the different iterations of the terms of service warrant denial of Sony's motion.  Crucially,

21  the class action waivers in the terms of service terms differ as follows:

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

United States District Court
Northern District of California

| April 2019 terms[12] | October 2020 terms |
|---|---|
| ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN **ARBITRATION OR COURT,** WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION, UNLESS BOTH YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION. THIS PROVISION DOES NOT PRECLUDE YOUR PARTICIPATION AS A MEMBER IN A CLASS ACTION FILED ON OR BEFORE AUGUST 20, 2011. THIS PROVISION IS NOT APPLICABLE TO THE EXTENT THIS WAIVER IS PROHIBITED BY LAW. | YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE AGREE THAT **ARBITRATION** WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION, UNLESS BOTH YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION. IF APPLICABLE LAW PRECLUDES ENFORCEMENT OF THE LIMITATION IS THIS PARAGRAPH AS TO A PARTICULAR REMEDY, THEN A CLAIM SEEKING THAT REMEDY (AND ONLY THAT REMEDY) MUST BE SEVERED FROM THE ARBITRATION AND BROUGHT IN COURT. THIS PROVISION DOES NOT PRECLUDE YOUR PARTICIPATION AS A MEMBER IN A CLASS ACTION FILED ON OR BEFORE AUGUST 20, 2011. |

ECF 124-9 at 19 (capitalization in original; emphasis added); ECF 124-10 at 19 (capitalization in original; emphasis added).

While Sony minimizes the difference in language, the change from "arbitration or court" to "arbitration" only is significant. If Sony had meant to extend the class action waiver in the 2020 terms to court matters, then like the 2019 terms, Sony would have specified arbitration *or court*. It did not. Given that the Court is to determine the parties' intent based on the language in the contract itself, *see E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004) (explaining that contract interpretation must give effect to the parties' mutual intent, which "is to be inferred, if possible, solely from the written provisions of the contract"), the Court will not inject language into the 2020 terms that is not there.

---

[12] The Court presumes that the April 2019 version of the terms of service, *see* ECF 124-10, were in effect until the terms were revised in October 2020, *see* ECF 124-9 at 22.

Sony's resort to the 2020 terms' incorporation of other agreements by reference does not have the effect of re-writing the 2020 terms to expand the class action waiver to proceedings in arbitration *or court*.  Sony argues:

> Moreover, whatever the merits of the Named Plaintiffs' arguments regarding the applicability of the Terms of Service's class action waiver to court proceedings (and they are meritless), they are entirely beside the point.  The Terms of Service – which plainly apply to the claims asserted here – incorporate by reference the System License and Product License, both of which contain class action waivers that expressly apply to actions commenced "in court," and neither of which the Named Plaintiffs challenge.

ECF 136 at 12.

Neither party addresses whether the Court must harmonize the 2020 terms[13] (and any successive versions of them) with the agreements that are incorporated by reference, which extend the class action waiver to proceedings in "arbitration *or court*."  Without more briefing from the parties on this issue, the Court cannot determine which version, if any, of the class action waiver may preclude Plaintiffs from prosecuting their claims on a class basis.  The parties are invited to address the issue in future class certification briefing.

Further compounding the lack of clarity as to which agreements governed during any given period of time is an additional factual gap Sony surfaces in its opening brief:

> So, depending on when [Plaintiffs] created their account and purchased games, they are subject to at least one of the 2019 Terms of Service, the 2020 Terms of Service, the 2021 Terms of Service, the 2022 Terms of Service, the 2023 Terms of Service or all five.  The 2019 Terms of Service itself contains a class-action waiver and an arbitration agreement.  The 2020, 2021, 2022, and 2023 Terms of Service each contain an arbitration agreement and a class-action waiver and also incorporate by reference the System License and Product License, each of which also contains a class-action waiver and an arbitration agreement.

ECF 124 at 14.  This case is thus distinguishable from the two cases Sony cites to argue that its

---

[13] Plaintiffs concede, however, that "[t]he vast majority of the Class Representatives and Class Member claims fall under the 2020-2023 Terms of Service Agreement and User Agreement." *See* ECF 134 at 23.  The Court therefore expects any class definition proposed in a future motion to align with this assertion.

United States District Court
Northern District of California

terms of service apply here.  In *Crawford v. Sony Interactive Ent. LLC*, No. 20-cv-01732, Order re Arbitration, ECF 25, at 1-2 (N.D. Cal. Mar. 30, 2021), the plaintiff conceded that she was bound by the arbitration and class action waiver provisions for the transactions at issue and did not challenge Sony's evidence showing that she agreed to the agreements as a condition of operating the gaming console and accessing the PlayStation network.  There, the plaintiff's sole argument against arbitration was whether her minor son, whose gaming activity gave rise to the suit, could be bound by contract.  *Id.* at 2.  Here, there is no question that Plaintiffs can be contractually bound.  In *Mendez v. Sony Computer Ent. Am., LLC*, No. 1:20-CV-00588-DCN, 2021 WL 2459467, at *1, *3 (D. Idaho June 16, 2021), the date the plaintiff set-up his Sony network account was known, unlike here, leaving no doubt as to which agreement applied at the time of account creation.

Accordingly, Sony has not yet established that Plaintiffs are bound to the class action waiver provisions contained in its agreements.  Sony may renew its arguments in its opposition to any forthcoming motion for class certification.

The Court now turns to the other ground for Sony's motion, i.e., that the putative class members are bound to arbitrate their claims, and Plaintiffs' related argument that Sony has waived its rights to enforce the arbitration provisions.

## B.    Arbitration and Waiver

Because Plaintiffs' waiver argument is dispositive as to Sony's ability to enforce its arbitration rights at this stage, the Court assumes, without deciding, that the arbitration clauses contained in the various agreements on which Sony relies are enforceable.

"[T]he burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context."  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).  "[T]he test for waiver . . . consists of two elements: (1) knowledge of an existing right . . . ; and (2) intentional acts inconsistent with that existing right."  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).[14]  The party opposing

---

[14] During oral argument, the parties agreed that this standard governs the waiver analysis with respect to both the arbitration clauses and class action waiver provisions Sony invokes.  As

1    arbitration bears the burden of establishing waiver, but that burden is not "heavy." *Id.* at 1014.

2    The party opposing arbitration need not establish prejudice. *Id.* The Court addresses each element

3    in turn.

4              1.    Knowledge of an Existing Right to Arbitrate

5          Plaintiffs argue that Sony had knowledge of an existing right to compel arbitration because

6    "it has timely invoked th[e right] in other cases[.]" ECF 134 at 15 & n.3 (providing a string cite of

7    such cases). Plaintiffs offer no analysis or authority as to why Sony's conduct in other litigation

8    bears on the knowledge inquiry relevant here. *See id.* The Court, therefore, does not consider this

9    undeveloped argument. *See McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1081 (9th Cir. 2003).

10         Plaintiffs next argue that Sony had knowledge of an existing right to compel arbitration

11   because it referred to its arbitration rights in the stipulation and proposed case management order

12   filed in this action on July 27, 2021. ECF 134 at 15. This argument is persuasive. In that

13   stipulation and proposed order, Sony declared its intent to move to compel arbitration within 30

14   days of the filing of a consolidated complaint. ECF 28 at 2, 4. Sony was therefore aware of an

15   _____

16   discussed below, the Court finds that Sony has waived its rights to enforce the arbitration clauses.
     However, if Sony can establish that Plaintiffs are bound by class action waivers, the Court would
17   not find that Sony has waived its rights to enforce those provisions. The facts reflecting Sony's
     intentional acts to secure a merits determination from this Court, while inconsistent with the right
18   to resolve the current litigation outside of this forum (i.e., in arbitration), do not give rise to
     conduct inconsistent with Sony's right to insist on resolving the merits of Plaintiffs' claims on an
19   individual, rather than a class-wide, basis. Sony's failure to move to strike class allegations does
     not support a finding of waiver, as this Court has found, consistent with others in this district, that
20   such motions are disfavored. *See Valiente v. Simpson Imports, Ltd.*, No. 23-CV-02214-AMO,
     --- F. Supp. 3d ---, ---, 2024 WL 695700, at *14 n.13 (N.D. Cal. Feb. 20, 2024). Nor is Sony's
21   agreement to consolidate the three putative class actions indicative of waiver. The Court interprets
     Sony's cooperation in that administrative convenience as a step towards facilitating a merits ruling
22   on the issues raised in this litigation (including the applicability of the class action waiver)
     efficiently across all three cases. Had Sony declined to stipulate to consolidation, that would have
23   necessitated briefing on these issues in triplicate, resulting in an avoidable waste of time and
     resources. The Court also rejects the argument that the timing of Sony's attempt to enforce class
24   action waivers entitle Plaintiffs to a finding of waiver. *See Flores-Mendez v. Zoosk, Inc.*, No. C
     20-04929 WHA, 2022 WL 2967237, at *1, *2 (N.D. Cal. July 27, 2022) (denying class
25   certification based on class action waiver asserted by the defendant for the first time in opposition
     to the plaintiffs' motion for class certification and rejecting the plaintiffs' argument that the
26   defendant had waived its rights by litigating the case for two years without raising the issue).

27

28

                                        14

existing right to compel arbitration as to each Plaintiff at least as of July 27, 2021.

Though Plaintiffs do not separately address Sony's knowledge of its arbitration rights vis-à-vis the absent class members, Sony drafted the agreements containing the provisions it relies on in the instant motion, and "[k]nowledge of a contractual right to arbitrate is imputed to the contract's drafter." *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011) (citation omitted). Moreover, Sony was on notice since the commencement of this action that the proposed class included individuals subject to the agreements it relies on in this motion. *See* ECF 1 ¶ 67 (defining proposed class as "[a]ll persons in the United States, exclusive of Sony and its employees, agents and affiliates, and the Court and its employees, who purchased any digital video game content directly from the PlayStation Store at any time from April 1, 2019 through the present.").

Accordingly, the first prong of the waiver analysis is met with respect to Plaintiffs and the putative class.

### 2.    Intentional Acts Inconsistent with an Existing Right to Arbitrate

"There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (internal quotation marks and citation omitted). Courts must evaluate "whether those actions holistically indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Armstrong*, 59 F.4th at 1015. "Under [Ninth Circuit] precedent, a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (internal quotations and citation omitted).

Sony has done both. The deadline for Sony to move to compel arbitration, which the parties jointly proposed, and the court approved, came and went without Sony filing a motion to enforce the arbitration rights that serve as a partial basis for its motion to deny class certification. *See* ECF 29 at 4, 7. Instead, Sony chose to file not one, but two, successive motions to dismiss Plaintiffs' complaints. *See* ECF 45, 67. One month after the second motion to dismiss Plaintiffs'

claims on the merits failed, *see* ECF 80, Sony tried to belatedly preserve its arbitration rights by forecasting a motion to deny class certification while nonetheless asserting its intent to continue litigating in federal court by filing an early summary judgment motion that would be dispositive of the entire case.  *See* ECF 89.  All the while, Sony's acts were inconsistent with its stated intent. Sony continued to respond to Plaintiffs' discovery demands and propound discovery on Plaintiffs. *See* ECF 134-2, 134-3.  It availed itself of the Court's resources at motion hearings and case management conferences and by seeking various extensions for the convenience of counsel and the parties.  *See, e.g.*, ECF 14, 25, 92, 109, 143.  Sony also represented that the litigation could advance on the timetable it proposed and that it was working "day and night" to meet the substantial document production deadline set by the Court.  ECF 119, 146.  At no point did Sony move for relief from the obligations attendant to litigating in this forum.

Viewing this conduct holistically, Sony has taken intentional acts inconsistent with its arbitration rights.  *See Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding that defendants engaged in conduct inconsistent with their arbitration rights by spending 17 months litigating the case, which included "a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition"); *FBC Mortg., LLC v. Skarg*, No. 23-CV-00143-CRB, --- F. Supp. 3d ---, ---, 2023 WL 6933359, at *3 (N.D. Cal. Oct. 19, 2023) (finding waiver where the defendants waited over eight months, and a month and a half after receiving an adverse ruling on their motion to dismiss, before moving to compel arbitration); *cf. Armstrong*, 59 F.4th at 1016 (finding no waiver where the defendant moved to compel arbitration within a year of the plaintiff's complaint, never sought or obtained a ruling on the merits, and propounded limited discovery on the plaintiff's non-arbitrable claim).

Sony's arguments to the contrary do not save it.  Sony contends that the styling of its motion, which is captioned as one to deny class certification rather than to compel arbitration, is significant and avoids the waiver issue Plaintiffs press in their opposition.  ECF 136 at 5.  But the label on the motion is not dispositive.  *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1286 (4th ed. 2024) ("A pleading will be judged by the quality of its

substance rather than according to its form or label[.]") (footnote omitted).  In the motion currently before the Court, Sony asserts that "[e]xcept for the small number of users who chose to opt out of the arbitration agreements, every member of the named Plaintiffs' proposed class has agreed to arbitrate any claims they may have in this case. . . .  They therefore cannot participate in the named Plaintiffs' proposed class."  ECF 124 at 22.  This Court cannot decide whether Sony is entitled to prevail on that theory without resolving the threshold issue of waiver.  For this reason, Sony's reliance on *O'Connor v. Uber Technologies*, 904 F.3d 1087 (9th Cir. 2018) is misplaced.  There, the Ninth Circuit reversed the district court's orders denying motions to compel arbitration, determining that the question of arbitrability was for the arbitrator to decide.  *Id.* at 1094-95.  The court also reversed the related class certification orders, explaining:

> [T]he court's determinations that the requirements of Rule 23 were satisfied, was premised upon the district court's conclusion that the arbitration agreements were not enforceable.  The class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims.  As we held in *Mohamed*, the question whether those agreements were enforceable was not properly for the district court to answer.  The question of arbitrability was designated to the arbitrator.

*Id.  O'Connor*, then, does not guide the Court's inquiry about whether Sony waived its arbitration rights in this ligation.

Sony also argues that the "routine litigation activities" necessary for Sony "to defend itself against the Plaintiffs' claims" cannot support a finding of waiver, noting that it made clear "from its very first substantive filing in the case, that it intended to enforce its arbitration rights."  ECF 136 at 9.  This argument fails for two reasons.  First, "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."  *See Hill*, 59 F.4th at 471 (citations omitted).  Second, when viewing these purported "routine litigation activities" holistically with Sony's active defense on the substance of Plaintiffs' claims, its decision to respond and propound discovery, and its failure to move for relief of the many obligations imposed by the Federal Rules, the District Local Rules, and the many orders issued since this case

commenced in May 2021,[15] the Court cannot discount Sony's actions as inconsequential litigation activity. *See Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 942-43 (9th Cir. 2019) *abrogated on other grounds, Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (rejecting the defendant's argument that it "engaged in only the minimum amount of litigation activity required" and finding waiver where, among other things, the defendant did not "avail itself of local rules that would have allowed it to seek relief from case management and discovery obligations") (citing N.D. Cal. Civil L.R. 16-2(d)).

Sony further contends that no waiver occurred because prior to class certification, absent class members are not parties to the litigation, and thus Sony could not have possibly asserted its arbitration rights against them. ECF 136 at 6. On this point, the Ninth Circuit's decision in *Hill* is instructive. In that case, the plaintiff brought a putative class action for violations of state minimum wage laws. 59 F.4th at 462. The defendant had implemented a dispute resolution plan in 2002 ("2002 DRP"), and a later version in 2012 ("2012 DRP"). *Id.* at 460-61. The defendant expressly asserted a right to compel arbitration under the 2012 DRP throughout the litigation, including in its answer to the operative second amended complaint, in discovery documents, in a motion for summary judgment, and in opposition to class certification. *Id.* at 461-63. The district court ruled that the ultimate class definition would exclude workers who had signed the 2012 DRP but deferred a final determination on the class definition pending further briefing. *Id.* The case was stayed while the defendant proceeded with an unsuccessful interlocutory appeal of the denial of summary judgment. *Id.* at 465.

In a joint status report filed after the stay was lifted, the defendant asserted the right to compel arbitration under the 2002 DRP for the first time, arguing that the district court should exclude signatories of both the 2002 DRP and the 2012 DRP when finalizing the class definition.

---

[15] Though Sony does not acknowledge that Civil Local Rule 16-2(d) allows a party to seek "relief from an obligation imposed by Fed. R. Civ. P. 16 or 26 or the Order Setting Initial Case Management Conference," it was sophisticated enough to seek the Court's approval of a stipulation staying discovery obligations pending resolution of its motion to compel arbitration and/or motions to dismiss. *See* ECF 28, 41. The Court views Sony's decision not to renew the stay as supporting a finding of waiver.

18

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* at 466. The district court's final class definition excluded the signatories to the 2012 DRP, without addressing the defendant's attempt to assert rights under the 2002 DRP. *Id.* at 466-67. The defendant thereafter advised the district court that it had worked with the Plaintiff to generate a list of 5,772 class members that included signatories to the 2002 DRP but anticipated moving to compel arbitration under the 2002 DRP after the class notice was distributed and the opt-out period closed. *Id.* at 467. The day after the notice administrator submitted his report on the final class size, the defendant moved to compel individual arbitration with respect to 2,927 class members who had signed the 2002 DRP. *Id.* at 468. The district court determined that the defendant had waived its right to compel arbitration under the 2002 DRP. *Id.*

On appeal, the defendant argued that it had not waived the right to compel arbitration because the plaintiff was not a signatory to the 2002 DRP, and there was no existing right to compel arbitration as to any absent class member until class certification had been granted and the notice and opt-out period had closed. *Id.* at 461, 468. The Ninth Circuit noted that "[i]n one rather limited sense," the defendant was correct because "the district court could not compel nonparties to the case to arbitrate until after a class had been certified and the notice and opt-out period were complete." *Id.* at 469. The court, however, went on to explain: "what [the defendant] fails to appreciate is that waiver is a unilateral concept. A finding of waiver by [the defendant] looks only to the acts of [the defendant], binds only [the defendant], does not reach out to affect the rights of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a right to be asserted." *Id.* The Ninth Circuit made clear that it "ha[s] never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *Id.* at 469. It affirmed the district court's finding that the defendant waived its right to compel arbitration as against putative class members, noting that the defendant had failed to assert its rights under the 2022 DRP earlier in the case, engaged in extensive discovery about the claims of the unnamed putative class members without attempting to exclude signatories of the 2002 DRP, and seeking a judicial determination on the

19

1    merits by moving for summary judgment and appealing the district court's order on the motion.

2    *Id.* at 473-76, 79.[16]

3         Sony's efforts to distinguish *Hill* fail.  It asserts that the defendant in *Hill* "engaged in

4    litigation activity far more extensive than here[,] including litigation conducted "*directed at the*

5    *putative class members*[,]" without pressing its arbitration rights.  ECF 124 at 24 (emphasis in

6    original).  But in *Hill,* the Ninth Circuit noted that "[t]he discovery requests served on [the

7    plaintiff] regarding the putative class, which included the 2002 DRP signatories, may not be

8    dispositive." *See Hill*, 59 F.4th at 475.  Thus, irrespective of whether Sony's discovery requests

9    were less focused on putative class members than those propounded in *Hill*, Sony's "reliance on

10   the judicial discovery mechanism" nonetheless "substantiates the inferences drawn from the

11   record suggesting that [Sony is] more interested in resolving this litigation . . . *in court* rather than

12   in arbitration." *See id.*

13        Sony also contends that that unlike in *Hill*, "Sony's motions to dismiss were directed only

14   at the named Plaintiffs." *Id.*  Sony ignores, however, that those motions to dismiss ultimately

15   sought dismissal on the merits of Plaintiffs' claims with prejudice, and that it intended to continue

16   to litigate this case on the merits at least through an early summary judgment motion it claimed

17   would be dispositive of the case.  *See In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF,

18   2024 WL 251407, at *6 (N.D. Cal. Jan. 23, 2024) (rejecting the argument that the defendants'

19   motions to dismiss and motion for summary judgment were directed solely at the individual

20   plaintiffs' claims where the motions to dismissed resulted in dismissal of three claims on the

21   merits and the motion for summary judgment sought disposition "of issues going to the crux of the

22   class claims").

23   ///

24   ///

25

26

27   [16] The Court notes that the authorities Sony cites for the proposition that it could not have
     exercised its right to compel arbitration against absent class members pre-date *Hill*.  *See* ECF 124
28   at 22-24 & n.17; ECF 136 at 6-7 & n.2.  For this reason, the Court does not find those decisions
     persuasive.

United States District Court
Northern District of California

United States District Court
Northern District of California

Accordingly, the Court finds that the second prong of the waiver analysis is met and concludes that Sony waived its arbitration rights as to the putative class members.  Sony may not, therefore, rely on those rights to prevail on its motion to deny class certification.

IV.     **CONCLUSION**

For the reasons set forth above, Sony's motion to deny class certification is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 24, 2024

_____

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**