[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AGUSTIN CACCURI et al., on behalf of themselves and all others similarly situated,<br><br>        *Plaintiffs*,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC,<br><br>        *Defendant.* | Case No. 3:21-cv-03361-AMO<br><br>**PROPOSED CLASS PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, TO SCHEDULE A FAIRNESS HEARING FOR FINAL APPROVAL AND CERTIFICATION OF A SETTLEMENT CLASS**<br><br>**MOTION HEARING**<br><br>Date:      July 17, 2025<br>Time:     2:00 PM PST<br>Courtroom: 10, 19th Floor<br><br>Honorable Araceli Martínez-Olguín |

1

TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
    PRELIMINARY APPROVAL ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

I.     THE MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED
    SETTLEMENT ..................................................................................................... 2

A.     Introduction    .................................................................................................. 2

B.     Procedural History ............................................................................................ 4

    1. The Litigation................................................................................................. 4

    2. Discovery ...................................................................................................... 5

    3. Settlement Negotiations ................................................................................ 6

C.     The Court Should Preliminarily Approve the Proposed Settlement ................. 8

    1.     Procedural Considerations ................................................................. 8

        a. Adequate Representation of the Class............................................. 9

        b. Arm's Length Negotiations ........................................................... 9

    2.     Substantive Considerations ............................................................. 10

        a. Strength of Class Plaintiffs' Case and Risks of Continued
          Litigation ...................................................................................... 11

        b. Attorney Fees and Service Awards ........................................... 12

        c. Equitable Treatment of Class Members ................................. 13

D. The Plan of Allocation is Fair, Reasonable, and Adequate........................................ 13

E. The Proposed Form and Manner of Notice Should be Approved ............................ 14

F. The Court Should Approve A.B. Data, Ltd. as Notice and Settlement Administrator............. 16

G. The Court Should Adopt a Schedule for Final Approval of the Proposed Settlement............. 17

II.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ........................................... 17

    1.     Legal Standard ........................................................................................ 17

    A.     The Proposed Class Satisfies Fed. R. Civ. P. 23.............................................. 18

        1.     The Proposed Settlement Class Satisfies Rule 23(a)'s Requirements. ...... 18

          a. Numerosity ................................................................................... 19

          b. Commonality................................................................................. 19

          c. Typicality...................................................................................... 20

          d. Adequacy...................................................................................... 20

        2.     The Settlement Class Satisfies Rule 23(b)(3)'s Requirements. ................. 21

          a. Predominance ............................................................................... 21

i

b. Superiority ........................................................................................ 22

3.      The Settlement Class Satisfies Other Procedural Guidelines. ................... 23

I. Conclusion............. ................................................................................................ 24

Proposed Class Plaintiffs' Notice of Unopposed Motion & Unopposed Motion for Preliminary
Approval of Class Action Settlement
Case No. 3:21-cv-03361-AMO

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**CASES**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................20, 22

*Boston Retirement System v. Uber Technologies, Inc.,*
   Docket No. 19-cv-06361-RS, 2022 WL 2954937 (N.D. Cal. 2022) ...................................21

*Castillo v. Bank of America, NA,*
   980 F.3d 723 (9th Cir. 2020) ...............................................................................20

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992).................................................................................8

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
   Docket No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22,
   2010) ..........................................................................................................11

*Giusti-Bravo v. U.S. Veterans Admin.,*
   853 F. Supp. 34 (D.P.R. 1993).......................................................................12, 13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)..........................................................................9, 20

*Haralson v. U.S. Aviation Servs. Corp.,*
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ...................................................................8

*Holwill v. AbbVie Inc. et al.,*
   No. 1:18-cv-06790 (N.D. Ill.) .............................................................................16

*In re Abbott Labs. Norvir Antitrust Litig.,*
   No. 04-cv-1511 (N.D. Cal., Aug. 27, 2008).............................................................18

*In re Aggrenox Antitrust Litig.,*
   No. 14-MD-2516 (D. Conn, Mar 6, 2018)...............................................................18

*In re Buspirone Antitrust Litig.,*
   No. 01-md-01413 (S.D.N.Y. April 21, 2003) ...........................................................18

*In re Cardizem CD Antitrust Litig.,*
   218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................18

*In re Children's Ibuprofen Oral Suspension Antitrust Litig.,*
   No. 04-mc-535 (D.D.C. Dec. 11, 2006)..................................................................18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
   2006 WL 1530166 (N.D. Cal. June 5, 2006) ...........................................................20

*In re Glumetza Antitrust Litig.,*
   336 F.R.D. 468 (N.D. Cal. 2020)..........................................................................22

*In re High-Tech Emp. Antitrust Litig.,* No. 11-cv-02509, 2015 WL 12991307
   (N.D. Cal. Mar. 3, 2015) .....................................................................................8

*In re High-Tech Employee Antitrust Litig.,* 985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................19

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019)......................................................................................18, 21, 22

*In re Imprelis Herbicide Mktg. Sales Pracs. & Prods.*,
   296 F.R.D. 351 (E.D.P.A. 2013)....................................................................................13

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   No. 19-MD-02913-WHO, 2022 WL 2343268 (N.D. Cal. June 28, 2022) ......................19

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002).......................................................................................18

*In re Lyft Securities Litig.*,
   Docket No. 19-cv-02690-HSG, 2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ..................12

*In re Outer Banks Power Outage Litig.*,
   Docket No. 4:17-CV-141, 2018 WL 2050141 (E.D.N.C May 2, 2018)............................15

*In re Qualcomm Inc. Sec. Litig.*,
   No. 3-17-00121 (S.D. Cal.).............................................................................................16

*In re Remeron End Payor Antitrust Litig.*,
   Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005) .................18

*In re Southeastern Milk Antitrust Litig.*,
   Docket No. 2:08–MD–1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013)....................13

*In re Suboxone Antitrust Litigation*,
   No. 13-md-02445 (E.D. Pa.).........................................................................................16

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................................8

*In re Tricor Indirect Purchaser Litig.*,
   No. 05-cv-360 (D. Del. May 8, 2009) (ECF No. 509)......................................................18

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ....................................18

*In re Xyrem (Sodium Oxybate) Antitrust Litigation*,
   No. 20-md-02966 (N.D. Cal.).......................................................................................16

*In re Zetia Antitrust Litigation*,
   No. 18-md-2836 (E.D. Va.) ..........................................................................................16

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017)......................................................................................22

*Nat'l Rural Telecomm. Coop. v. DIRECTV*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................9

*Neil Leventhal et al. v. Bayside Cemetery et al*, New York County Index No.
   100530/2011E .............................................................................................................16

*Nichols v. Smithkline Beecham Corp.*,
   Docket No. 00-cv-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005)................18

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)........................................................................................11

Proposed Class Plaintiffs' Notice of Unopposed Motion & Unopposed Motion for Preliminary
Approval of Class Action Settlement
Case No. 3:21-cv-03361-AMO

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)..............................................................................9

*Rolland v. Celluci*,
  191 F.R.D. 3 (D. Mass. 2000)............................................................................13

*Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442 (E.D. Va. July 28, 2004).......................18

*Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442, 2005 U.S. Dist. LEXIS
  33711 (E.D. Va. Jan. 10, 2005)..........................................................................18

*Smith v. Kaiser Found. Hosps.*,
  No. 18CV780-KSC, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020)...........................8

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-02503-DJC,
  2017 WL 4621777 (D. Mass. 2017).............................................................19, 22

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..........................................................................................21

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C.
  2007) ..............................................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................19, 20, 21

## OTHER AUTHORITIES

2 *Newberg on Class Actions,* § 11.28, 11-59 ......................................................21

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed.
  2002) ................................................................................................................8

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.24 (4th ed.
  2002) ................................................................................................................9

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.).........................9

*Manual for Complex Litigation, Third* § 30.42 (1995) ............................................9

## RULES

Fed. R. Civ. P. 23(a)...................................................................................17, 18

Fed. R. Civ. P. 23(a)(1)......................................................................................19

Fed. R. Civ. P. 23(a)(1)-(4) .................................................................................3

Fed. R. Civ. P. 23(a)(2)......................................................................................19

Fed. R. Civ. P. 23(b)(3).........................................................................3, 18, 21

Fed. R. Civ. P. 23(e)(1)................................................................................18, 23

Fed. R. Civ. P. 23(e)(2)......................................................................................13

Fed. R. Civ. P. 23(e)(2)(A)-(B)............................................................................8

Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment .......................8

1

2

3

4

5

Fed. R. Civ. P. 23(e)(2)(C).................................................................................10

Fed. R. Civ. P. 23(e)(2)(C)-(D)..........................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(iv)............................................................................13

Fed. R. Civ. P. 23(e)(2)(D).................................................................................10

Fed. R. Civ. P. 23 2018 committee notes subdivision (e)(1) ...................................23

California Northern District Guidelines.................................................................23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR <u>PRELIMINARY APPROVAL</u>

**PLEASE TAKE NOTICE THAT** on July 17, 2025 or a date and time convenient for The Honorable Araceli Martínez-Olguín of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 10, 19th Floor at 450 Golden Gate Avenue, San Francisco, California 94102, Proposed Class Plaintiff Adrian Cendejas, by and through his undersigned counsel of record, will and hereby does move for entry of an Order as follows:

(1)    preliminarily approving the Class Action Settlement with Defendant Sony Interactive Entertainment LLC ("SIE" or "Defendant") (the "Settlement")[1];

(2)    approving the Notice Plan and proposed Long and Short Form Notices to the Class;

(3)    approving the proposed Plan of Allocation;

(4)    designating Adrian Cendejas as Class Representative for the Settlement Class;

(5)    appointing A.B. Data, Ltd. ("A.B. Data") to serve as Notice and Settlement Administrator;

(6)    setting a schedule for Final Approval of the proposed Settlement and related proceedings regarding attorneys' fees, costs, expenses and service awards;

(7)    certifying a Settlement Class for the following proposed Class: All persons in the United States who purchased through the PlayStation Store one or more video games for which a game specific voucher ("GSV") was available at retail prior to April 1, 2019, for which a total of at least 200 GSV redemptions were made prior to April 1, 2019, and for which the post-discount price increased by at least fifty cents from: (a) the period between January 1, 2017 and March 31, 2019; as compared to (b) the period between April 1, 2019 and December 31, 2023. The class period shall be April 1, 2019 to December 31, 2023 ("Class Period").  Excluded from the Settlement Class are: (1) Defendant and its

---

[1] Capitalized terms in this Motion incorporate the defined terms from the proposed Revised Settlement Agreement.

1

1    counsel, officers, directors, management, employees, parents, subsidiaries,
2    and affiliates; and (2) the Court and its employees; and
3    (8)    granting such other and further relief as the Court may deem just and
4    appropriate.

5    Copies of the Proposed Class Plaintiff's [Proposed] Order Granting Preliminary Approval
6    of Class Action Settlement and Proposed Class Plaintiff's [Proposed] Order Granting Final
7    Approval of Class Action Settlement are separately submitted with this Motion. *See* Declaration
8    of Michael M. Buchman dated December 13, 2024 ("Buchman Decl.") as Exhibits A and B.

9    Proposed Class Plaintiff's Motion is based on Federal Rule of Civil Procedure 23, the
10    Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this
11    Notice of Unopposed Motion, the supporting Memorandum of Points and Authorities, the
12    Declaration of Michael M. Buchman dated December 13, 2024, and the pleadings and papers on
13    file in *Caccuri et al., v. Sony Interactive Entertainment LLC*, Case No. 3:21-cv-03361-AMO (the
14    "litigation"), as well as any other matter this Court may take notice of.

15    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

16    **I.    THE MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED**
17    **SETTLEMENT**

18    **A.  Introduction**

19    Plaintiff[2] Adrian Cendejas, on behalf of himself and the proposed Settlement Class,
20    respectfully seeks preliminary approval of the proposed Settlement with Defendant SIE in this
21    litigation.[3]  This proposed Settlement provides for a Settlement Amount totaling $7,850,000, in
22    the form of cash-value PlayStation Network ("PSN") account credits to be electronically
23    distributed directly to Settlement Class members' PSN accounts. The Settlement Class members
24    with active PSN accounts will not need to submit claim forms to receive a benefit under the
25    settlement. SIE is able to identify the Settlement Class members through their PSN accounts and

26    _____

[2] "Plaintiff" as referenced in this document refers to the Proposed Class Representative Plaintiff Adrian Cendejas.
27    "Plaintiffs" as referenced in this document refers to Messrs. Agustin Caccuri, Adrian Cendejas and Alan Neumark.
The reason for this distinction is because only Plaintiff Adrian Cendejas has a qualifying purchase under the
Proposed Class Definition.
28    [3] Plaintiffs Agustin Caccuri and Allen Neumark do not have qualifying purchases under the proposed class definition.

directly deposit an account credit. Eligible Class members with deactivated PSN accounts will be able to contact the case 877 number, the case specific email address, and/or the case specific mailing address and provide qualifying information such as PSN account information and relevant purchases, as well as a current address in order to receive monies they may be entitled to under the Settlement.

The Settlement was reached, with the assistance of mediator Mr. Christopher Hockett, who was originally designated by the Court to conduct an Ordered Early Neutral Evaluation conference. Mr. Hockett is a widely recognized and experienced antitrust litigator, former Chair of the ABA Antitrust Section, and now a lecturer at Berkeley Law. After extensive motion practice, fact discovery, and arm's length negotiations among experienced antitrust class action counsel, with the assistance of Mr. Hockett as mediator, the parties were able to enter into the Revised Settlement Agreement. *See* Buchman Decl., Exhibit C.

In exchange for the Settlement Amount, Plaintiffs and the Settlement Class agree to release all claims against SIE that arise out of or relate to the alleged conduct in this litigation. As demonstrated below, the proposed Settlement is in the best interests of Settlement Class members as defined in the Second Consolidated Amended Class Action Complaint and meets the criteria for approval under Federal Rule of Civil Procedure 23(e). The proposed Settlement Class also meets the requirements of Rule 23(e) and should be certified for settlement purposes. The Settlement Class is comprised of approximately 4.4 million Settlement Class members. Proposed Class Plaintiff's claims are typical of those of all Settlement Class members and present numerous common questions of fact and law. The Proposed Class Plaintiff more than adequately represents the interests of all Settlement Class members. The Fed. R. Civ. P. 23(a)(1)-(4) requirements are, therefore, satisfied. The common issues presented in this case predominate over any questions that may affect individual Settlement Class members.  A class action is superior to other methods of adjudication and, therefore, the Fed. R. Civ. P. 23(b)(3) requirements are satisfied.

Accordingly, the Proposed Class Plaintiff respectfully requests that the Court enter an

1   Order: (i) preliminarily approving the Settlement; (ii) approving the form and manner of Notice

2   to the Settlement Class (iii) approving the Plan of Allocation to the Class; (iv) certifying a Rule

3   23 Settlement Class and designating Adrian Cendejas as Class Representative for the Settlement

4   Class; (v) appointing A.B. Data, Ltd. to serve as Notice and  Settlement Administrator; (vi)

5   setting a schedule for notice and Final Approval of the proposed Settlement; and (vii) granting

6   such other and further relief as the Court may deem just and appropriate under the circumstances.

7       **B.  Procedural History**

8           **1. The Litigation**

9           Plaintiffs allege that they purchased digital videogames from the PlayStation Store.

10  Second Consolidated Amended Class Action Complaint ("SCACAC") ¶¶ 14–16. ECF No. 189.

11  That Complaint further alleges as follows:  From the time of the PlayStation Store's launch in

12  2006 until April 2019, SIE allowed Amazon, Best Buy, GameStop, Target, Wal-Mart and other

13  third-party retailers to sell PlayStation game-specific vouchers ("GSVs").  *Id.* ¶¶ 41–42.  In April

14  2019, SIE eliminated the sale of GSVs through all U.S. third-party retailers. Consumers were still

15  able to purchase cash/gift cards from these retailers for redemption of any digital games through

16  the PlayStation Store as well as purchasing games directly on the PlayStation Store. The

17  SCACAC alleges that sales after April 1, 2019 were made at supracompetitive prices.  *Id.* ¶¶ 45,

18  50.  Sony denies the allegations in the SCACAC.

19          On February 18, 2022, SIE moved to dismiss the Consolidated Class Action Complaint

20  pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 45. Chief Judge Seeborg granted, in part, the motion

21  on the grounds that, although Plaintiffs had "adequately alleged a cognizable aftermarket,"

22  Plaintiffs failed to adequately allege anticompetitive conduct under the Sherman Act.  ECF No. 60

23  at 2.  The Court granted Plaintiffs leave to replead. *Id.* at 10.  On August 15, 2022, Plaintiffs filed

24  the Consolidated Amended Class Action Complaint. ECF No. 61. Sony again moved to dismiss.

25  ECF No. 67. On February 7, 2023, the Court denied the motion on the grounds that Plaintiffs

26  sufficiently pled the *Qualcomm* factors, including the requirement that Defendant's "only

27  conceivable or rational purpose" was to exclude competition.  ECF No. 80. Plaintiff has filed the

28

1    SCACAC in order to revise the Class definition to conform with the Class defined in the Revised

2    Settlement Agreement. ECF No. 189.

3        **2. Discovery**

4        Discovery began following the Court's denial of SIE's motion to dismiss the Consolidated

5    Amended Class Action Complaint. Plaintiffs served a first set of requests for production of

6    documents on April 28, 2023, to which Sony served objections and responses on May 30, 2023.

7    On January 30, 2024, after an extensive meet and confer process, Sony served amended

8    objections and responses to Plaintiffs' first set of requests for production, reflecting certain

9    compromises reached by the parties. On February 6, 2024, Plaintiffs served a subpoena on third

10   party The Value Engineers, a market research firm retained by Sony. On February 14, 2024,

11   Plaintiffs served subpoenas on Amazon.com, Inc., Best Buy Co., Inc, GameStop Corp., Target

12   Corporation, and Walmart Inc., to obtain transactional data and other documents. These retailers

13   sold GSVs prior to the April 1, 2019 implementation of the decision to eliminate that sale of

14   GSVs at retail.  Sony similarly served third-party subpoenas on the same retailers, as well as

15   certain other third parties whose productions were produced to Plaintiffs. In total, SIE produced

16   over 100,000 documents and voluminous transaction data, which Plaintiffs reviewed. In addition,

17   approximately 6,500 documents were produced from third parties Amazon.com, Inc., Best Buy

18   Co., Inc, GameStop Corp., Target Corporation, Walmart Inc., the Value Engineers, Inc., and

19   Nintendo Co., Ltd.

20       Discovery of Plaintiffs began when Sony served a first set of requests for production on

21   Plaintiffs on December 6, 2023, to which Plaintiffs responded on January 19, 2024. In total,

22   Plaintiffs produced 2,164 documents to SIE. A review of the data produced by SIE and third-

23   party retailers established that retailers were charging SIE's suggested retail price or prices higher

24   than those being charged by SIE.  The data produced in the litigation indicates that certain

25   consumers may have been injured concerning a small number of digital games sold prior to and

26   after April, 2019. But the indication from Plaintiffs' economic expert was that, with the benefit of

27   SIE and third-party productions, the damages and breadth of injury were significantly smaller

28

than initially anticipated. Moreover, Plaintiffs' expert conveyed that proving economic injury and resulting damages would be very challenging.

Following the review of the documents and data produced in the litigation from SIE and third-parties, Plaintiffs began preparing for depositions and working with their expert concerning class certification. Plaintiffs noticed thirteen 30(b)(1) depositions as well as a 30(b)(6) deposition of SIE. Plaintiffs were fully prepared to take each scheduled SIE deposition of SIE's current and former executives. During the same time, Plaintiffs' counsel was ready to defend the depositions of the three Plaintiffs.

During discovery, SIE filed, on November 16, 2023, a motion to deny class certification based primarily on issues relating to contract terms for arbitration and waiver of the right to bring a class action. The motion was fully briefed and argued on May 1, 2024. *See* ECF Nos. 124, 134, 136, 161. The motion was denied on May 24, 2024, but the Court left open the issue of whether the class action waiver provision would impact certification of a class and whether the class would be narrowed to exclude consumers who were under a prior SIE Terms of Service Agreement given a change in the 2020 Terms of Service. ECF No. 167.

**3. Settlement Negotiations**

In August 2024, the parties agreed to re-engage Mr. Christopher Hockett, who served as the Court-appointed early neutral evaluator, to explore potential resolution. After a number of mediation sessions and input from Mr. Hockett in numerous private calls, the parties reached the proposed Settlement.  This proposed Settlement was reached as a result of hard-fought and highly adversarial litigation. Two motions to dismiss and a motion to deny class certification were briefed, argued, and resolved. During discovery, the parties produced and reviewed over one hundred thousand documents and substantial amounts of SIE transaction and pricing data. The parties similarly served and responded to requests for production and had a discovery dispute, regarding the time frame of discovery and number of witnesses to be deposed, resolved by the Court. Additionally, the parties were prepared to take numerous depositions. Plaintiffs were thus well-versed in the strengths and weaknesses of the case and were well-positioned to assess and

balance the risks and rewards of continuing to litigate the claims against SIE. Here, there were a number of issues which made this case difficult and potentially problematic for Plaintiffs. *First*, the number of games sold at retailers was much smaller than originally contemplated making the games in question here a small subset of the digital games sold by SIE through the PlayStation Store. *Second*, the smaller set of games meant that the Class size would be much smaller than initially contemplated. *Third*, retailers were selling a number of digital games *at the same price as SIE or even at higher prices* making the universe of actionable games and *quantum* of damage, if any, even smaller. *Fourth* and in light of the forgoing, establishing and proving damages would be challenging according to Plaintiffs' economic expert. *Fifth*, the class action waiver issue remained outstanding under the Court's ruling on SIE's denial of class certification motion and would be addressed at the class certification stage of this proceeding. That issue created significant uncertainty going forward. *Sixth*, SIE repeatedly argued the "only rationale or conceivable purpose" test under *Qualcomm* would be applied to its decision to stop selling at retail. This is a developing area of the law the contours of which were argued throughout this proceeding, raising additional risk and uncertainty. The existence of these issues, individually and collectively, created considerable uncertainty about obtaining any relief for the Class at trial, let alone on appeal, and support the view that resolution of this action at this time is in the best interests of the Class.

Plaintiff Adrian Cendejas has entered into the proposed Settlement on behalf of himself and the proposed Settlement Class. Pursuant to paragraphs 21 and 33 of the Revised Settlement Agreement, Defendant makes no admissions as to the merits of the allegations in the Action and reserves its rights accordingly. However, in recognition that further litigation could be burdensome, expensive, and distracting, Defendant has determined that it is desirable for it to resolve this matter. The proposed Settlement Class is defined as:

> all persons in the United States who purchased through the PlayStation Store one or more video games for which a game specific voucher ("GSV") was available at retail prior to April 1, 2019, for which a total of at least 200 GSV redemptions were made prior to April 1, 2019, and for which the post-discount price increased by at least fifty cents from: (a) the period between January

1, 2017 and March 31, 2019; as compared to (b) the period between April 1, 2019 and December 31, 2023. The class period shall be April 1, 2019 to December 31, 2023.

*See* Buchman Decl., Exhibit C, Revised Settlement Agreement at 3-4.

The following persons or entities are excluded from the Settlement Class:

    a) Defendant and its counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates; and

    b) the Court and its employees.

### C. The Court Should Preliminarily Approve the Proposed Settlement

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

At the preliminary approval stage, the Court "need not make a final determination regarding the fairness, reasonableness or adequateness of the proposed settlement." *In re High-Tech Emp. Antitrust Litigation*., No. 11-cv-02509, 2015 WL 12991307, at *1 (N.D. Cal. Mar. 3, 2015). To grant preliminary approval, the Court need only determine that the proposed settlement substantively falls "within 'the range of reasonableness.'" Id. (quoting 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002)); *see also Smith v. Kaiser Found. Hosps*., No. 18CV780-KSC, 2020 WL 5064282, at *5 (S.D. Cal. Aug. 26, 2020) (emphasis in original); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) ("The court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'") (citing *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The proposed Settlement is well within the range of fair, reasonable, and adequate.

### 1. Procedural Considerations

The Court may consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory

8

Proposed Class Plaintiff's Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:21-cv-03361-AMO

committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### a. Adequate Representation of the Class

As described above, Proposed Class Plaintiff is an adequate representative of the Settlement Class. Mr. Cendejas and Settlement Class members suffered the same injuries in the form of overcharges and have the same interest as every other member of the proposed Settlement Class in proving that Defendant acted unlawfully. Furthermore, Proposed Class Plaintiff is represented by seasoned counsel with extensive antitrust and complex litigation experience. Interim Lead Counsel has nearly thirty years of class action antitrust experience including some of the largest antitrust class action cases in this country. Counsel here have tenaciously pursued Class Plaintiffs' claims for over three years. The efforts undertaken thus far in this case should give the Court confidence in the adequate representation of the Settlement Class.

### b. Arm's Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arm's length negotiation[.]" *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); 4 A. Conte & H. Newberg, *Newberg on Class Actions* at § 11.24 (4th ed. 2002). "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

1

2    Here, the parties engaged in arm's length negotiations, which were facilitated by mediator

3    Mr. Christopher Hockett, a very experienced antitrust litigator and former Chair of the ABA

4    Antitrust Section. The initial discussions began in January of this year pursuant to a Court

5    Ordered Early Neutral Evaluation session with Mr. Hockett. Approximately eight months later,

6    following extensive Defendant and third-party documentary discovery, the parties engaged in

7    multiple mediation sessions with Mr. Hockett. The parties and their counsel, therefore, were well-

8    positioned to evaluate the risks and rewards of proceeding with the litigation, having reviewed

9    over 100,000 documents produced in discovery. This case involved three years of hard fought

10   litigation involving two fully briefed and argued motions to dismiss; a hard fought motion to

11   preemptively deny class certification; two discovery related motions to compel (related to

12   additional custodians and the relevant time period); and expert review of voluminous SIE and

13   third party retailer transaction and pricing data.

14                                   **2.   Substantive Considerations**

15        Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive'

16   review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory

17   committee's note to 2018 amendment. In determining whether "the relief provided for the class is

18   adequate," courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

19   of any proposed method of distributing relief to the class, including the method of processing

20   class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

21   payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.

22   23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members

23   equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

24

25

26

27

28

**a. Strength of Class Plaintiffs' Case and Risks of Continued Litigation**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

Here, a favorable outcome at class certification and trial and a damages award against Defendant was far from assured. Plaintiff would need to prevail on class certification and, based on Defendant's Motion to Deny Class Certification, the issue remained unresolved whether a class action waiver provision in SIE's agreements barred the claims asserted by potential class members. Plaintiff would have to overcome numerous substantive defenses at summary judgment and at trial and succeed on any potential appeal. Defendant, and experts it is likely to offer, would surely contest every theory of liability and measure of damages. There are, for example, substantial disputes as to: (i) whether the alleged market for digital PlayStation games is a valid antitrust market; (ii) whether SIE monopolized or attempted to monopolize the alleged market for digital PlayStation games; (iii) whether Plaintiffs and members of any certified class suffered causal antitrust injury as a result of SIE's alleged monopolization of the alleged market for digital PlayStation games; and (iv) whether there was an established Section 2 refusal-to-deal claim based on the termination of GSVs at retailers when general purpose voucher codes (gift/cash cards) were still available that could be used to buy any game in the PlayStation Store rather than just specific named games. There was also the additional question of the *quantum* of damages given that retailers were, in the overwhelming majority of instances, charging consumers SIE's suggested retail prices or prices higher than SIE was charging.[4] The discovery revealed that potential damages in this case were, therefore, smaller than initially contemplated.

---

[4] Expert analysis from data provided by GameStop and Amazon (which, according to SIE documents, together account for over 95% of SIE digital game retail sales) found that in over 99% of sales, the sales price was the same or higher than the price SIE charged in the PlayStation Store.

Proposed Class Plaintiff's Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:21-cv-03361-AMO

**b.  The Settlement Provides Adequate Relief to the Settlement Class**

The proposed Settlement provides substantial consideration for the benefit of the Settlement Class. The Settlement amount of $7,850,000, is constituted in the form of cash-value PSN account credits to be distributed directly to the PSN accounts of the members of the proposed Settlement Class.  *See* Buchman Decl., Exhibit C, Revised Settlement Agreement at 3. Interim Lead Counsel has conducted significant discovery and has the ability to understand the pros and cons of proceeding with the litigation. *See In re Lyft Securities Litig.,* Docket No. 19-cv-02690-HSG, 2023 WL 5068504 at *12 (N.D. Cal. Aug. 7, 2023); *See also Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("In view of the fact that competent and experienced counsel have been able to conduct ample discovery which allowed them to properly assess the probability of success on the merits of the putative class claim . . . their recommendation should be entitled to substantial weight"). Interim Lead Counsel, relying on years of experience and efforts in this litigation, recommended approval of the proposed Settlement. Given the uncertainties facing class certification and establishing damages using economic experts, this proposed Settlement is far more attractive than no settlement at all given the potential looming difficulties on the horizon.

**c.  Attorney Fees and Service Awards**

Plaintiffs intend to move for an award of reasonable attorneys' fees, costs, and expenses[5] as well as service awards from the Settlement Amount. Interim Lead Counsel will respectfully seek the payment of attorneys' fees not to exceed one-third of the Settlement Amount. This is not the product of a "clear sailing" arrangement and SIE reserves the right to challenge the amount of Interim Lead Counsel's request for attorneys' fees, costs, and expenses should it so choose. As to service awards, Interim Lead Counsel will seek modest awards for Agustin Caccuri, Adrian Cendejas, and Allen Neumark, not to exceed $10,000 each, which SIE also reserves the right to

---

[5] A preliminary estimation of Plaintiffs' time (including Attorney, Contract Attorney, and Staff time) indicates approximately 13,700 hours were spent pursuing this Action. The estimated loadstar is approximately $8.7 million. If the Court awards a 1/3 fee award, that fee award would be $2,616,666.67 which is well below the $8.7 estimated loadstar and would result in a negative multiplier. Costs incurred are estimated to be around $550,000 – the majority of these cost were related to expert fees necessary to assess the strengths and weaknesses of Plaintiffs' case.

1   challenge. The service awards are subject to this Court's discretion, and their approval (in whole

2   or in part) is not a material term of the Settlement. As will be further explained at the final

3   approval stage of this proceeding, if the Court is inclined to order distribution of the Settlement

4   Amount, service awards are appropriate to compensate Messrs. Caccuri, Cendejas, and Neumark

5   for the substantial time and effort they spent participating in this litigation, including the risk of

6   negative publicity and notoriety. Messrs. Caccuri, Cendejas, and Neumark have each collected

7   and produced documents in response to Defendants' discovery requests and each was prepared to

8   appear for a deposition in this matter. Their participation facilitated this settlement. The

9   remainder of the Settlement Amount, after deducting notice and administration fees, would be

10  directly distributed to Settlement Class members' PSN accounts in the form of credits pursuant to

11  a Plan of Allocation ordered by the Court.

12                      **d.  Equitable Treatment of Settlement Class Members**

13          The Settlement Amount will be distributed to members of the Settlement Class in

14  accordance with the Plan of Allocation which governs that distribution will be based directly on

15  the overcharges to each claimant, thus ensuring equitable treatment among Settlement Class

16  members. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

17        **D. The Plan of Allocation is Fair, Reasonable, and Adequate**

18          The standard for approving a plan of allocation for a settlement amount in a class action,

19  like the one governing approval of the settlement as a whole, is that the plan must be fair,

20  reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Generally, when recommended by

21  competent and experienced counsel whose assessment is entitled to considerable weight, the plan

22  of allocation need only have a reasonable, rational basis. *See, e.g. Giusti-Bravo v. U.S. Veterans

23  Admin.*, 835 F. Supp. 34, 39-40 (D.P.R 1993); *In re Imprelis Herbicide Mktg. Sales Pracs. &

24  Prods.*, 296 F.R.D. 351, 364 (E.D.P.A. 2013); *Rolland v. Celluci*, 191 F.R.D. 3, 10 (D. Mass.

25  2000); *In re Southeastern Milk Antitrust Litig.*, Docket No. 2:08–MD–1000, 2013 WL 2155379,

26  at * 5 (E.D. Tenn. May 17, 2013).

27          The parties propose that the Settlement Amount will be distributed *pro rata* based on the

28

number of eligible games ("Covered Games") purchased by each Settlement Class member. *See* Buchman Decl., Exhibit D, IV.1-4.

Covered Games are defined as games for which there were at least 200 GSV redemptions on the PlayStation Store prior to April 1, 2019, and which increased in average post-discount price by at least fifty cents between: (a) the period between January 1, 2017 and March 31, 2019; as compared to (b) the period between April 1, 2019 and December 31, 2023.  Based on SIE's preliminary analysis, there are approximately 103 Covered Games.

The Settlement Amount will be allocated net of Court-approved attorneys' fees, costs, expenses, and service awards for the Named Plaintiffs, and other costs of litigation.

SIE will identify members of the Settlement Class based on their PlayStation Store activity, and will directly distribute, with the assistance and oversight of a Court appointed Settlement Administrator, the Settlement monies on a *pro rata* basis based on the number of Covered Games that each Settlement Class member purchased during the class period.  Based on Sony's preliminary analysis, 4,407,533 individual PSN accounts purchased at least one Covered Game during the class period.

This amount will be distributed in the form of PSN account credits, which can be redeemed for any content available for purchase in the PlayStation Store, and will be deposited directly in Settlement Class members' PSN Store accounts.  Any Settlement Class member with a deactivated account can contact the case 877 number, the case specific email address, or the case specific mailing address to provide qualifying account and game purchase information as well as a current mailing address to obtain monies under the settlement. This distribution will occur no earlier than April 1, 2025.

For these reasons, Interim Lead Counsel respectfully requests that the Court approve the Plan of Allocation.

### E. The Proposed Form and Manner of Notice Should be Approved

Members of the Class are entitled to reasonable notice of the Settlement before the Court, including notice of the Fairness Hearing. *See Manual for Complex Litigation* §§ 21.312, 21.633

(4th ed. 2004). Plaintiffs have prepared Long and Short Form Notices to advise class members of the settlement. *See* Buchman Decl., Exhibits E & F. Rule 23(e)(1) instructs the Court to "direct notice in a reasonable manner to all members of the Class who would be bound by the proposal." To meet Rule 23(e) and due process requirements, "all that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that members of the class may come to their own conclusions about whether the settlement serves their interests." *In re Outer Banks Power Outage Litig.*, Docket No. 4:17-CV-141, 2018 WL 2050141, at *6 (E.D.N.C May 2, 2018).

In this case, the proposed Revised Settlement Agreement provides for direct notice to eligible Settlement Class members via an email to the email address associated with her or his PSN Account. Notice will also be publicly disseminated via *PC Gamer*. *PC Gamer* is a publication within the gaming sector that has a circulation of 158,767. *See* Buchman Decl., Exhibit G, Declaration of Elaine Pang dated December 13, 2024 ("Pang Decl.") at ¶11.  In addition to the direct notice, approximately 1.5 million digital impressions/banner ads will be placed on wired.com, pcgamer.com and other digital game related websites for thirty days. *Id*. at ¶13. News of the settlement will also be released from PR Newswire's US1 Newsline and tweeted from X and PR Newswire and AB Data accounts. *Id.* at 16, 17. It should be noted that any eligible Class member who receives indirect notice can contact the case 877 number, the case specific email address and/or the case specific mailing address to provide qualifying purchase information as well as an address to which a check can be sent if they have a deactivated PSN account. Any person who desires to opt out of the Class or object to the proposed settlement must timely do so 60 days after entry of the preliminary approval order. *See* Buchman Decl., Exhibit A, Preliminary Approval Order, ¶22.

In sum, this tailored and robust Notice Plan provides for a favorable reach anticipated to reach upwards of 70% of Settlement Class members.[6] *Id*. at ¶27. This frequency is similar to

---

[6] Plaintiffs understand from SIE that it validates email addresses from customers upon account setup, and that it anticipates a relatively low bounce back rate—likely under10%—based on its experience sending emails to comparable groups of its customers.

those that other courts have approved that are recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010). *Id.* at 8 n.3. Accordingly, the Proposed Form and Manner of Notice should be approved.

**F. The Court Should Approve A.B. Data, Ltd. as Notice and Settlement Administrator**

Interim Lead Counsel respectfully requests that the Court appoint A.B. Data as the Notice and Settlement Administrator in connection with the proposed Revised Settlement Agreement. A.B. Data was selected based upon a bidding process which involved one other firm. Interim Lead Counsel selected A.B. Data as the notice and settlement administrator based upon the firm's experience working with Motley Rice LLC and other Class Action firms as well as price. A.B. Data was also selected because this is an unusual case in which it will work directly with the Defendant to ensure distribution of the settlement credits. It was important to SIE and Interim Lead Counsel that the Settlement Administrator have the ability to seamlessly facilitate the distribution with SIE. Within the prior two years, Interim Lead Council has worked closely with A.B. Data in the following cases: *In re Xyrem (Sodium Oxybate) Antitrust Litigation*, No. 20-md-02966 (N.D. Cal.); *In re Qualcomm Inc. Sec. Litig.*, No. 3-17-00121 (S.D. Cal.); *In re Zetia Antitrust Litigation*, No. 18-md-2836 (E.D. Va.); *In re Suboxone Antitrust Litigation*, No. 13-md-02445 (E.D. Pa.); *Holwill v. AbbVie Inc. et al.*, No. 1:18-cv-06790 (N.D. Ill.); and *Neil Leventhal et al. v. Bayside Cemetery et al*, New York County Index No. 100530/2011E. Methods of notice and claims payments were crafted in conjunction with information provided from Defendant and based upon the benefits of SIE maintaining accurate and largely up to date PlayStation Store customer data.

As notice and settlement administrator in this case, A.B. Data will be tasked with: (i) disseminating and effectuating notice in accordance with the Notice Plan; (ii) determining, from data supplied by SIE, the proper share of the Settlement to be paid to each member of the Class; (iii) and facilitating distribution, in partnership with SIE, to Settlement Class members.

A.B. Data is highly regarded and has been frequently appointed to serve as a Notice or Claims Administrator in hundreds of large consumer, antitrust, securities, ERISA, insurance, and

government agency matters. *See* Buchman Decl., Exhibit G, Pang Decl. at ¶ 3. This includes numerous cases where Interim Lead Counsel has worked closely with A.B. Data where it has been appointed and served as Claims Administrator in antitrust cases (as noted above). Accordingly, A.B. Data should be appointed the Notice and Settlement Administrator in the case.

**G. The Court Should Adopt a Schedule for Final Approval of the Proposed Settlement**

The proposed Preliminary Approval Order details a proposed schedule with the hearing date to be set at the Court's preference.  This proposed schedule is fair to Settlement Class members and provides to each member of the Class an opportunity to review the Preliminary Approval papers and the proposed Settlement as well as the amount of attorneys' fees, costs, expenses and service awards before an objection is due. Buchman Decl., Exhibit A at ¶ 22.

**H. The Proposed Settlement Class Should be Certified**

**1.        Legal Standard**

At the preliminary approval stage, the Court may direct notice of a proposed settlement to the Class if it concludes that it will likely be able to certify the settlement class under Rule 23(e)(1) and to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

To assess the proposed settlement Class under 23(e)(1), the Court conducts a two-step analysis under Rules 23(a) and 23(b).

*First*, the Court must determine whether the proposed class meets the Rule 23(a) requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Second,* if those four conditions are satisfied, the Court considers whether the proposed settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule

1   23(b)(3), a proposed settlement class may be maintained if "questions of law or fact common to

2   class members predominate over any questions affecting only individual members, and . . . a class

3   action is superior to other available methods for fairly and efficiently adjudicating the

4   controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is less demanding in the

5   settlement context than in the litigation context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926

6   F.3d 539, 556-57 (9th Cir. 2019) (*en banc*) (finding that manageability concerns are not an issue

7   for a settlement class).

8   **A. The Proposed Class Satisfies Fed. R. Civ. P. 23.**

9   The proposed Settlement Class should be certified because it meets all the requirements

10  under Fed. R. Civ. P. 23(e)(1). The proposed Settlement Class is cohesive and objectively

11  defined. *See* Fed. R. Civ. 23(e)(1).

12  1. The Proposed Settlement Class Satisfies Rule 23(a)'s Requirements.

13  Under Rule 23(a), certification is appropriate where: (i) the class is so numerous that

14  joinder of all members is impracticable; (ii) there are questions of law or fact common to the

15  class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses

16  of the class; and (iv) the representative parties will fairly and adequately protect the interests of

17  the class. Fed. R. Civ. P. 23(a). Because settlement classes are routinely certified[7], the proposed

18  Settlement Class, which satisfies all Rule 23 requirements, should be certified as demonstrated

19  below.

20  _____

21  [7] *See, e.g., In re Aggrenox Antitrust Litig.*, No. 14-MD-2516 (D. Conn, Mar 6, 2018) (ECF No. 766); *Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442, 2005 U.S. Dist. LEXIS 33711 (E.D.

22  Va. Jan. 10, 2005); *Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442 (E.D. Va. July 28, 2004) (ECF No. 137); *In re Tricor Indirect Purchaser Litig.,* No. 05-cv-360 (D. Del. May 8,

23  2009) (ECF No. 509); *In re Abbott Labs. Norvir Antitrust Litig.,* No. 04-cv-1511 (N.D. Cal., Aug. 27, 2008) (ECF No. 612); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,*246 F.R.D. 349,

24  357 (D.D.C. 2007); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.,* No. 04-mc-535 (D.D.C. Dec. 11, 2006) (ECF No. 33); *In re Remeron End Payor Antitrust Litig.*, Nos. 02-2007,

25  04-5126, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005); *Nichols v. Smithkline Beecham Corp.*, Docket No. 00-cv-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005); *In re*

26  *Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D. Mich. 2003); *In re Buspirone Antitrust Litig.*, No. 01-md-01413 (S.D.N.Y. April 21, 2003) (ECF No. 148); *In re Warfarin Sodium*

27  *Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004); *In re*

28  *Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374, 396 (D.D.C. 2002).

1

#### a. Numerosity

2    Rule 23(a)(1) requires that members of a class must be "so numerous that joinder of all

3    members is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity does not require a specific

4    number of class members, courts in the Ninth Circuit generally agree that numerosity is satisfied

5    if the class includes 40 or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod.*

6    *Liab. Litig.*, No. 19-MD-02913-WHO, 2022 WL 2343268, at 959 (N.D. Cal. June 28, 2022). The

7    proposed settlement Class is comprised of more than 4 million individuals who purchased one or

8    more digital games on the PSN Store for which a GSV was available at retail prior to April, 2019,

9    for which at least 200 GSV redemptions were made prior to April 1, 2019, and for which the

10    post-discount price increased by at least fifty cents from: (a) the period between January 1, 2017

11    and March 31, 2019; as compared to (b) the period between April 1, 2019 and December 31,

12    2023. SIE's data confirms that approximately 4,407,533 individual accounts meet this definition.

13    Given the size of the proposed Settlement Class, which exceeds forty persons, the proposed

14    Settlement Class easily satisfies Rule 23(a)(1).

15

#### b. Commonality

16    Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P.

17    23(a)(2). A common question is one that "is capable of classwide resolution—which means that

18    determination of its truth or falsity will resolve an issue that is central to the validity of each one

19    of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For

20    purposes of Rule 23(a)(2), even a single common question will suffice to satisfy the requirement.

21    *Id.* at 359; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-02503-DJC, 2017

22    WL 4621777 at *12, n.12 (D. Mass. 2017) . "Antitrust liability alone constitutes a common

23    question that 'will resolve an issue that is central to the validity' of each class member's claim 'in

24    one stroke'" because proof of the violation "'will focus on defendants' conduct and not on the

25    conduct of individual class members.'" *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d

26    1167, 1180 (N.D. Cal. 2013) (citing *Dukes*, 564 U.S. at 349).

27

28

This case presents numerous common questions of fact and law that relate to the Defendant's alleged anticompetitive conduct, including whether Defendant: (i) unlawfully created, maintained and continues to maintain monopoly power in the relevant market; (ii) unlawfully maintained a monopoly which caused anticompetitive effects in the relevant market; (iii) has procompetitive justifications or whether there were less restrictive means of achieving them; and (iv) caused antitrust injury through overcharges to the business or property of Plaintiffs and Settlement Class members. The same questions of law and fact also apply to all members of the Settlement Class who will necessarily use the same evidence to prove the Defendant's alleged conduct "in one stroke." *Dukes*, 564 U.S. at 350. Thus, the Settlement Class satisfies Rule 23(a)(2).

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020). Class Plaintiffs' claims are typical of the class when they "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members" and is "based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (alteration in original) (citation omitted). "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, the alleged claims are typical of the claims of the Settlement Class because: (i) their injury (supracompetitive prices) arises from the same course of alleged conduct (Defendants' anticompetitive conduct); (ii) their claims rely on the same legal theories (alleged violation of the antitrust laws) and (iii) their claims allege damages in the form of overcharges. Thus, the Rule 23(a)(3) requirement is satisfied.

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 625 (1997) (finding Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent"). To determine whether the representation meets this standard, courts ask two questions: (i) do representative plaintiffs have any conflicts of interest with other class members; and (ii) will they prosecute the action vigorously on behalf of the class. *See Boston Retirement System v. Uber Technologies, Inc.*, 19-cv-06361-RS, 2022 WL 2954937 * 4 (N.D. Cal. 2022) (Seeborg, C. J.).

No conflicts of interest exist between Proposed Class Plaintiff and Settlement Class members. Mr. Cendejas and the Settlement Class members have the same objectives: to prove that Defendant acted unlawfully and that Settlement Class members paid supracompetitve prices for PlayStation digital games as a result. And adequacy is also presumed where, as here, a fair settlement was negotiated at arm's length with the assistance of a mediator. 2 *Newberg on Class Actions,* § 11.28, 11-59.

### 2.   The Settlement Class Satisfies Rule 23(b)(3)'s Requirements.

Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class easily satisfies these requirements.

### a.   Predominance

Predominance exists when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai & Kia*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)). "[M]onopolization claims readily lend themselves to common evidence. They require: (i) the possession of monopoly power in the relevant market; and (ii) the willful

acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. So, the state of the market and defendants' use and maintenance of monopoly power, as opposed to individual plaintiff's conduct, drives the claim." *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020).

The predominance inquiry is less demanding in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). The predominant question at this stage will be whether this settlement is fair, adequate, and reasonable. *See, e.g., Just Film, Inc. v. Buono,* 847 F.3d 1108, 1117 (9th Cir. 2017).

The focus is on Defendant's conduct and the effect on the market, which are common to all Settlement Class members. The focus is not on the actions of individual Settlement Class members. *See In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (citing *Alaska Airlines v. United Airlines*, 948 F.2d 536, 540 (9th Cir. 1991)).

### b.  Superiority

The "superiority" requirement of Rule 23(b)(3) "ensures that litigation by a class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Solodyn*, 2017 WL 4621777, at *21 (quoting *Amchem*, 521 U.S. at 615). But in a certification for settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Certifying the Settlement Class is superior to resolving Settlement Class members' claims through individual litigation. Considerations of judicial efficiency favor concentrating this litigation in one forum. Allowing this case to move forward as a class action would: (i) avoid congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility

1  of inconsistent results; and (iii) allow class members an opportunity for redress they might

2  otherwise be denied.

3      Accordingly, the proposed Settlement Class satisfies each certification requirement, and

4  Proposed Class Plaintiff respectfully submits that the Court should certify the proposed

5  Settlement Class. *See* Fed. R. Civ. 23(e)(1).

6          **3.    The Settlement Class Satisfies Other Procedural Guidelines.**

7      Under Rule 23 and the Northern District of California's Guidelines, courts must also

8  consider: (i) any differences between the claims in the operative complaint and the released

9  claims; (ii) differences between the settlement class and the class proposed in the operative

10  complaint; and (iii) whether any other cases will be affected by the settlement. *See* Fed. R. Civ. P.

11  23 2018 committee notes subdivision(e)(1); District Guidelines ¶ 1(a), (b), (d).

12      No difference exists between the legal claims in the operative complaint and the released

13  claims because the parties jointly agreed and stipulated to an amended class definition. The

14  claims released by the Settlement are consistent with those alleged in the prior Consolidated

15  Amended Class Action Complaint and it is believed no other cases will be affected by this

16  Settlement.

17      Two primary differences between the Operative Complaint and the Second Consolidated

18  Amended Class Action Complaint concern the Class Definition and merit some explanation: (i) a

19  requirement that there be at least 200 GSV redemptions prior to April 1, 2019 and (ii) that the

20  post-discount price increase by at least fifty cents. With regard to the requirement that there be at

21  least 200 GSV redemptions prior to April 1, 2019 the parties mutually agreed that the 200-

22  redemption threshold was appropriate. While true that there were digital games that had a smaller

23  volume of GSV redemptions, this "long tail" of games for which there existed *de minimus* GSV

24  redemptions makes it unlikely that they would have suffered harm under Plaintiffs' theory of

25  injury. Additionally, given the already high number of Settlement Class members (some 4.4

26  million) and the finite monies available in the Settlement Amount, maintaining a cutoff of 200

27  GSV redemptions assures Settlement Class members a more meaningful and tangible recovery.

28

As to the requirement that the GSV's post discount price increase by at least fifty cents in order to qualify as an eligible game, the parties believe having an expanded list of games with miniscule damages figures would lead to a vast array of Settlement Class members, many of whom would be unlikely to have been harmed under Plaintiffs' theory of injury. Additionally, maintaining a fifty cents post discount price increase threshold within the class definition insures a more meaningful recovery for Settlement Class members based on the Settlement Amount.

**I. Conclusion**

For the above-stated reasons, Proposed Class Plaintiff respectfully request that the Court enter an Order: (i) preliminarily approving the Class Action Settlement with Defendant SIE; (ii) approving the Notice Plan and proposed Notices to the Class; (iii) preliminarily approving the proposed Plan of Allocation; (iv) Certifying a Settlement Class and preliminarily designating Mr. Adrian Cendejas as Class Representative for the Settlement Class; (v) appointing A.B. Data, Ltd. to serve as Settlement Notice and Settlement Administrator; (vi) setting a schedule for Final Approval of the proposed Settlement; (vii) certifying a Settlement Class; and (viii) granting such other and further relief as the Court may deem just and appropriate.

Dated: March 13, 2025

Respectfully submitted,

*/s/ Michael M. Buchman*

Michael M. Buchman (admitted *pro hac vice*)
**MOTLEY RICE LLC**
800 Third Avenue, Suite 2401
New York, NY 10022
Tel: (212) 577-0050
mbuchman@motleyrice.com
*Interim Lead Counsel for Plaintiffs and the Proposed Class*

Jeff S. Westerman (State Bar No. 94559)
**ZIMMERMAN REED**
6420 Wilshire Blvd.
Suite 1080
Los Angeles, CA 90048
Tel: (310) 752-9385

1

jeff.westerman@zimmreed.com

2

*Counsel for Plaintiff Agustin Caccuri*

3

Joseph R. Saveri (State Bar No. 130064)
Ronnie S. Spiegel (WSBA No. 33721)[8]

4

Elissa A. Buchanan (State Bar No. 249996)
**JOSEPH SAVERI LAW FIRM, LLP**

5

601 California Street, Suite 1000
San Francisco, California 94108

6

Tel: (415) 500-6800

7

jsaveri@saverilawfirm.com
abuchanan@saverilawfirm.com

8

*Counsel for Plaintiff Adrian Cendejas*

9

10

Blake Hunter Yagman (admitted *pro hac vice*)
**LEEDS BROWN LAW, P.C.**

11

One Old Country Road, Suite 347
Carle Place, New York 11514

12

Tel.: (929) 709-1493
byagman@leedsbrownlaw.com

13

14

Peggy J. Wedgworth (admitted *pro hac vice*)
Elizabeth McKenna (admitted *pro hac vice*)

15

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

16

100 Garden City Plaza, Suite 500
Garden City, New York 11530

17

Tel: (212) 868-1229

18

pwedgworth@milberg.com
emckenna@milberg.com

19

*Counsel for Plaintiff Allen Neumark*

20

21

22

23

24

25

26

27

28

---
[8] Located in Washington State

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Michael M. Buchman, am the ECF User whose identification and password are being used to file this Notice of Unopposed Motion and Unopposed Motion for Preliminary Approval. I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.


Dated: March 13, 2025                    */s/ Michael M. Buchman*

                                     Michael M. Buchman