UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AGUSTIN CACCURI,

Plaintiff,

v.

SONY INTERACTIVE
ENTERTAINMENT LLC,

Defendant.

Case No. 21-cv-03361-AMO

**ORDER GRANTING PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

Re: Dkt. No. 207

Proposed Class Plaintiffs' motion for preliminary approval of proposed class settlement was heard before this Court on January 29, 2026. Having read the papers filed by the proposed Class Plaintiffs and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS** preliminary approval of the proposed settlement for the following reasons.

## I.   BRIEF BACKGROUND

Plaintiff alleges that he purchased digital videogames from the PlayStation Store. Second Consolidated Amended Class Action Complaint (Dkt. No. 190, "Operative Complaint") ¶¶ 14-16. From the time of the PlayStation Store's launch in 2006 until April 2019, Sony Interactive Entertainment LLC ("SIE") allowed Amazon, Best Buy, GameStop, Target, Wal-Mart and other third-party retailers to sell PlayStation game-specific vouchers ("GSVs"). *Id.* ¶¶ 41-42. In April 2019, SIE eliminated the sale of GSVs through all U.S. third-party retailers. Consumers were still able to purchase cash/gift cards from these retailers for redemption of any digital games through the PlayStation Store as well as purchasing games directly on the PlayStation Store. Plaintiff alleges that sales after April 1, 2019, were made at supracompetitive prices. *Id.* ¶¶ 45, 50. SIE denies the allegations in the Operative Complaint. Plaintiff filed the Operative Complaint to

revise the Class definition to conform with the Class defined in the Second Revised Settlement Agreement. Dkt. No. 190.

The parties' proposed settlement, reached in September 2024, provides for a Settlement amount totaling $7,850,000 (the "settlement amount"), in the form of cash-value PlayStation Network ("PSN") account credits to be electronically distributed directly to settlement class members' PSN accounts. The settlement class members with active PSN accounts will not need to submit claim forms to receive a benefit under the proposed settlement. SIE is able to identify the proposed settlement class members through their PSN accounts and directly deposit an account credit. There are approximately 4,407,533 eligible class member PSN accounts. Class members who made qualifying purchases, but whose PSN accounts have been deactivated, will be able to contact the case 877 number, the case specific email address, and/or the case specific mailing address and provide qualifying information, such as PSN account information and relevant purchases as well as a current address, in order to receive monies, via U.S. mail, equal in value to the PSN account credits to which they may be entitled under the proposed settlement. In exchange for the settlement amount, Plaintiff and the proposed settlement class agree to release all claims against SIE that arise out of or relate to the alleged conduct in this litigation.

## II.     DISCUSSION

Plaintiff renews his motion for preliminary approval of class settlement after the Court denied the two prior motions for preliminary approval. *See* Dkt. No. 195 (motion denied at Dkt. No. 199); Dkt. No. 207 (motion denied at Dkt. No. 211); Dkt. No. 219 (instant motion).[1]

### A.     Preliminary Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires

---

[1] Plaintiff additionally moves to amend the case caption to remove named Plaintiffs Agustin Caccuri and Allen Neumark. Dkt. No. 218. Amendment of the case caption does not resolve the Court's concerns related to Caccuri and Neumarks' potential receipt of service awards from a settlement fund from which they are excluded. Further, the Court finds no legal reason to amend the case caption. The Court therefore DENIES the administrative motion. The Court will resolve the request for service awards for Caccuri and Neumark along with Class counsel's anticipated motion for an award of attorney's fees and other expenses.

United States District Court
Northern District of California

courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)," and, if no class has yet been certified, that the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

On the first prong, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but

3

whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted).

Here, the Court finds that the factors elucidated in *Hanlon* generally weigh in favor of finding the settlement "fair, reasonable, and adequate." *See Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. Pro. 23(e)(2). The Court discusses certain of the factors in more depth to contextualize its preliminary approval of the instant settlement and to address certain of the Court's previously-expressed concerns regarding the settlement.

### 1.    Strength of the Plaintiffs' Case

The assessment of the strength of a case is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). This antitrust case involves claims of refusal to deal under *Aspen Skiing Co. v. Aspen Highland Skiing Corp.*, 472 U.S. 585 (1985). To establish an *Aspen Skiing* refusal to deal claim, a plaintiff must show: (i) "the unilateral termination of a voluntary and profitable course of dealing"; (ii) "a willingness to sacrifice short term profits in order to obtain higher profits in the long run from the exclusion of competition"; and (iii) a refusal to deal pertaining to "products that were already sold in a retail market to other customers." *Metronet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132-33 (9th Cir. 2004). As Chief Judge Seeborg stated in the second motion to dismiss decision, this case "just barely" survived the pleading stage. *See* Dkt. No. 80 at 3. Plaintiff further faced a difficult battle on the merits, as the Ninth Circuit has rejected every refusal-to-deal claim it has considered since the Supreme Court decided *Verizon v. Trinko* in 2004.

United States District Court
Northern District of California

*See, e.g., AliveCor, Inc. v. Apple Inc.*, 163 F.4th 1259, 1265 (9th Cir. 2026); *see also Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). The discovery received from SIE as well as from the non-party retailers of SIE games indicated that (i) only a select number of digital games were available at retail; and (ii) there were major retailers charging prices at or above manufacturer's suggested resale prices, factual circumstances that drastically minimized potential damages in the case. In addition, SIE filed a motion to preemptively deny class certification on the grounds that arbitration and class waiver provisions in certain contracts precluded certification of a class. The Court resolved that motion by denying it insofar as it pertained to compelling arbitration, but deferred ruling on the class waiver claim, thereby leaving a serious issue which Plaintiff would need to address in the future. In light of these various challenges, including the difficulty in establishing a refusal to deal violation of antitrust law, a factual record that undermined Plaintiff's claim for damages, and the spectre of arbitration for a significant portion of the Class, this case undoubtedly faced significant legal challenges as it proceeded. Therefore, this factor weighs significantly on the Court's assessment of the fairness of adequacy of this settlement.

### 2.    "Coupon" Settlement

At the hearing on an earlier motion for preliminary approval, the Court expressed significant concern about whether the relief afforded to class members amounted to coupons, a disfavored form of relief. Under the Class Action Fairness Act ("CAFA"), Congress requires heightened scrutiny of coupon-based settlements, although the term "coupon" is not defined in Title 28 U.S.C. § 1712. When assessing whether settlement relief constitutes a "coupon," the Ninth Circuit established the following three factors for courts to consider in totality: "(1) whether class members have to hand over more of their own money before they can take advantage of a credit, (2) whether the credit is valid only for select products or services, and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *McKnight v. Hinojosa*, 54 F.4th 1069, 1075 (9th Cir. 2022) (internal quotation marks, citation omitted); *see also In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 949-53 (9th Cir 2015). No single factor is dispositive. *Hinojosa*, 54 F.4th at 1075.

United States District Court
Northern District of California

Applying the first factor here, class members are not obligated to hand over more of their own money before they can take advantage of the relief. Class members will have credits deposited directly into their respective PSN account(s) without needing to complete and submit a claim form. The credits will be readily available for purchases and not subject to potential loss of use for failure to complete a claim form, or inability to evidence a purchase. Though the recovery for each class member is quite low, a class member will be able to purchase PlayStation digital gaming content without additional out-of-pocket expense because there is digital gaming content available for nominal amounts. Indeed, there is PSN digital content that Class Members have historically purchased (i.e. games and add-on content) at the PlayStation Store that costs less than $1. *See* Dkt. No. 219 at 25 n.11. Because a class member does not need to hand over more of their money to take advantage of the PSN account credit, the settlement satisfies the first factor. *Hendricks v. Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) (finding vouchers for tuna "had sufficient value that class members could use them to purchase [the product] without additional out-of-pocket expense.").

Further, the credit to be placed in the PSN accounts of Class members is not limited to "select products or purchases." *Hinojosa*, 54 F.4th at 1075. The PSN account credits can be freely used by the eligible Class member concerning any digital game or add-on content available for sale at any time on the PlayStation Store. There are no product, price, timing, black-out dates, or other restrictions. Indeed, once the credit is deposited into a Class member's account, it is immediately part of the other funds that a Class member may have in her/his digital wallet for general use. The flexibility of the cash-value credits thus also suggests that the relief obtained by the settlement is not a "coupon."

Applying the third factor, Class members retain some modicum of flexibility in use of the credits. Although the PSN account credit is not transferable, the credit never expires. Lack of expiration weighs against it being a coupon when considered with lack of transferability, this factor is at worst neutral as the two indicators split. In sum, the Court finds that the PSN account credits do not reflect a coupon settlement.

But even if the relief provided amounted to a coupon, the Court would still find approval of this form of relief appropriate based on CAFA. CAFA requires that before a district court may approve a "coupon settlement," it must "determine whether, and mak[e] a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). If, and after, a determination is made that the settlement relief consists of coupons, courts typically identify "three primary concerns with coupon settlements": (1) they can fail to provide meaningful compensation to class members; (2) they can fail to disgorge ill-gotten gains from the defendant; and (3) they can require class members to do future business with the defendant in order to receive compensation. *Rael v. Children's Place, Inc.*, 2021 WL 1226475, at *8 (S.D. Cal. Mar. 30, 2021) (citation omitted).

Here, first, the settlement provides meaningful compensation to class members. There are games and add-on items available on the PSN Store that cost less than $1 at any given time. Games and other content regularly go on sale on the PSN Store, so class members have a constantly changing selection of low-price content available for purchase and have adequate purchasing power. *See Rael*, 2021 WL 1226475, at *8. Indeed, class members can use the credits to purchase content from the PSN Store without spending any of their own money. *See Hinojosa*, 54 F.4th at 1075.

Second, SIE incurs a financial loss in profit equal to the amount of each redeemed credit, which "adversely impacts [SIE's] bottom line." Rael, 2021 WL 1226475, at *8. As discussed above, however, discovery revealed that there were few "ill-gotten gains" to recover.

Third, while class members receiving PSN credits necessarily will have to conduct business with SIE to utilize the credit, nearly all these class members have an ongoing consumer relationship with SIE given their use of the PlayStation platform to play games. Only class members with active PSN accounts will receive credits. All other class members will be entitled to a check in the amount of the credit. The credit does not compel any class member to do continue business with SIE who would rather have no relationship with SIE.

Ultimately, the Court "must ask whether the value of relief in the aggregate is a reasonable approximation of the value of plaintiffs' claim." *See In re Mexico Money Transfer Litig.*, 267

F.3d 743, 748-49 (7th Cir. 2001) (approving a coupon settlement which was likely to provide only 10% net value of the face value of the coupons); *Mendez v. C-Two Group, Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *5 (N.D. Cal. Mar. 27, 2017) (preliminarily approving coupon settlement given the "substantial unlikelihood that Plaintiff would survive Defendant's motion for summary judgment"). Given the relative weakness of Plaintiff's case and the resulting value of Plaintiff's claims here, the settlement provides meaningful value to class members similar to the value of their claims. Thus, the proposed Settlement Agreement warrants preliminary approval regardless of whether it involves coupons.

### 3. The *Bluetooth* Factors

When a case settles before class certification, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026. Accordingly, the Ninth Circuit has "identified three 'subtle' warning signs that may indicate that class counsel colluded with defense counsel to settle the case in a manner that elevated class counsel's interests over those of the class, and that the settlement is therefore not 'fair, reasonable, and adequate' under Rule 23(e)(2)." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1125 (9th Cir. 2020). These considerations, frequently described as the "*Bluetooth* factors," include

> (1) when counsel receive a disproportionate distribution of the settlement, or the class gets no monetary distribution but class counsel are well compensated; (2) when the parties negotiate "clear sailing" arrangements for the payment of attorney's fees wherein the defendant agrees not to object to the fee application presented to the court; and (3) when the agreement includes a "reversion" or "kicker" provision under which any reduction in attorney's fees reverts to the defendant rather than being added to the class fund.

*Campbell*, 951 F.3d at 1125 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

Here, the proposed settlement places cash-equivalent credit in class members' PSN accounts for use at the PlayStation Store. The class, as a whole, is set to receive a monetary benefit that is larger than the proposed 25% percent fee that will be requested in this case.

8

United States District Court
Northern District of California

Counsel obtained this benefit for the class at a loss to themselves.  The proposed settlement does not include a "clear sailing" provision, and there is no reversion of any monies to SIE.  For any deactivated accounts entitled to receive a check from SIE, any monies which cannot be distributed may be donated to a cy pres designee as discussed below.  Thus, there are no collusion "red flags" under *Bluetooth*.

### 4.    Cy Pres Designee

A cy pres award must qualify as "the next best distribution" to giving the funds directly to class members.  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  As a result, "[n]ot just any worthy recipient can qualify as an appropriate cy pres beneficiary." *Id.*  Where a class action settlement contains a cy pres award provision, the "cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* at 865.

Here, the parties propose that any residual funds be distributed to either Code.Org or Girls Who Code.  *See* Dkt. No. 219 at 22.  Both organizations promote education related to artificial intelligence and computer science.  Given the parties' indications that the cy pres award will likely remain relatively small, the Court selects only one of the two organizations.  Based on the nexus between computer coding and the development of video games underlying this lawsuit, the Court is satisfied that the chosen cy pres recipient Girls Who Code has a close enough nexus to the Proposed Class here.

### 5.    Preliminary Approval Conclusion

The Court finds that the proposed Settlement includes a proposed Settlement Amount totaling $7,850,000.00 from Sony Interactive Entertainment, LLC (the "Settlement Amount") in exchange for, inter alia, dismissal of the litigation between the Plaintiffs and Defendant with prejudice and release and discharge of the Released Claims, as set forth in the Revised Settlement Agreement.  The Court further finds that the Settlement was reached after years of hard-fought litigation, through arm's-length negotiations, by experienced counsel after formal mediations with the assistance of mediator Christopher Hockett.

9

Under these circumstances, the proposed Settlement falls within the range of approvable settlements. The Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, in the best interests of the proposed Settlement Class. The proposed Settlement is, therefore, hereby preliminarily approved, subject to further consideration at the Fairness Hearing.

**B.    Certification of a Class for Settlement Purposes**

Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for the purposes of effectuating the settlement only, a Settlement Class consisting of:

> all persons in the United States who purchased through the PlayStation Store one or more video games for which a game-specific voucher ("GSV") was available at retail prior to April 1, 2019, for which a total of at least 200 GSV redemptions were made prior to April 1, 2019, and for which the post-discount price increased by at least fifty cents from: (a) the period between January 1, 2017 and March 31, 2019; as compared to (b) the period between April 1, 2019 and December 31, 2023. The class period shall be April 1, 2019 to December 31, 2023.

With respect to the Settlement Class, this Court preliminarily finds, for purposes of effectuating this Settlement only that: (i) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the Action is impracticable; (ii) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (iii) the claims of the Plaintiff Adrian Cendejas in the Action are typical of the claims of the Settlement Class; (iv) Plaintiff Adrian Cendejas and Interim Lead Counsel have fairly and adequately represented and protected the interests of all members of the Settlement Class; and (v) predominance is satisfied and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (a) the interests of the members of the Settlement Class in individually controlling the prosecution of the separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by members of the Settlement Class; (c) the desirability or undesirability of continuing the litigation of these claims; and (d) the difficulties likely to be encountered in the management of the class action.

For the purposes of Settlement only, the Court hereby preliminarily certifies Adrian Cendejas as Class Representative and Michael M. Buchman of the Jospeh Saveri Law Firm LLP as Lead Class Counsel.

The Court maintains its previously-expressed concern about whether Messrs. Caccuri and Neumark are properly entitled to any incentive award since they are not members of the settlement class. However, the Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive/service award request at that time.

### C.    Notice Plan

The Court approves, as to form and content, the proposed notice plan ("Notice Plan") and exhibits attached to the Declaration of Elaine Pang dated February 26, 2026 ("Pang Declaration" or "Pang Decl."), and finds that the direct notification through the email addresses associated with Settlement Class members' PlayStation accounts, in conjunction with publication of the Summary Notice in a major publication substantially in the manner and form set forth in the Pang Declaration, meet the requirements of Federal Rule of Civil Procedure 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all entitled to notice.

The Court appoints A.B. Data, Ltd. as Notice Administrator and Settlement Administrator ("Administrator") to supervise and administer the notice procedure as well as to provide assistance in connection with the distribution of the settlement monies as more fully set forth below: Not later than 21 days after entry of this Order (the "Notice Date"), Interim Lead Counsel shall cause a link to the Notice, substantially in the forms annexed as Exhibits C and D to the Pang Declaration and hosted on a website maintained by the Administrator, to be emailed to all members of the proposed Settlement Class using the email addresses associated with their PlayStation accounts.

All proceedings in this Action are hereby stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Second Revised Settlement Agreement. Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Plaintiff and all members of the Settlement Class from, either directly,

representatively, or in any other capacity, commencing or prosecuting any and all of the Released Claims against each, any, or all Releasees in any action or proceeding in any court or tribunal.

**D.      Schedule**

The Court may continue the Fairness Hearing without further notice to the proposed Settlement Class other than by ECF and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement, with such modifications as may be agreed to by the parties, if appropriate, without further notice to the proposed Settlement Class other than by ECF.

Pending the Fairness Hearing, all members of the proposed Settlement Class are enjoined from initiating or prosecuting any actions or claims against any Releasees or Released Parties that are within the scope of the releases provided for by the Second Revised Settlement Agreement.

The following schedule of dates shall govern the resolution of the Settlement:

| Event | Deadline |
|---|---|
| Notice Period Commences | April 29, 2026 |
| Notice Period Concludes | June 3, 2026 |
| Motion for Fees/Expenses/Service Awards | June 17, 2026 |
| Notice Administrator Declaration of Completion of Notice | June 17, 2026 |
| Deadline to Opt-Out or Object | July 2, 2026 |
| Deadline to submit Request For Check | August 27, 2026 |
| Motion For Final Approval | September 3, 2026 |
| Responses to Motion For Final Approval | September 17, 2026 |
| Reply Motion for Final Approval | September 24, 2026 |
| Deadline To File Intention to Appear at Final Approval Hearing | October 1, 2026 |
| Deadline to File With The Court Notice of Objections and Opt-Outs Received | October 1, 2026 |
| Final Approval Hearing | October 15, 2026 |

//

//

12

United States District Court
Northern District of California

**III.    CONCLUSION**

The Court ORDERS as follows:

The proposed Settlement is preliminarily approved, subject to further consideration at the Fairness Hearing.  *See* Settlement Agreement (Dkt. No. 219-4).  Notice shall issue to the class in accordance with the plan set forth above.  The Fairness Hearing shall be held before this Court on **October 15, 2026, at 2:00 p.m., in Courtroom 3, 3rd Floor, at 1301 Clay Street, Oakland, California**, to determine: (i) whether the terms and conditions provided for by the proposed Settlement are fair, reasonable, and adequate to the Settlement Class and should be finally approved by the Court; (ii) whether the Final Judgment and Order of Dismissal, which, dismisses the action filed by Adrian Cendejas in its entirety with prejudice, subject to the continuing jurisdiction of the Court, and contains releases, should be entered; (iii) whether the proposed Plan of Allocation should be approved; and (iv) the amount of reasonable attorneys' fees, costs, and expenses that should be awarded to Interim Lead Counsel and the amount of any service award for the named plaintiff.

**IT IS SO ORDERED.**

Dated: April 8, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**